IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLASS EGG DIGITAL MEDIA,<br><br>    Plaintiff,<br><br>    v.<br><br>GAMELOFT, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-04165-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GAMELOFT, INC.'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 40 |

Before the Court is defendant Gameloft, Inc.'s ("Gameloft USA") motion, filed November 8, 2017, to dismiss plaintiff Glass Egg Digital Media's ("Glass Egg") amended Complaint ("FAC"), filed October 2, 2017. Glass Egg has filed opposition, to which Gameloft USA has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for determination on the parties' respective written submissions, hereby VACATES the hearing scheduled for February 9, 2018, and rules as follows.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following factual allegations are taken from the FAC.

Glass Egg, a British Virgin Island corporation with its principal place of business in Ho Chi Minh, Vietnam, is a "3D art production studio servicing the electronic game industry." (See FAC ¶¶ 6, 16.) Gameloft USA, a Delaware corporation with its "principal business office" located in San Francisco, California, is a wholly owned subsidiary of Gameloft SE ("Gameloft France"), a French corporation with its "principal business office" in Paris, France. (See id. ¶¶ 7-8, 11.) Defendants Gameloft France and its subsidiaries, Gameloft USA and Gameloft Iberica S.A.U. ("Gameloft Spain"), a Spanish corporation

with its "principal business office" in Barcelona, Spain, are in the business of "develop[ing]" and "publish[ing]" mobile games.[1] (See id. ¶ 27, 28, 31.)

Gameloft[2] "outsourced" to two companies, Alive Interactive Limited ("AIL") and Hung Thinh 3D ("HT3D"), the production of 3D digital car models for Gameloft's "Asphalt" game series. (See id. ¶¶ 76, 93.) AIL and HT3D, through a Glass Egg employee, "recruit[ed] Glass Egg personnel to work on [3D] digital car models for the Asphalt" game series (see id. ¶ 99), after which, those Glass Egg personnel, without Glass Egg's knowledge or approval, "creat[ed] and produc[ed]" the 3D digital car models using Glass Egg's "equipment," including computers, server network, licensed software, "know-how[,] and trade secrets." (See id. ¶¶ 101, 105.) "AIL and/or HT3D delivered" the 3D digital car models to Gameloft, which "published, reproduced and distributed" the 3D digital car models in its Asphalt game series. (See id. ¶¶ 128-29.)

Based on the above allegations, Glass Egg asserts the following seven Claims for Relief: (1) "Copyright Infringement"; (2) "Conversion"; (3) "Unfair Competition," pursuant to Cal. Bus. & Prof. Code § 17200 et seq.; (4) "Misappropriation of Trade Secrets," pursuant to 18 U.S.C. § 1836 et seq.; (5) "Misappropriation of Trade Secrets," pursuant to Cal. Civ. Code § 3426 et seq.; (6) "Intentional Interference with Contractual Relations"; and (7) "Negligence."

By the instant motion, Gameloft USA moves to dismiss the FAC, as alleged against Gameloft USA, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

---

[1] Gameloft France is a "wholly owned subsidiary" of a fourth defendant, Vivendi SA ("Vivendi"), a French corporation with its "principal business office" in Paris, France. (See ¶¶ 14-15, 43.)

[2] In the FAC, "Gameloft" is used to collectively refer to Gameloft France and its subsidiaries.

2

under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

Gameloft USA's sole argument in support of dismissal is that the FAC improperly "lumps" the four defendants together, without establishing a theory of joint liability, and fails to "allege any conduct, let alone wrongful or unlawful conduct, by" Gameloft USA. (See Mot. at 5:8-10 (emphasis omitted).) In response, Glass Egg argues that the FAC sufficiently alleges (1) Gameloft USA's direct liability for copyright infringement and conversion, and, (2) for the remaining claims, Gameloft USA's joint liability with Gameloft France and Gameloft Spain, under theories of civil conspiracy, alter ego, and agency.[3]

---

[3] Additionally, to the extent Gameloft USA seeks dismissal of the copyright infringement claim, Glass Egg contends the instant motion is "untimely" because its claim

3

**A. Direct Liability for Copyright Infringement and Conversion**

"Copyright owners have the exclusive right 'to reproduce the copyrighted work in copies,' or to authorize another to do so." See Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting 17 U.S.C. § 106(1)).  To plead a claim for copyright infringement, a plaintiff must allege (1) its "ownership of the allegedly infringed material," and (2) the alleged infringer's "violat[ion] [of] at least one exclusive right granted to copyright holders."  See id.

"Conversion is the wrongful exercise of dominion over the property of another." See Lee v. Hanley, 61 Cal. 4th 1225, 1240 (Cal. 2015) (internal quotation and citation omitted).  Under California law, to plead a claim for conversion, a plaintiff must allege "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  See id. (internal quotation and citation omitted).

Here, Gameloft USA contends the FAC, by failing to "specify which defendant was responsible for which alleged wrongful act" (see Reply at 4:10-11), "does not allege that Gameloft USA actually engaged in any conduct whatsoever, including any acts that might plausibly establish copyright infringement or conversion" (see id. at 4:16-17).  The FAC alleges, for example, that "[d]efendants . . . have reproduced, without permission, the [3D digital car models at issue] in several car racing mobile games successfully published, marketed and distributed globally under the names Asphalt 8: Airborne ("A8"), Asphalt Xtreme ("AX"), and Asphalt Streetstorm."  (See FAC ¶ 3.)  Although not a model pleading, the FAC does, however, go on to allege facts sufficient to give Gameloft USA notice of the wrongful acts Gameloft USA allegedly comitted.  In particular, Glass Egg

---

for copyright infringement was alleged in Glass Egg's original complaint, to which Gameloft USA filed an answer.  (See Opp. at 5:10-20.)  An amended complaint, however, "supersedes the original, the latter being treated thereafter as non-existent," see Valadez-Lopez v. Chertoff, 656 F.3d 851, 857 (9th Cir. 2011) (internal quotation and citation omitted), and, consequently, Gameloft USA's motion to dismiss the copyright infringement claim is timely.

4

alleges that "[m]uch of Gameloft's global revenue generating activities such as marketing, sales and public relations . . . are performed from its US offices" (see id. ¶ 34), that those activities encompass the "marketing and sales . . . of games for the US, including A8 and AX[,]" and that Gameloft France "directly controls the marketing and sales [of said games] through its San Francisco office" (see id. ¶ 38), which, as alleged earlier in the FAC, is Gameloft USA's "principal business office" (see id. ¶ 7). Taken together, and read in the light most favorable to the nonmoving party," see NL Indus., Inc., 792 F.2d at 898, these additional allegations are sufficient to allege, as to copyright infringement and conversion, Gameloft USA's direct liability for its role in marketing and selling the infringing games in the United States.[4]

The Court next turns to the remaining claims.

**B.     Joint Liability for Remaining Claims**

As noted, for the remaining claims, Glass Egg bases Gameloft USA's liability on theories of civil conspiracy, alter ego, and agency.

**1.     Civil Conspiracy**

Under California law, to plead a civil conspiracy, a plaintiff must allege: "'(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts.'" See Wasco Prod., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (quoting Cellular Plus, Inc. v. Superior Court, 14 Cal. App. 4th 1224, 1236 (Cal. Ct. App. 1993)). To plead the "formation and operation" of a conspiracy, a plaintiff must allege an "agree[ment] to commit wrongful acts." See id.

Here, Glass Egg alleges, "Gameloft and/or its senior management acting on behalf of [d]efendants concocted a scheme in agreement with [ALI and HT3D] . . . , resulting in harm to Glass Egg," and that, in "mid-2014, Gameloft signed a tripartite agreement to

---

[4] Given such finding, the Court does not address herein Glass Egg's alternative theory of liability based on contributory infringement.

5

purportedly outsource production work to [ALI and HT3D] to carry out the [s]cheme." (See FAC ¶ 69, 76.) Such conclusory and collectively pleaded allegations are insufficient to show Gameloft USA's involvement in a conspiracy. See Twombly, 550 U.S. at 556–57 (2007) (holding "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" conspiracy); Horton v. NeoStrata Company Inc., No. 16-CV-02189-AJB (JLB), 2017 WL 932178, at *6 (S.D. Cal. Mar. 8, 2017) (holding plaintiff "may not group" defendants together "without distinguishing between the allegedly unlawful conduct of each").

### 2. Alter Ego

"To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities," a plaintiff must allege facts showing both: (1) "there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist," and (2) a "failure to disregard [their separate identities] would result in fraud or injustice." See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003) (internal quotation and citation omitted) (alterations in original).

Under the first prong of the alter ego test, a plaintiff must allege that "the parent exercised such control over the subsidiary so as to render the latter the mere instrumentality of the former." See id. at 1135 (internal quotation and citation omitted). In that regard, Glass Egg alleges, Gameloft USA "is controlled by, shares consolidated financial statements with, shares overlapping management and board members with, and is a wholly owned subsidiary of" Gameloft France (see FAC ¶ 8), and that Gameloft USA uses the same trade name, company logo, and website as Gameloft France.[5] (See id. ¶¶ 27, 30.) As set forth below, such allegations are insufficient to show the requisite unity of interest.

---

[5] The Court hereby GRANTS Glass Egg's unopposed request for judicial notice of the U.S. Patent and Trademark Office's ("USPTO") website registration record of the standard character mark, "Gameloft". See SunEarth, Inc. v. Sun Earth Solar Power Co., 846 F. Supp. 2d 1063, 1071 n.3 (N.D. Cal. 2012) (taking judicial notice of USPTO trademark registration record).

6

At the outset, the Court notes that "[t]otal ownership and shared management personnel are," standing alone, "insufficient to establish the requisite level of control." See Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015). Here, Glass Egg's wholly conclusory allegation that Gameloft USA is "controlled by" Gameloft France adds nothing to the equation, see Iqbal, 556 U.S. at 678 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation"), and the addition of an allegation of shared use of trade names, logos, and websites, all "characteristic of the typical corporate structure of many companies," see Eagle Canyon Owners' Ass'n v. Waste Mgmt., Inc., No. 16-CV-2811-LAB (WVG), 2017 WL 3017501, at *2 (S.D. Cal. July 13, 2017), likewise is unavailing. See id. (finding allegations insufficient where parent and wholly owned subsidiary had overlapping officers and directors, and "us[ed] the same website and email addresses"); see also Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (finding allegations insufficient where parent and wholly owned subsidiary "had overlapping officers and directors," and were presented as "one integrated company on [parent's] website and in government filings for marketing purposes").

Further, even assuming, arguendo, the FAC had sufficiently alleged the requisite unity of interest, Glass Egg has failed to address, let alone plead any facts to support a finding as to, the second element of the alter ego test, namely, that an inequitable result would follow if the entities' separate corporate forms were recognized. See Johnson v. Serenity Transportation, Inc., 141 F. Supp. 3d 974, 984 (N.D. Cal. Nov. 2, 2015) (holding plaintiff "must allege specifically both of the elements of alter ego liability, as well as facts supporting each") (collecting cases) (internal quotation and citation omitted).

**3. Agency**

Lastly, Glass Egg argues that Gameloft USA had "apparent authority to act [as the agent] for" Gameloft France because Gameloft USA is permitted to "use the parent's name and logo." (See Opp. at 10:13-21.) As Gameloft USA points out, however, agency

law imputes the acts of the agent to the principal; the acts of the principal are not imputed to the agent. See Horiike v. Coldwell Banker Residential Brokerage Co., 383 P.3d 1094, 1101 (Cal. 2016) (recognizing "general rule that an agent cannot be vicariously liable for the wrongful acts of the principal") (internal quotation and citation omitted). Consequently, as "[o]nly an agent's own tortious conduct subjects the agent to liability," see id. (quoting Restatement (Third) of Agency § 7.01 (Am. Law Inst. 2006)), Glass Egg has failed to plead Gameloft USA's liability based on the conduct of its alleged principal, Gameloft France.

## CONCLUSION

For the reasons stated above:

1. As to Glass Egg's First and Second Claims for Relief, as well as its Third Claim for Relief, to the extent based on violations alleged in the First and Second Claims, Gameloft USA's motion to dismiss is hereby DENIED.

2. As to the remaining claims, Glass Egg's motion to dismiss is hereby GRANTED and said Claims are DISMISSED with leave to amend.

The Court will set a deadline for the filing of a Second Amended Complaint after it has ruled on the other three defendants' motions to dismiss.

**IT IS SO ORDERED.**

Dated: January 22, 2018

MAXINE M. CHESNEY
United States District Judge