IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| GLASS EGG DIGITAL MEDIA, | Case No. 17-cv-04165-MMC |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; AFFORDING LIMITED LEAVE TO AMEND** |
| v. | |
| GAMELOFT, INC., et al., | |
| Defendants. | Re: Dkt. No. 134 |

Before the Court is defendant Gameloft, Inc.'s ("Gameloft USA") Motion to Dismiss, filed June 11, 2018, by which Gameloft USA seeks to dismiss plaintiff Glass Egg Digital Media's ("Glass Egg") Third Amended Complaint ("TAC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Glass Egg has filed opposition, to which Gameloft USA has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

As alleged in the TAC, Glass Egg, a British Virgin Island corporation with its principal place of business in Ho Chi Minh City, Vietnam, is a "3D art production studio servicing the electronic game industry." (See TAC ¶¶ 6, 16.) Gameloft USA, Glass Egg alleges, is a Delaware corporation with its "principal business office" located in San Francisco, California, and is a wholly owned subsidiary of Gameloft SE ("Gameloft France"), a French corporation with its "principal business office" in Paris, France. (See

---

[1] By order filed July 13, 2018, the Court took the matter under submission.

id. ¶¶ 7-8, 11.)  Glass Egg alleges Gameloft France and its wholly owned subsidiaries, Gameloft USA and Gameloft Iberica S.A.U. ("Gameloft Spain"), a Spanish corporation with its "principal business office" in Barcelona, Spain (see id. ¶¶ 9-10), are in the business of "develop[ing]" and "publish[ing]" mobile games (see id. ¶ 27).

Glass Egg further alleges: (1) Gameloft France delegated to Gameloft USA and Gameloft Spain various responsibilities in the development and distribution of its Asphalt car racing mobile game series; (2) Gameloft Spain, in an effort to reduce production costs, hired "unqualified" Vietnamese 3D digital art studios (hereinafter, "third-party studios") to create 3D digital car models (hereinafter, the "Works") for use in the Asphalt games (see id. ¶ 144); (3) the third-party studios subcontracted production of the Works to certain of Glass Egg's employees in Vietnam, which employees, during working hours and using Glass Egg's equipment, "clandestinely" created the Works (see id. ¶ 156), "all rights" to which Glass Egg was assigned pursuant to "written agreements" it had entered with said employees (see id. ¶ 244); (4) said employees transmitted the Works to the third-party studios; (5) the third-party studios, in turn, transmitted the Works to Gameloft Spain, after which the Works were "incorporated in their entirety into the Asphalt [g]ames" (see id. ¶ 242); and thereafter, Gameloft USA marketed and sold the Asphalt games in the United States.

Based on the above, Glass Egg, on July 21, 2017, filed the instant action. On May 11, 2018, a hearing was held on Gameloft USA's motion to dismiss Glass Egg's Second Amended Complaint ("SAC"). By order filed that same date, the Court granted Gameloft USA's motion, and dismissed all claims alleged against Gameloft USA, namely, Glass Egg's claims for (1) "Copyright Infringement," brought pursuant to the Copyright Act, 17 U.S.C. § 101, et seq., (2) "Conversion," (3) "Gross Negligence," and (4) "Unfair Competition," brought pursuant to California Business and Professions Code § 17200 ("UCL"). The Court afforded Glass Egg leave to amend, after which Glass Egg, on May 25, 2018, filed its TAC, by which it asserts, as amended, the above-listed four claims.

By the instant motion, Gameloft USA moves to dismiss the TAC, as alleged

2

1 against Gameloft USA, in its entirety.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

As noted, Gameloft USA moves to dismiss all claims alleged against Gameloft USA. The Court addresses in turn each such claim.

**A. Copyright Infringement**

A plaintiff bringing a claim for copyright infringement pursuant to the Copyright Act must show "(1) ownership of the copyright; and (2) infringement—that the defendant

3

copied protected elements of the plaintiff's work." See Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000). Here, Gameloft USA contends, Glass Egg has failed to make either such showing.

### 1. Ownership

Glass Egg, which has "not ma[d]e an election as to which law applies to the ownership issue," alleges it owns the Works under both United States and Vietnamese law; specifically, Glass Egg alleges, it owns the Works pursuant to those countries' laws regarding work for hire and assignment. (See TAC ¶ 244; see also id. ¶¶ 245-46 (citing United States Copyright Act and Vietnamese "Law on Intellectual Property").) Gameloft USA contends "there is no question that ownership is governed by Vietnam law" (see Mot. at 17:19), and that Glass Egg has failed to plead facts sufficient to show it owns the Works under such law. The Court agrees.

As Glass Egg acknowledges, where, as here, a foreign work allegedly is infringed,[2] the law of the country with the "'most significant relationship'" to the work controls the issue of ownership. (See Opp. at 20:9 (quoting Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 90 (2d Cir. 1998).) In determining which country has the "most significant relationship" to the work, courts consider as relevant factors the "nationality of the author and the place of initial creation or publication." See O'Reilly v. Valley Entm't, Inc., No. 09-CV-03580, 2011 WL 13258234, at *8 (N.D. Cal. Jan. 4, 2011), report and recommendation adopted, No. 09-CV-3580, 2011 WL 13260734 (N.D. Cal. Feb. 16, 2011); Lahiri v. Universal Music & Video Distribution, Inc., 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) (finding Indian law controlled issue of copyright ownership where work was "created in India"); see also Itar-Tass, 153 F.3d at 90 (finding Russian law controlled issue of copyright ownership where works were "created by Russian nationals and first published in Russia").

---

[2] The Works, which were never published by Glass Egg and were created in Vietnam by Vietnamese nationals, are not a "United States work" under the Copyright Act, and, accordingly, the Act's registration requirement for "United States works," set forth in § 411, is inapplicable. See 17 U.S.C. § 101 (defining "United States work").

4

The Court is unpersuaded by Glass Egg's contention that the choice of law issue is dependent on facts not in the record, specifically, the country in which infringement first occurred.[3] Contrary to Glass Egg's assertion, the location of a defendant's infringement is relevant only to the "scope of protection," not ownership. See Itar-Tass, 153 F.3d at 89 (rejecting "broad" view that "copyright law of the state in which the infringement occurred" controls "two distinct issues—ownership and substantive rights, *i.e.*, scope of protection"; holding country in which infringement occurred relevant to latter but not former).

Moreover, even if the country in which infringement first occurred were relevant to the ownership inquiry, and even if such infringement occurred, as Glass Egg hypothesizes, in the United States, Vietnam would still have the most significant relationship to the Works. In particular, Glass Egg alleges that the Works were created by Vietnamese nationals in Vietnam, that it owns the Works by way of its employment agreements with those Vietnamese nationals, and that the agreements were executed in Vietnam and arose from an employment relationship established and maintained in Vietnam. (See TAC ¶¶ 1, 244.) Under such circumstances, Vietnamese law governs the issue of copyright ownership. See Ennio Morricone Music Inc. v. Bixio Music Grp. Ltd., No. 16-CV-8475, 2017 WL 5990130, at *5 (S.D.N.Y. Oct. 6, 2017) (finding "Italian law applie[d] to the definition of 'work for hire'" where the "contracts at issue were formed in Italy by Italian nationals"); RCTV Int'l Corp. v. Rosenfeld, No. 13-23611-CIV, 2016 WL 6818955, at *13 (S.D. Fla. Sept. 30, 2016) (finding Venezuelan law governed ownership where parties to assignment were "Venezuelan nationals, the transfer occurred in Venezuela, and arose from an employer/employee relationship established and maintained in Venezuela").

The Court next turns to the factual allegations pertaining to ownership. In that regard, Glass Egg first alleges it owns the Works because the Works were "made by

---

[3] Similarly unavailing is Glass Egg's contention that a choice-of-law provision selecting United States law, which provision was contained in Gameloft Spain's contracts with the third-party studios, informs the ownership analysis.

[Glass Egg's] employees using company resources during working hours." (See TAC ¶ 244.) In support of such theory, Glass Egg cites Article 39 of Vietnam's Intellectual Property Law, which provides, in relevant part, that "[a]n organization that assigns a duty of creating a work to an author, who is its employee, shall be the owner of the [work]." See Civil Code, No. 50/2005/QH11, art. 39(1). As Gameloft USA points out, however, Glass Egg alleges that the third-party studios, not Glass Egg, assigned the creation of the Works to Glass Egg's employees, and Glass Egg was not aware of the Works' creation, which was done "clandestinely" (see TAC ¶ 156), until after the Works had been transmitted to Gameloft Spain. Consequently, Glass Egg cannot show it owns the works under Article 39.

Next, Glass Egg alleges, "all rights in the [Works] were assigned to Glass Egg via written agreements." (See id. ¶ 244.) In support of such theory, Glass Egg cites Articles 45 and 46 of Vietnam's Intellectual Property Law. Pursuant to Article 46, however, "[a] contract for copyright/related rights assignment must be made in writing and include" specified terms, such as the "[f]ull name and address of assignor and assignee," and the "[o]bligations for breach of contract." See Civil Code, No. 50/2005/QH11, art. 46(1). Here, as Gameloft USA points out, Glass Egg's conclusory allegation that "all rights in the [Works] were assigned to Glass Egg via written agreements" (see TAC ¶ 244) is insufficient to show the existence of a valid assignment agreement under Article 46. See Iqbal, 556 U.S. at 678 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation and citation omitted).

Accordingly, Glass Egg's copyright claim is subject to dismissal. Glass Egg will, however, be afforded leave to amend to allege, if it can do so, the requisite contractual terms.

Although, as set forth above, Glass Egg's failure to allege the threshold element of ownership is fatal to its copyright infringement claim, the Court, given Glass Egg's potential ability to cure such deficiency, next turns to the sufficiency of Glass Egg's allegations concerning copyrightability and infringement.

### 2. Copyrightability and Infringement

As noted, in addition to showing it owns the work, a plaintiff asserting a copyright claim must show "that the defendant copied protected elements of the plaintiff's work." See Three Boys, 212 F.3d at 481. Although the parties disagree as to which country's law governs the question of ownership, the parties agree United States law governs the "scope of protection." See Itar-Tass, 153 F.3d at 89.

Under United States law, "[o]riginality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." See Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 348 (1991). "Original . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity," which "requisite level of creativity is extremely low; even a slight amount will suffice." See id. at 345.

Here, Glass Egg alleges, the Works include customized "placement and arrangements" of polygons (hereinafter, "polygon arrangement") (see TAC ¶ 233), as well as "special effects" (see id. ¶ 236), which elements, Glass Egg alleges, are copyrightable, and were "incorporated in their entirety into the Asphalt [g]ames" (see id. ¶ 242). The Court previously dismissed Glass Egg's copyright infringement claim for failure to allege facts sufficient to show such elements were either copyrightable or infringed. Gameloft USA contends Glass Egg has failed to correct either deficiency. The Court addresses each of the above-referenced elements in turn.

#### a. Polygon Arrangement

Glass Egg alleges each Work contains polygon arrangements in differing levels of detail ("LOD")[4] and drawn to meet "a specific budget of polygons to fit within the shape of specific cars." (See id. ¶ 228.) The polygon arrangements, Glass Egg alleges, "when

---

[4] Glass Egg alleges Gameloft Spain ordered four LODs for each car, with each LOD limited to no more than 26,000 triangles, 13,000 triangles, 4000 triangles, and 200 triangles, respectively. (See id. ¶ 232.)

7

rendered in real time by a game engine, generate images on mobile screens" (see id. ¶ 235), with the higher LODs generating more "complex[]" images of the car, and requiring more processing power, than the lower LODs (see id. ¶ 210).

Glass Egg contends the polygon arrangements possess the requisite level of originality to be afforded copyright protection, and "can be separated from the shape and appearance of the cars." (See Opp. at 17:23-24 (citing Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017).) For purposes of the instant motion, Gameloft USA does not contend the polygon arrangements cannot be separated from the "shape and appearance of the cars."[5] Rather, Gameloft USA contends, Glass Egg has failed to adequately allege the arrangements are original.

In support of its claim, Glass Egg alleges:

> The number, placement and arrangement of [the] triangles is entirely decided by digital artists. Each [LOD] for the same car could be drawn differently by different artists. For example, to accomplish the LOD2 requirement of 13,000 triangles, artist A may decide to hand draw and use 12,500 triangles for a car, allotting 5,000 to the rear bumper. In comparison, artist B may decide to hand draw and use 13,000 triangles for the same car, allotting 6,000 to the rear bumper. Each rendition would qualify as a LOD2 model since both use 13,000 or less triangles.

(See TAC ¶ 233-34). As alleged by Glass Egg, "[t]he number, placement and arrangement of the triangles for each [LOD] could therefore have millions of combinations." (See id. ¶ 234)

Assuming the polygon arrangements can be separated from the shape and appearance of the cars, the above allegations are sufficient to show such arrangements are the product of expressive choices made at the discretion of Glass Egg's employees, and thus to show the Works were "independently created" by those employees and "possess[] at least some minimal degree of creativity." See Feist, 499 U.S. at 348; see

---

[5] For this reason, Gameloft USA's reliance on Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc., 528 F.3d 1258 (10th Cir. 2008), wherein the plaintiff did not claim a copyright in an arrangement separate from the images of its wire-frame car models, is misplaced. See id. at 1266 (holding plaintiff's "unadorned images of Toyota's vehicles cannot be copyrighted").

8

1  also, e.g., Phantomalert, Inc. v. Google Inc., No. 15-CV-03986, 2016 WL 879758, at *1
2  (N.D. Cal. Mar. 8, 2016) (holding "information shown on a map is not subject to copyright
3  protection," but "the *arrangement* of the facts depicted on the map is protectable where it
4  shows some originality"; finding placement of traffic-related information on map
5  protectable where based on "judgment calls") (emphasis in original).

6  The remaining issue is whether Glass Egg has sufficiently alleged defendant
7  infringed any of the "exclusive rights" set forth in the Copyright Act. See 17 U.S.C.
8  § 106.[6] In that regard, Gameloft USA contends Glass Egg's allegation that the Works
9  were "incorporated in their entirety into the Asphalt [g]ames" (see TAC ¶ 242), is
10  conclusory, and that, "[a]bsent adequate representative pleading" (see Reply at 2:13),
11  such as images of the Works as used in the Asphalt games, Glass Egg has failed to
12  allege infringement.

13  The cases on which Gameloft USA relies, however, are distinguishable; in each
14  such case, the defendant was alleged to have created an infringing work by copying
15  elements of an existing work created by the plaintiff. See, e.g., Blizzard, 149 F. Supp. 3d
16  at 1170. Here, by contrast, Glass Egg alleges the alleged infringing models were created
17  in the first instance at the request of Gameloft Spain. (See TAC ¶¶ 226, 232, 236
18  (describing "service agreements" between Gameloft Spain and third-party studios).)
19  Given such allegation, and absent any allegation suggesting the polygon arrangements
20  created by Glass Egg's employees were in any manner thereafter changed by either the
21  third-party studios or Gameloft Spain, it reasonably can be inferred that those polygon
22  arrangements were incorporated into the Asphalt games without alteration.[7]

---

[6] As relevant here, the exclusive rights granted under the Copyright Act are the right "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." See id. § 106.

[7] The Court reads Glass Egg's allegation that Gameloft Spain "may add some visual aesthetics" to the Works (see id. ¶ 141), and acknowledgement that Glass Egg "do[es]n't know" whether visual aesthetics were altered (see May 11, 2018, Hr'g Tr. at 21:2), when viewed in context, as referring to the special effects, a different alleged

9

### b. Special Effects

Next, Glass Egg alleges, the Works were "hand textured to have special effects such as shadows, reflections and glows, including dirt textures." (See TAC ¶ 236.) Even assuming, arguendo, Glass Egg has sufficiently alleged the special effects are copyrightable, Glass Egg has again failed to allege the Asphalt games, and thus Gameloft USA, infringed those protected elements. In particular, although Glass Egg now alleges the Works were "incorporated in their entirety into the Asphalt [g]ames" (see id. ¶ 242), Glass Egg also alleges that, "[u]pon receiving" the Works, Gameloft Spain "may add some visual aesthetics" (see id. ¶ 141), and, when asked at the May 11 hearing whether defendants "made changes" to the special effects, Glass Egg's counsel admitted they "don't know" (see May 11, 2018, Hr'g Tr. at 21:2). In light of the above, and absent any images of the special effects and their use in the Asphalt games, Glass Egg has failed to plausibly allege infringement based on the special effects. See William A. Graham Co. v. Haughey, 568 F.3d 425, 440 (3d Cir. 2009) (holding "possession of a copy of a work alone does not constitute copyright infringement") (citing 17 U.S.C. § 106 (setting forth "exclusive rights" of copyright owner)); see also Twombly, 550 U.S. at 555 (holding "[f]actual allegations must be enough to raise a right to relief above the speculative level").[8]

## B. Conversion

In support of its conversion claim, Glass Egg alleges it is the "rightful legal owner" of the Works, that Gameloft USA took "unauthorized possession" of the Works, and that Glass Egg "seeks the return of the electronic files containing" the Works. (See TAC

---

copyrightable element discussed below, rather than to the polygon arrangements, which are alleged to be separate from the special effects.

[8] At the May 11 hearing, Glass Egg's counsel stated it would be "hard for [Glass Egg]" to provide images of the Works "because they were done c[l]andes[tine]ly . . . , [after which they] were put on a drive, and then they were wiped out." (See May 11, 2018, Hr'g Tr. at 20:5-8.) In light thereof, as well as Glass Egg's failure to attach any images of the Works to the TAC, the Court assumes Glass Egg is unable to provide such images.

¶¶ 306-09, 314.) Gameloft USA contends Glass Egg's conversion claim is preempted by the Copyright Act and, "to the extent the [Works] refer to [Glass Egg's] non-copyrighted information" (see Mot. at 20:24-25), the claim is preempted by the California Uniform Trade Secrets Act ("CUTSA"). The Court addresses each ground for dismissal in turn.

### 1. Copyright Act Preemption

Pursuant to § 301 of the Copyright Act, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright" are "governed exclusively by [the Copyright Act]," and, consequently, "no person is entitled to any such right or equivalent right . . . under the common law or statutes of any State." See 17 U.S.C. § 301(a). "Section 301 . . . establishes a two-part test for preemption": (1) the work at issue "must come within the subject matter of copyright as defined in . . . the Copyright Act"; and (2) "the rights granted under state law must be equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 of the Copyright Act." See Del Madera Prop. v. Rhodes & Gardner, Inc., 820 F.2d 973, 976 (9th Cir. 1987) (internal quotation, citation, and alteration omitted). To avoid preemption under the second prong of the above-referenced test, "the state claim must have an 'extra element' which changes the nature of the action." See id. at 977 (internal quotation and citation omitted).

Gameloft USA, citing various district court cases, argues Glass Egg has failed to allege the requisite "extra element." In particular, Gameloft USA contends Glass Egg's claim seeks "only recovery of 'intangible' intellectual property" and that "a claim for conversion of such intangible property is clearly equivalent to a copyright claim" (see Reply at 6:3-5 (internal quotation and citation omitted).)

As an initial matter, the Court declines to adopt the holding in WJ Global LLC v. Farrell, 941 F. Supp. 2d 688 (E.D.N.C. 2013), wherein the district court found all claims based on conversion of intangible property are preempted as a matter of law. See, e.g., Phantomalert, 2016 WL 879758, at *14 n.8 ("declin[ing] to adopt . . . broad rule" that "*any* claim for conversion based on unauthorized copying of intangible property must be

11

preempted" under Copyright Act) (emphasis in original). Rather, the Court finds a conversion claim that seeks the return of improperly acquired intangible property is of a different nature than a copyright claim, and thus is not preempted by the Copyright Act. See Opperman v. Path, Inc., 84 F. Supp. 3d 962, 989 (N.D. Cal. 2015) (finding conversion claim not preempted by Copyright Act where plaintiff alleged, inter alia, "unauthorized access" to intangible property; noting "[e]xamples of [ ] extra elements [preventing Copyright Act preemption] include . . . *improper acquisition* of the work at issue") (emphasis and alterations in original) (internal quotation and citation omitted).

The other cases on which Gameloft USA relies are distinguishable. First, in Sullivan Associates, Inc. v. Dellots, Inc., No. CIV.A. 97-5457, 1997 WL 778976 (E.D. Pa. Dec. 17, 1997), the court found the conversion claim preempted because the plaintiff "characterize[d] its harm as defendants' use" of the plaintiff's works, and the "gravamen" of the conversion claim thus was "identical" to that of a copyright claim, see id. at *5; here, by contrast, Glass Egg alleges it "has been harmed by . . . [Gameloft USA's] unauthorized possession of the electronic files" (see TAC ¶ 309). In the remaining cases, the defendants therein did not acquire the plaintiff's property without authorization, but, rather, used such property for purposes not authorized by the copyright holder. See Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc., No. 04-CV-05368, 2006 WL 3218719, at *1 (N.D. Cal. Nov. 7, 2006) (noting "plaintiffs contend that [defendant] violated the provisions of the licensing agreement"); BlueGem Sec., Inc. v. Trend Micro Inc., No. 09-CV-01492, 2009 WL 10672402, at *3 (C.D. Cal. Dec. 1, 2009) (noting plaintiff alleged defendant "violated" restrictions in software license agreement); Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (noting plaintiff "sent [its software] to the defendants," who thereafter allegedly used it for unauthorized purpose).

Accordingly, Glass Egg's conversion claim is not preempted by the Copyright Act.

**2.     CUTSA Preemption**

CUTSA "preempt[s] claims based on the same nucleus of facts as trade secret

12

misappropriation." See K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc., 171 Cal. App. 4th 939, 962 (Cal. Ct. App. 2009). "If the basis of the alleged property right is in essence that the information is . . . not . . . generally known to the public, then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." See SunPower Corp. v. SolarCity Corp., No. 12-CV-00694, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) (second alteration in original) (internal quotation and citation omitted).[9]

Here, as Gameloft USA points out, the TAC includes a section in its general allegations titled "Misappropriating Glass Egg's Trade Secrets." (See TAC ¶¶ 202-19.) If Glass Egg's conversion claim were based on misappropriation of its confidential information, defined in the TAC as its "proprietary process and tools" used to create 3D digital art work (see id. ¶ 203), such claim would be preempted by CUTSA. See K.C. Multimedia, 171 Cal. App. 4th at 962. The above-referenced section, however, appears to be inadvertently held over from the First Amended Complaint ("FAC"), in which Glass Egg asserted claims for misappropriation of trade secrets (see FAC ¶¶ 167-83); no such claim is alleged in the TAC, and Glass Egg's conversion claim, as alleged in the TAC, is not based on misappropriation of any confidential information (see TAC ¶¶ 305-17). Rather, as Glass Egg clarifies in its opposition, its conversion claim is "based on [its] right to retrieve files containing [the Works]," which files "do not derive any independent economic value from being secret." (See Opp. at 23:19-21.)

Accordingly, Glass Egg's conversion claim is not subject to dismissal on the basis of CUTSA preemption.

//

---

[9] CUTSA defines a "trade secret" as "information . . . that (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." See California Civil Code § 3426.1(d).

13

## C. Negligence

In support of its negligence claim, Glass Egg alleges Gameloft USA, which was "responsible for obtaining the requisite [intellectual property] licenses from car manufacturers for use in the Asphalt [g]ames, along with marketing and selling [the games] in the USA" (see TAC ¶ 224), "acted in concert" with Gameloft Spain to "develop, produce, market, and publish the Asphalt [g]ames," and thus is "joint and severally liable" for Gameloft Spain's hiring and oversight of the third-party studios (see id. ¶ 327). Specifically, Glass Egg alleges, Gameloft Spain failed to conduct "[d]ue [d]iligence of [the third-party studios] before outsourcing work," and to "inspect and ensure that any work product received was performed in conformance with applicable commercial, civil and labor laws and not causing harm to others." (See id. ¶ 329.)

The Court previously dismissed Glass Egg's negligence claim for the reason that Glass Egg failed to allege facts sufficient to show (1) that Gameloft USA participated in the allegedly negligent conduct, i.e., the hiring and oversight of the third-party studios, and (2) that Gameloft USA owed Glass Egg a duty of care. Gameloft USA contends Glass Egg has failed to cure the above-referenced deficiencies. The Court agrees.

First, as Gameloft USA points out, the TAC contains no new facts showing Gameloft USA was responsible for, or had any involvement with, the hiring or oversight of the third-party studios. Rather, Glass Egg alleges Gameloft Spain was responsible for and undertook such acts (see id. ¶ 224 (alleging "[Gameloft] Spain was responsible for producing [the Works]"); id. ¶ 226 (alleging "[Gameloft] Spain entered into a series of service agreements and hired [the third-party studios]" to produce the Works)). Although Glass Egg alleges Gameloft USA "had knowledge of [Gameloft Spain's] agreements" with the third-party studios (see id. ¶ 226), such knowledge alone is insufficient to give rise to joint liability. See Navarrete v. Meyer, 237 Cal. App. 4th 1276, 1291 (Cal. Ct. App. 2015) (holding, "[t]o establish that a defendant is a joint tortfeasor, it must be shown the defendant proceeded tortiously") (internal quotation and citation omitted); see also Orser v. George, 252 Cal. App. 2d 660, 667 (Cal. Ct. App. 1967) (rejecting proposition that

"mere knowledge by each party of what the other is doing is sufficient 'concert' to make each liable for the acts of the other") (internal quotation and citation omitted).

Second, even if Glass Egg had alleged facts sufficient to show Gameloft USA could be held liable as a joint tortfeasor, Glass Egg, as set forth below, has again failed to allege facts sufficient to show any Gameloft entity owed Glass Egg a duty to prevent the type of harm alleged here, specifically, purely economic loss. (See TAC ¶ 331 (alleging Gameloft USA "breached [its] duty of care by interfering with [Glass Egg's] employment relations"); id. ¶ 332 (alleging Glass Egg is entitled to "damages or a reasonable royalty . . . , including equitable relief in the form of disgorgement of profits").)

Under California law, in actions for negligence, absent, with limited exceptions not relevant here, "a 'special relationship' existing between the parties, . . . recovery of purely economic loss is foreclosed." See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc., 315 F. App'x 603, 605 (9th Cir. 2008) (citing J'Aire Corp. v. Gregory, 24 Cal.3d 799, 803-04 (Cal. 1979)). To determine whether a "special relationship" exists "among persons who are not parties to a business or financial transaction," see QDOS, Inc. v. Signature Fin., LLC, 17 Cal. App. 5th 990, 999 (Cal. Ct. App. 2017), California courts engage in a two-part inquiry: (1) "whether the harm flowing from the [challenged] conduct is foreseeable," and (2) "if so, whether other public policy interests nevertheless counsel against imposing a duty," see Pedeferri v. Seidner Enterprises, 216 Cal. App. 4th 359, 366 (Cal. Ct. App. 2013). Foreseeability is the "chief factor in [the] duty analysis," and entails three considerations: "(1) the [general] foreseeability of the harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered harm, [and] (3) the closeness of the connection between the defendant's conduct and the injury suffered." See id. at 366-67 (alterations in original) (internal quotation and citation omitted).

Here, nothing in the TAC suggests defendants had reason to believe outsourcing work to companies like the third-party studios would cause the harm suffered by Glass Egg, namely, "interfere[nce] with [Glass Egg's] employment relations." (See TAC ¶ 331.) Indeed, Glass Egg alleges the purpose of the "due diligence" described in the TAC is to

1  ensure the outsourcing company, in this instance, Gameloft Spain, is provided a quality
2  product and that confidentiality of the proprietary information of its car manufacturer
3  licensors, e.g., BWM, Chevrolet, is maintained (see id. ¶¶ 68-72, 159), not to prevent
4  companies, like the third-party studios, from re-outsourcing work in a manner that may
5  lead to interference with another studio's employment relations. In sum, Glass Egg has
6  again failed to show the harm it allegedly suffered was foreseeable, and, thus, that
7  Gameloft USA owed it a duty of care.

Accordingly, Glass Egg's negligence claim is subject to dismissal without leave to amend.[10]

### D. Unfair Competition

Glass Egg's unfair competition claim is brought under the UCL, which prohibits "unlawful, unfair, or fraudulent business act[s] or practice[s]." See Cal. Bus. & Prof. Code § 17200. The Court dismissed plaintiffs' unfair competition claim as alleged in the SAC, in that is was derivative of plaintiffs' other causes of action, all of which had been dismissed. As discussed above, however, Glass Egg's conversion claim, as alleged in the TAC, is not subject to dismissal. Accordingly, to the extent Glass Egg's unfair competition claim is based on its conversion claim, the unfair competition claim likewise is not subject to dismissal.

### CONCLUSION

For the reasons stated above, Gameloft USA's motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1. To the extent Gameloft USA seeks dismissal of Glass Egg's copyright infringement claim, the motion is GRANTED, the claim is DISMISSED, and to the extent Glass Egg bases such claim on the polygon arrangements, leave to amend is afforded as set forth above.

---

[10] In light of such finding, the Court does not address herein Gameloft USA's arguments based on Copyright Act and CUTSA preemption.

16

2. To the extent Gameloft USA seeks dismissal of Glass Egg's conversion claim, the motion is DENIED.

4. To the extent Gameloft USA seeks dismissal of Glass Egg's negligence claim, the motion is GRANTED.

5. To the extent Gameloft USA seeks dismissal of Glass Egg's unfair competition claim, the motion is (a) GRANTED to the extent said claim is based on copyright infringement and negligence; and (b) DENIED to the extent said claim is based on conversion.

Glass Egg's Fourth Amended Complaint shall be filed no later than August 17, 2018.

**IT IS SO ORDERED.**

Dated: August 2, 2018

MAXINE M. CHESNEY
United States District Judge