1 | KYZEN LAW PC
Q. Huy Do (State Bar No. 184462)
2 | 1390 Market Street, Suite 200
San Francisco, California 94102
3 | Tel.: 415.991.1881
Fax: 415.406.1881
4 | Email: huy@kyzenlaw.com

5 | Attorneys for Plaintiff GLASS EGG DIGITAL MEDIA LIMITED,
a British Virgin Islands Corporation

6

7

8 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

9

10

11 | GLASS EGG DIGITAL MEDIA LIMITED,
a British Virgin Islands Corporation,

**Case Number: 3:17-cv-04165 MMC [RMI]**

12 | **PLAINTIFF GLASS EGG DIGITAL
MEDIA LIMITED'S BRIEF REGARDING
SCOPE OF JURISDICTIONAL
DISCOVERY**

13 | Plaintiff,

14

15 | v.

16

17 | GAMELOFT, INC., a Delaware Corporation;
GAMELOFT SE, a France Corporation, and
DOES 1-20

18

19 | Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITITES ................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.    JURISDICTIONAL DISCOVERY TO ESTABLISH SPECIFIC JURISDICTION ......... 2

        A.   Discovery of Pertinent Facts Bearing On Jurisdiction Permitted ............................ 2

        B.   Facts Bearing on Purposeful Direction and Intentional Act Relevant ...................... 2

            *1. Only the first of the three-prong test for specific jurisdiction is at issue* ............... 2

            *2. Facts bearing on purposeful direction and intentional act discoverable.* .............. 3

            *3. Discoverable Forum Activities Relating to Intentional Acts of Misconduct* .......... 4

    II. SCOPE OF PERMISSIBLE DISCOVERY ............................................................. 7

        A.   GLSE's Business ................................................................................................. 8

            *1. Development & Production* ............................................................................ 8

            *2. Marketing & Promotion* ................................................................................. 8

            *3. Publication & Distribution* ............................................................................ 9

            *4. Sales & Revenue* ......................................................................................... 9

        B.   Meaning of "Size of Business" is Co-Extensive with Caselaw ............................ 11

        C.   The Identity of the Website Operator Pertains to Website Content ........................ 13

    III.  PLAINTIFF'S DISCOVERY REQUESTS AGAINST GLSE ARE PROPER ............. 13

    IV.  OVERLAPPING DISCOVERY AGAINST OTHER PARTIES IS PROPER ............... 15

CONCLUSION ....................................................................................................... 16

1

# TABLE OF AUTHORITITES

2

3   **Cases**

4   *Adams v. Allianceone*, 2008 WL 11336721 (SD Cal. 2008) ...................................................... 15

5   *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549 (2017)...................................................................... 11

6   Brown v. Lockheed, 814 F.3d 619 (2nd Cir. 2016) ..................................................................... 11

7   *Daimler AG v. Bauman*, 571 U.S. 117 (2014) ......................................................................... 11

8   *Data Disc v. Systems Technology*, 557 F.2d 1280 (9th Cir. 1977)............................................... 2, 3

9   *Gray v. First Winthrop*, 133 F.R.D. 39 (N.D. Cal. 1990)........................................................... 15

10   *Keeton v. Hustler*, 465 U.S. 770 (1984).................................................................................... 4

11   *Klein v. Freedom Strategic Partners*, 595 F. Supp. 2d 1152 (D. Nev. 2009)............................... 16

12   *Mavrix v. Brand*, 647 F.3d 1218 (9th Cir. 2011) ................................................................. passim

13   *Quigley v. Guvera*, 2010 Westlaw 5300867 (ND Cal. 2010) ...................................................... 13

14   *Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. App'x 738 (2d Cir. 2002).......... 16

15   *Toys R Us v. Step Two*, 318 F.3d 446 (3rd Cir. 2003) ........................................................... passim

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED

1. What is the proper test for specific jurisdiction and how does this impact the scope of jurisdictional discovery?

2. Guided by the proper test for specific jurisdiction, what is the permissible scope of jurisdictional discovery to establish specific jurisdiction as allowed by Judge Chesney?

3. Can limitations on jurisdictional discovery that overlap with claims and defenses act as a bar to evidence that is also related to the claims and defenses?

## SUMMARY OF ARGUMENT

Gameloft SE ("GLSE") distorts the facts,[1] record[2] and the law in its overly zealous jurisdictional defense. With respect to the law, GLSE claims that the substantive law on specific jurisdiction only allows discovery of evidence which is the "but for" cause of Plaintiff's copyright claim, yet case authority is to the contrary. *See infra*. This blatant misstatement of the law is then used to misinterpret Judge Chesney's Order allowing for jurisdictional discovery.

Controlling caselaw clearly allows discovery of facts pertinent to the jurisdictional inquiry, *i.e.* whether the publication and distribution of the allegedly infringing Asphalt car racing games online via a website accessible to California residents were "purposefully directed" at California. Courts routinely look at offline and online contacts with the forum to determine whether the

---

[1] GLSE claims that it is not subject to jurisdiction in California because it does not do business here, yet there are at least two lawsuits wherein GLSE admits it is doing business (1) in California (in 2009, GLSE, as the plaintiff, sought declaratory relief that it is not committing copyright infringement and in its civil cover sheet GLSE states it is "doing business in Los Angeles") and (2) with California companies (in 2015 GLSE, as the defendant, answered and admitted that it signed a contract with Fox Digital Entertainment, a California company, to develop and publish mobile games using the *Ice Age* movie characters). Declaration of Q. Huy Do ("Do Decl.") at Ex. J, K. These lawsuits bear on the "purposeful direction" test. Given these lawsuits, it is more probable than not that GLSE promotes and sells the allegedly infringing Asphalt games in California. GLSE is effectively arguing that, as a mobile game company, it promotes and sells other mobile games in California <u>except</u> the Asphalt games, the longest and most successful of all its game franchises with over 300 million downloads/players, 3.5 billion hours and 30 billion races. *Id.* at Ex. N.

[2] GLSE claims that the parties dispute who the moving party is, yet in email communications it acknowledges that Plaintiff is the moving party. *Id.* at Ex. L ("It was YOU who raised this issue recently and suggested a joint letter to Judge Illman. The fact that GLSE agrees that the issue should be vetted in more detail than occurred during the earlier phone call does not turn this into GLSE's idea."); *see also* Dkt. 165, n.2.

1 | intentional act of infringement was "expressly aimed" at the forum, including activities relating to
2 | the development and marketing of the Asphalt games, along with revenues derived from the
3 | unauthorized use of the copyrighted product. Plaintiff's discovery in this regard is proper and
4 | GLSE must respond and produce responsive information.

5 | **ARGUMENT**

6 | **I.   JURISDICTIONAL DISCOVERY TO ESTABLISH SPECIFIC JURISDICTION**

7 | **A.   Discovery of Pertinent Facts Bearing On Jurisdiction Permitted**

8 | "A court may permit discovery to aid in determining whether it has in personam jurisdiction.
9 | [citation omitted]…Discovery may appropriately be granted where <u>pertinent facts bearing on the</u>
10 | <u>question of jurisdiction</u> are controverted or where a more satisfactory showing of the facts is
11 | necessary." *Data Disc v. Systems Technology*, 557 F.2d 1280, 1285, n.1 (9th Cir. 1977)
12 | (underlining added).

13 | **B.   Facts Bearing on Purposeful Direction and Intentional Act Relevant**

14 | GLSE improperly narrows the scope of permissible discovery by ignoring controlling case
15 | authority regarding the scope of relevant evidence in the specific jurisdiction analysis. It argues
16 | that if Plaintiff's copyright claim[3] does not arise out of or relate to a particular piece of evidence,
17 | such evidence is *per se* outside the scope of jurisdictional discovery. Controlling case authority,
18 | discussed below, makes clear that jurisdictional discovery is <u>not</u> limited in this way. Instead, once
19 | an intentional act of misconduct is alleged and identified, *i.e.* infringement, conversion, unfair
20 | competition, jurisdictional evidence bearing on that act's "purposeful direction" is discoverable.
21 | *Mavrix v. Brand*, 647 F.3d 1218, 1227-31 (9th Cir. 2011).

22 | **1.   Only the first of the three-prong test for specific jurisdiction is at issue.**

23 | The Ninth Circuit applies a three-prong test for specific jurisdiction: (1) "the non-resident
24 | defendant must purposefully direct his activities or consummate some transaction with the forum
25 | or resident thereof;" (2) "the claim must be one which arises out of or relates to the defendant's

26 |

27 | [3] Plaintiff disputes that the jurisdictional inquiry is only limited to the copyright claim. The Fourth
28 | Amended Complaint ("FoAC") alleges three claims: copyright infringement, conversion, and unfair competition.

1   forum-related activities"; and (3) the exercise of jurisdiction must be reasonable. *Id.* at 1227-28.

2          As applied, Plaintiff's jurisdictional discovery against GLSE relates to the <u>first</u> prong, since

3   under *Mavrix*, the fact that the infringing Asphalt games were published and distributed "on a

4   website accessible to users in" California already <u>per se</u> establishes the <u>second</u> prong. *See Mavrix*,

5   647 F.3d at 1228 (holding that plaintiff's claim of "copyright infringement arises out of

6   [defendant's] publication of the photos on a website accessible to users in the forum state"). GLSE

7   completely ignores the <u>first</u> prong and wholesale collapses the first and second prong together,

8   improperly removing the "purposeful direction" prong from the jurisdictional discovery purview.

9   Relying on the <u>second</u> prong of the specific jurisdiction inquiry, GLSE argues that <u>all</u> discoverable

10  evidence regarding the <u>first</u> prong must also "arise out or relate to the claim" and not, as noted in

11  *Data Disc,* "pertinent facts bearing on the question of jurisdiction".  557 F.2d at 1285, n.1. This is,

12  at best, a misstatement of controlling law.

13          **2.     Facts bearing on purposeful direction and intentional act discoverable.**

14          With respect to the <u>first</u> prong and for tort claims, the Ninth Circuit relies on a purposeful

15  direction analysis. *Id.* at 1228. This analytical paradigm applies "an 'effects' test that focuses on

16  the forum in which the defendant's actions were felt, whether or not the actions themselves

17  occurred within the forum." *Id.* This test requires that "'the defendant allegedly must have (1)

18  committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

19  defendant knows is likely to be suffered in the forum state.' [citation omitted]." *Id.*

20          Here, like the defendant's intentional publication of allegedly infringing photos on a website

21  in *Mavrix*, *id.* at 1229, it is undisputed that GLSE committed the intentional act of publishing and

22  distributing the allegedly infringing Asphalt games on its website and through mobile app stores,

23  both of which are accessible to California residents. The crux of the jurisdictional discovery,

24  therefore, is whether GLSE "expressly aimed" such publication and distribution at the forum state.

25  *Id.* at 1229. Relying on the evidentiary concept of relevance in Rule of Evidence 401 ("Rule 401"),

26  courts have consistently relied on forum activities arising out of or relating to the intentional act of

27  the alleged misconduct to discern intent of purposeful direction. *See, e.g. Mavrix*, 647 F.3d at

28  1229-31; *Toys R Us v. Step Two*, 318 F.3d 446, 455-58 (3ʳᵈ Cir. 2003). In other words, do these

discoverable forum activities "make [the intentional act of publication and distribution] more or less probable" of being "expressly aimed" at the forum.

### 3.   Discoverable Forum Activities Relating to Intentional Acts of Misconduct

In stark contrast to GLSE's mistaken legal position that jurisdictional discovery is limited to solely intentional acts of infringement, conversion, and/or unfair competition, *i.e.* arising out of or relating to the claims, case after case of controlling precedent demonstrate that discovery of activities arising out of or relating to one or more intentional acts of misconduct are discoverable because such evidence is directly relevant to and relied upon in determining whether a nonresident defendant "expressly aimed" its activities at California.

For example, in *Mavrix*, after the Ninth Circuit identified the intentional act of misconduct, *i.e.* publication of allegedly infringing photos on a website, 647 F.3d at 1229, the Court proceeded to rely on relevant online <u>and</u> offline forum related activities, or "something more", to determine whether such publication was "expressly aimed" at California. *Id.* The Ninth Circuit identified a number of factors, including "interactivity of the defendant's website," "the geographic scope of the defendant's commercial ambitions," and, among other factors, "exploitation of the California market for [the defendant's] commercial gain." *Id.* Such evidence arises out of or relates to the intentional act of publication. Applying GLSE's legally infirm standard would be non-sensical: Does Mavrix's copyright claim "arise out of or relate to" the "interactivity of the defendant's website", or "the geographic scope of defendant's commercial ambition"? Instead, the "interactivity of the website" and "geographic scope of defendant's commercial ambitions" are "pertinent facts bearing on the question of jurisdiction", namely whether the publication of allegedly infringing photos on the website was "expressly aimed" at California.

To further illustrate this point, the Ninth Circuit relied on the US Supreme Court decision *Keeton v. Hustler*, 465 U.S. 770 (1984), to draw a parallel from selling magazines to forum residents in *Keeton* to getting more forum residents to visit a website in *Mavrix*, allowing the nonresident defendant to collect more money paid by advertisers. "A substantial number of hits to [defendant's] website came from California residents." *Id.* at 1230. The Court also found it relevant "that some of the third-party advertisers on [defendant's] website had advertisements

directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base and that it exploits that base for commercial gain by selling space on its website for advertisements." *Id.* Mavrix's copyright claim does not "arise out of or relate to" any of these facts. Instead, these discoverable forum activities tend to show the purposeful intent behind the intentional misconduct, *i.e.* publication of the infringing photos. The Ninth Circuit also expressly mentioned that marketing in local media would have been relevant to its analysis. *Id.* at 1230. The Court relied on defendant's "specific focus on the California—centered celebrity and entertainment industries. Based on the website's subject matter, as well as the size and commercial value of the California market, [the Ninth Circuit] conclude[d] that [defendant] anticipated, desired, and achieved a substantial California viewer base. This audience is an integral component of [defendant's] business model and its profitability." *Id.*

In the course of its specific jurisdiction analysis, the Ninth Circuit explicitly identified relevant, *i.e.* discoverable, evidence: the number of forum website visitors, number of advertisers targeting forum residents, sales from advertising, marketing in the forum, and the importance of California specific industries to defendant's business, which were all relied on to determine whether the intentional act of publication was "expressly aimed" at California. *Id.* According to GLSE, none of these facts is discoverable because such evidence is not the "but for" cause of the copyright claim in *Mavrix*. The Ninth Circuit disagrees. Instead, the proper jurisdictional inquiry is whether such forum activities bear on the "purposeful direction" of the intentional act of publishing the infringing photos, *i.e.* was it directed at California.

The Ninth Circuit is not alone in this approach. In *Toys R Us v. Step Two*, 318 F.3d 446 (2003), the Third Circuit, also reached a similar conclusion. "[A] court may consider the defendant's related non-Internet activities as part of the 'purposeful availment' calculus." *Id.* at 453. In considering whether a website that allegedly contained infringing trademarks was directed at the forum, the Third Circuit explicitly identified relevant evidence as comprising of a defendant's vendors, suppliers, attendance of trade shows, and ads in publications that circulate in

the United States, billing forum residents, collecting revenues from forum residents, and sales from goods ordered from the forum. *Id.* Although cautioning that "the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction" is determined on a "case-by-case basis", the Third Circuit proceeded to unequivocally identify relevant jurisdictional facts, "such as serial business trips to the forum state, telephone and fax communications directed to the forum state, purchase contracts with forum state residents, contracts that apply the law of the forum state, and advertisements in local newspapers, may form part of the 'something more' needed to establish personal jurisdiction." *Id.* at 453-54.  Again, none of these items standing alone constitute acts of infringement, yet all were determined relevant in the <u>first</u> prong of the specific jurisdiction inquiry.  The Third Circuit astutely observed that "any information regarding [defendant's] intent vis-à-vis its Internet business and regarding other related contacts is known by [defendant], and can be learned by [Plaintiff] <u>only</u> through discovery." *Id.* at 455 (underlining added).  In the end, the Third Circuit ordered the district court to allow jurisdictional discovery "into [defendant's] business plans for purchases, sales, and marketing.  Limited discovery relating to these matters would shed light on the extent, if any, [defendant's] business activity—including, but not limited to, its web site—were aimed towards the United States.  This information, known only to [defendant], would speak to an essential element of the personal jurisdiction calculus." *Id.* at 457.

The following table summarizes the relevant discoverable jurisdictional facts identified by the courts in *Mavrix* and *Toys*:

| Discoverable Jurisdiction Facts | Case Citation |
|---|---|
| Interactivity of defendant's website | *Mavrix*, 647 F.3d at 1229 |
| Geographic scope of defendant's commercial ambitions | *Mavrix*, 647 F.3d at 1229 |
| Exploitation of California market for commercial gain | *Mavrix*, 647 F.3d at 1229 |
| Makes money by selling ad space on its website to third-party advertisers | *Mavrix*, 647 F.3d at 1230 |
| California visitors to defendant's website | *Mavrix*, 647 F.3d at 1230 |
| Hits (clicks) to the ads | *Mavrix*, 647 F.3d at 1230 |
| Ads directed at California residents | *Mavrix*, 647 F.3d at 1230 |
| Marketing of website to local media | *Mavrix*, 647 F.3d at 1230 |
| California's celebrity and entertainment industries | *Mavrix*, 647 F.3d at 1230 |

| Discoverable Jurisdiction Facts | Case Citation |
|---|---|
| Website's subject matter | *Mavrix*, 647 F.3d at 1230 |
| Size and commercial value of California market | *Mavrix*, 647 F.3d at 1230 |
| California viewer base | *Mavrix*, 647 F.3d at 1230 |
| Substantial profits from local consumers | *Mavrix*, 647 F.3d at 1231 |
| Repeatedly and consciously chose to process forum's resident's application and assigned passwords | *Toys*, 318 F.3d at 452 |
| Defendant's forum vendors/suppliers | *Toys*, 318 F.3d at 453 |
| Attendance at trade shows in forum | *Toys*, 318 F.3d at 453 |
| Ads in publications that circulate in US | *Toys*, 318 F.3d at 453 |
| Billing forum customers | *Toys*, 318 F.3d at 453 |
| Collecting revenues from forum customers | *Toys*, 318 F.3d at 453 |
| Recorded sales from goods order from forum | *Toys*, 318 F.3d at 453 |
| Website accommodated addresses in US | *Toys*, 318 F.3d at 453 |
| Serial business trips to forum | *Toys*, 318 F.3d at 453 |
| Telephone and fax communications direct to forum | *Toys*, 318 F.3d at 453-54 |
| Purchase contracts with forum state residents | *Toys*, 318 F.3d at 454 |
| Contracts that apply law of forum | *Toys*, 318 F.3d at 454 |
| Ads in local newspapers | *Toys*, 318 F.3d at 454 |
| Business plans for purchases, sales, marketing in forum | *Toys*, 318 F.3d at 457 |
| Purchases from US vendors | *Toys*, 318 F.3d at 457 |
| Attendance of annual fair in forum | *Toys*, 318 F.3d at 457 |
| Business plans, marketing strategies, sales and other commercial interactions in forum | *Toys*, 318 F.3d at 458 |

## II.   SCOPE OF PERMISSIBLE DISCOVERY

With the above proper jurisdictional inquiry in mind, it becomes clear that Judge Chesney properly recognized that discoverable jurisdictional evidence pertain to both GLSE's offline and online activities. Dkt. 94. The Order demarcated two discoverable categories: (1) "size of [GLSE's] business in California" and (2) "the identity of the Gameloft entity/entities that operate(s) the website accessible to website users in California." Dkt. 94 at 2:1-3. From these two categories, GLSE offers only to produce four (4) items, a paltry amount of information in light of the scope of its business in California:

1. The licensing and servicing agreements between GLSE and Gameloft, Inc. ("GLI")
2. An Apple Developer License Agreement
3. Reports of US sales of mobile car games alleged in the Fourth Amended Complaint under contract between GLSE and Apple
4. The website registration for gameloft.com

As demonstrated above, caselaw permits the discovery of the number and identity of forum vendors, suppliers, advertisers, website visitors, players, trade shows, business plans for California, relevant California industries, hiring of California residents to produce and promote the Asphalt games and/or operate and write content for the website—all of which determine the "size of GLSE's business in California" and/or the "identity of the Gameloft entity/entities that operate(s) the website accessible to website users in California", which in turn directly bear on whether the publication and distribution of the Asphalt games were "purposefully directed" at California.

### A.   GLSE's Business

As a threshold matter, defining GLSE's "business" will help inform what is covered by the phrase "size of GLSE's business in California". GLSE admits its business entails acquiring licensed IP from brand owners to "develop, publish, distribute and promote applications for smartphones and tablets". Do Decl. at Ex. K. GLSE's business is similarly described in its annual report, which is subsumed within its parent's, Vivendi's, annual report. *Id.* at Ex. C.

#### 1.   Development & Production

GLSE is the publisher of mobile games, including the allegedly infringing Asphalt mobile car racing games. GLSE licenses intellectual property ("IP") rights from car manufacturers (like Tesla, a California company) to incorporate digital versions of those cars into the Asphalt games. Do Decl. at Ex. A. GLSE also partners with brand holders (like Mattel, a California company) to incorporate their brands into the Asphalt games. *Id.* at Ex. B (Hot Wheels). The Asphalt games are localized to specific markets. *Id.* at Ex. C (p.30).

#### 2.   Marketing & Promotion

GLSE markets and promotes the Asphalt games through partnerships with local organizations like the French American Chamber of Commerce San Francisco, and by attending and showcasing the Asphalt games at annual industry conferences for mobile games like GDC, Do Decl. at Ex. H and P, and E3, Do Decl. at Ex. I and Q, which are both located in California.

There is also evidence that GLSE uses SmartRecruiters to post jobs and hire California residents to promote the Asphalt games. For example, there was a listing for a PR Manager for the Gameloft San Francisco office. The job description references the Asphalt game and says that the

1  position will "work closely with our North American team as well as the Global team based
2  overseas to help grow Gameloft's awareness in the gaming industry and in the digital advertising
3  industry." Do Decl. at Ex. M.  Marketing and promoting for commercial gain the Asphalt games
4  containing infringing copyrighted material are acts of infringement--directly relevant to liability
5  and damages.  Likewise, the hiring of this person to promote Asphalt games is a specific contact in
6  California.  From this contact, acts of infringement took place, giving rise to the claims alleged in
7  the complaint.

8         **3.**    **Publication & Distribution**

9      GLSE distributes the Asphalt games through its website, app stores (Apple App Store,
10 Google Play, the Windows Store, and Amazon Appstore) and telecom companies. *Id.* at Ex. C
11 (p.30-31).  Like in *Mavrix* and *Toys*, Plaintiff is entitled to discover whether the distribution of the
12 Asphalt games via these methods were "expressly aimed" at California by obtaining information of
13 the size of GLSE's business in California, including California visitors to its website, California
14 players who have downloaded the Asphalt games, sales from the Asphalt in-game assets to
15 California players, ad sales paid by California advertisers and/or ads targeted at California
16 residents, purchases, sales and marketing business plans for California, whether the website
17 collects addresses and/or geographical information, among other relevant facts.  All such activities
18 tend to make it more probable than not that GLSE purposefully directed its business at California.
19 Such information is "known only to [defendant], [and] would speak to an essential element of the
20 personal jurisdiction calculus." *Toys*, 318 F.3d at 457.

21        **4.**    **Sales & Revenue**

22     "These free-to-play games generate revenue both through the sale of in-game virtual goods
23 that enable the player to make faster progress, <u>and</u> through advertising." *Id.* at Ex. C (p.30)
24 (underling added).  The in-game virtual goods sold in the Asphalt games include the digital models
25 of licensed cars and car accessories.  The advertising is sold through "an internal digital advertising
26 sales agency, Gameloft Advertising Solutions ["GLADS"], which sells advertising in its mobile
27 apps." *Id.* "In 2017, these advertising sales accounted for 14% of Gameloft's revenue (7% in
28 2016), supplementing the proceeds from in-game sales." *Id.* GLSE is keen to expand this ad

1  revenue model on its GLAD platform since "[m]obile advertising spending is expected to climb to

2  $114 billion in 2018 from $50 billion in 2015." *Id.*

3      To capitalize on the hundreds of millions of players of the Asphalt games, GLSE partners

4  with different technology vendors and suppliers to gain more advertisers and to serve targeted ads.

5  *Id.* at Ex. D (AppNexus) & E (SpotX). GLADS is able to collect demographic information,

6  including geography. *Id.* at Ex. F. Consequently, ads can be targeted and served to players by

7  selected locations.  The more players, the more ad revenue the game generates. "To date, Gameloft

8  Advertising Solutions has delivered more than 3000 campaigns for prestigious brands such as Air

9  France, Coca-Cola®, Ford, FOX™, Kellogg's®, McDonalds, ©Netflix, Procter & Gamble,

10  Samsung and Unilever, in over 40 countries around the world (North America, Latin America,

11  Middle East, Africa, Europe, Asia, etc.)." *Id.* Ex. G. Running 3000+ online ad campaigns,

12  including for many California-based companies, via technology that allows targeting based on

13  geography is the very embodiment of "purposeful direction". GLSE asserts that "[b]ecause

14  Plaintiff's claims do not arise from or relate to such advertising, that information is beyond the

15  permissible scope of jurisdictional discovery allowed by Judge Chesney." Again, this is a

16  misapplication of the purposeful direction test. As illustrated in *Mavrix*, the ads in the Asphalt

17  games targeting California residents tend to establish that the publication and distribution of the

18  Asphalt games on the website were directed at California.  *See Mavrix*, 647 F.3d at 1230. The

19  same compelling logic holds true for California advertisers.

20      In sum, GLSE's business, as it pertains to jurisdictional discovery to support Plaintiff's three

21  remaining claims, encompasses with whom GLSE develops and produces the Asphalt games (CA

22  licensors and technology vendors), with whom GLSE markets and promotes the Asphalt games

23  (hiring CA residents, promotion with CA organizations, and attendance at CA industry

24  conferences), how GLSE publishes and distributes the Asphalt games (website, geotagging) and

25  the volume of sales and revenues generated by the Asphalt games through in-game sales and ads

26  (CA players, CA ads, and/or CA advertisers/industry).

27

28

**B.    Meaning of "Size of Business" is Co-Extensive with Caselaw**

This language ("size of [GLSE's] business in California") was suggested by Plaintiff's counsel.  TR at 47:1-15.  Plaintiff's counsel would be in the best position to explain what he meant, which is consistent with Judge Chesney's statements during the hearing and controlling caselaw.  The use of the word "size" and "business" covers a number of factors examined by courts to rule on specific jurisdiction.

Importantly, "size" necessarily means relative to an overall number, *i.e.* the denominator, a percentage.  It is important in both general <u>and</u> specific jurisdiction analytical frameworks. *See, e.g., Brown v. Lockheed*, 814 F.3d 619, 629 (2nd Cir. 2016) (ruling that there was no general jurisdiction where corporation's "business in [the forum], while not insubstantial, constitutes only a very small part of its portfolio.  For example,… its Connecticut-based employees represented less than 0.05 percent of [company's] full workforce" and the $160 million in gross revenue derived from forum-based operations over five years "never exceeded 0.107 percent of the company's total annual revenue"); *see also BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1554 (2017) (noting that railroad "has 2,061 miles of railroad track in Montana (about 6 percent of its total track mileage of 32,500), employs some 2,100 workers there (less than 5 percent of its total work force of 43,000), generates less than 10 percent of its total revenue in the State, and maintains only one of its 24 automotive facilities in Montana (4 percent)"); *accord with Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) ("General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.")

Judge Chesney remarked from the bench, using the term "percentage", that it is important to evaluate how important California is to GLSE's overall business. *Id.* at 39:11-15 ("in terms of how big a market is California…California may or may not be a sizable <u>percentage</u> of their income.") (underline added).  Instead of being a part of the "at home" general jurisdiction analysis, the relative size is relevant to the reasonableness inquiry, the third prong of the specific jurisdiction test.  The size of the business in different jurisdictions helps determine whether the exercise of specific jurisdiction is reasonable, *i.e.* it is reasonable if "the consumption of [a defendant's]

1  products in any state [is not] 'random,' 'fortuitous,' or 'attenuated.' [citations omitted]. Rather,

2  consumption was a predictable consequence of their business models." *Mavrix,* 647 F.3d at 1230.

3      Size does not mean just "sales".  In this context, size means the relative "extent" of GLSE's

4  business in California.  In fact, Judge Chesney considered but did <u>not</u> use the phrase "amount of

5  sales here in California". *Id.* at 45:22-25; 37:20-23. She declined to limit discovery to sales:

6  "Originally I was thinking more in terms of how much money are they really making out of the

7  California market? Because that's a significant factor in most of the cases." In referencing "various

8  flags" for discovery, she said, "I think [sic] might be appropriate to give the plaintiff some limited

9  discovery <u>on these points,</u> <u>including</u> the sales, perhaps, here in California." *Id.* at 24:10-17

10  (underline added).

11      She wondered whether GLSE expressed aimed its activities at California by attending

12  industry conferences. *Id.* at 17:6-10, 20:8-16. She referred to "how many people buy" in

13  California. *Id.* at 22:9. This means the number of actual California players who "buy" in-game

14  assets <u>and</u> California advertisers who "buy" ads targeting California residents are all within the

15  permissible scope of jurisdictional discovery.

16      GLSE argues that Judge Chesney limited jurisdictional discovery to an "economic concept",

17  as a shorthand reference for sales. This is completely belied by the use of the term "economic

18  value" in *Mavrix* to mean much more than "sales". Without mentioning "sales" and after

19  referencing marketing in California's local media, California's celebrity and entertainment

20  industries, the size and commercial value of the California market, the California viewer base,

21  among other factors, the Ninth Circuit held, "[a]s in *Keeton,* it does not violate due process to hold

22  [defendant] answerable in a California court for the contents of a website whose <u>economic value</u>

23  turns, in significant measure, on its appeal to Californians." *Id.* at 1230 (underlining added).  As

24  used in *Mavrix,* "economic value" is not just sales, but the size and commercial value of the

25  market, including viewer base and California specific industries. By logical extension, the

26  "economic value" of California to the Asphalt games includes the IP licensors, the players and

27  advertisers in California, and the California organizations that help promote or hire people to

28  promote the Asphalt franchise.

**C.    The Identity of the Website Operator Pertains to Website Content**

Judge Chesney openly asked what "operated by" means. TR at 8:16-21 ("maybe a subject for discovery").  Discovery of who owns, controls, writes and publishes the content on the website accessible by California residents all bear on the identity of the operator.  Similarly, the identity inquiry also touches on who hires and controls the personnel that is responsible for the operation and content of the website.

In particular, Judge Chesney questioned why the website referenced California privacy law. TR at 12:3-23; 13:18-20; 15:8-19 ("two references to California law on the website…Both of them California, no references to any other state.  And so there could be explanations.  And it may not be enough in and of itself.  But it starts raising some interest in that and somebody might have to do some explaining at some point.") The entity that ultimately decided to reference California law in the website's terms of use also bears on the identity of the website operator. Judge Chesney referenced a case involving California privacy law. *Quigley v. Guvera*, 2010 Westlaw 5300867 (ND Cal. 2010).  She noted: "You might want to inquire as to why they chose California law and decided to throw in this privacy idea, which they're now reconsidering."  TR at 42:9-11. *See also Mavrix*, 647 F.3d at 1229; *Toys R Us*, 318 F.3d at 453-54 ("non-internet contacts such as…contracts that apply the law of the forum state…may form part of the "something more" needed to establish personal jurisdiction.")

Caselaw also references interactive features as pertinent on the purposeful direction analysis. In particular, the identity of the Gameloft entity that controls and/or receives data from these interactive features is relevant discoverable evidence in this category. *Toys*, 318 F.3d at 452-53.

**III.   PLAINTIFF'S DISCOVERY REQUESTS AGAINST GLSE ARE PROPER**

In March and April 2018, Plaintiff propounded GLSE two sets of requests for documents ("RFDs"), two sets of Requests for Admissions ("RFAs"), one set of interrogatories ("ROGs"), and one Deposition Notice.  After nearly ten (10) months of negotiations, GLSE took an extremely narrow view of the permissible jurisdictional scope and finally identified only 4 items it was willing to produce:

1.    The licensing and servicing agreements between GLSE and Gameloft, Inc.

2. An Apple Developer License Agreement
3. Reports of US sales of mobile car games alleged in the Fourth Amended Complaint under contract between GLSE and Apple
4. The website registration for gameloft.com

Having exhausted the meet and confer process, Plaintiff's counsel then suggested that the parties request Magistrate Judge Illman to resolve the jurisdictional scope. Do Decl., Ex. O.

As demonstrated above in *Mavrix* and *Toys*, the types of relevant facts to determine "purposeful direction" entails much more than the four items proffered by GLSE. Acutely missing are relevant facts relating to Asphalt players and advertisers in California, as well as the IP licenses from California companies relating to the Asphalt games, the service providers and industry conferences in California that GLSE used to promote the Asphalt games, website visitors from California, technology suppliers in California, business plans for California, among others, all of which bear on whether GLSE "expressly aimed" the publication of the Asphalt games via its website to California residents.

For ease of reference, Plaintiff has created a chart (Appendix A) of all the discovery propounded against GLSE and for each one identified how such request falls within the scope of the two permitted categories in the Order. Plaintiff incorporates by reference, Appendix A, as though fully set forth herein.

Following GLSE's own description of its business, the "size of GLSE's business in California" category is represented by the letter "A" and organized in four subparts:

1. Development & Production (contracts and licenses with car manufacturers and service providers relating to Asphalt games and ad campaign)
2. Marketing & Promotion (promotions, partnerships, sponsorships, trade shows relating to Asphalt games and GLADS)
3. Publication & Distribution (via website, app stores and telecom operators relating to Asphalt games)
4. Sales & Revenue (either from ads paid by advertisers or in-game assets paid by players)

Likewise, "B" connotes the "identity" category, which is further organized in two subparts:

1. Content: (author, publisher, control)
2. Technical: (geotagging, interactivity, cookies, data mining, maintenance)

Plaintiff requests Your Honor to find its discovery requests to GLSE fall under one or both of the two categories of permissible jurisdictional discovery established by Judge Chesney's written order; and order GLSE to provide full and complete responses and documents thereto.

## IV.  OVERLAPPING DISCOVERY AGAINST OTHER PARTIES IS PROPER

In the parties' joint letter on the jurisdictional scope issue at page 2, "GLSE dispute[d] Plaintiff's right to issue the subpoenas and to responses from [GLI] to the extent, inter alia, they exceed the allowed jurisdictional discovery."[4] To date, GLSE has not identified any discovery request by Plaintiff either to third parties or to co-defendant GLI wherein such request is solely related to jurisdiction, but not related to the claims and defenses in this case, and at the same time, outside the scope of permissible jurisdictional discovery.  Plaintiff is entitled to issue subpoenas and pursue party discovery, subject only to the limitations set forth in Rule 26(b)(1). In short, Judge Chesney's Order does not limit such discovery in any way.  If any such request pertains to the claims and defenses, that request is permissible and not barred by the Order.  In opposition to Defendants' Motion to Quash, at Dkt. 168, Plaintiff has demonstrated the legal propriety of the subpoenas under Rule 26(b)(1) and hereby incorporates such opposition herein.

More importantly, GLSE's position is legally untenable. As GLSE must recognize, jurisdictional facts in the context of specific jurisdiction must relate to the underlying claims or an intentional act of misconduct pertaining to any claim. *See Mavrix*, 647 F.3d at 1227-30.   To illustrate, discovery requests against GLSE about SmartRecruiters and the subpoena to SmartRecruiters relate to both jurisdiction and to the claims and defenses in the case.  Job postings

---

[4] This position has no merit and appears to be used to improperly obtain a stay of the subpoenas even though Defendants have not established standing or the required "good cause" for a stay. *See Gray v. First Winthrop*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (denying motion to stay despite pending motion to dismiss and noting that orders to stay "are only appropriate…upon a showing of 'good cause'… a party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied. [citation omitted]. The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements. [citation omitted].")). *Adams v. Allianceone*, 2008 WL 11336721 at *2 (SD Cal. 2008) ("Generally, motions to stay discovery are not favored as Courts view them as undercutting 'the Federal Rules liberal discovery provisions.' [citing *Gray*].") Plaintiff requests that Defendants' Motion to Quash, Dkt. 168, be heard and decided as soon as permitted by the court's schedule and not be delayed until after the court's decision on this Discovery Motion re: jurisdictional scope, Dkt. 165.

1    on SmartRecruiters by GLSE bear on the issue of "purposeful direction" because searching for

2    California staff to promote Asphalt tends to show that GLSE did do business in California, *i.e.*

3    promote and sell the Asphalt games to California residents.  Similarly, marketing and promoting

4    for commercial gain the Asphalt game allegedly containing infringing copyrighted material are

5    acts of infringement--directly relevant to liability (who is liable and more comparatively at fault

6    between GLSE and GLI) and damages (whether and how much of the marketing and promotional

7    costs are deductible when calculating recoverable profits under 17 U.S.C. §504(b)).  Indeed, courts

8    have recognized that jurisdictional and merits discovery often overlap. *See, e.g., Klein v. Freedom*

9    *Strategic Partners*, 595 F. Supp. 2d 1152, 1160 (D. Nev. 2009) (ordering jurisdictional discovery

10    regarding the fiduciary shield doctrine to be joined with merits discovery on grounds of

11    efficiency); *Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. App'x 738, 739–40 (2d

12    Cir. 2002) (ordering jurisdictional discovery regarding successor liability and noting "[w]hile

13    questions of personal jurisdiction and liability are conceptually distinct, we see no reason why the

14    analysis of attribution of jurisdictional contacts in the merger context would not draw upon facts

15    and circumstances that would also be relevant to the question of successor liability.")

16    **CONCLUSION**

17        Based on the foregoing authorities and arguments, Plaintiff's discovery requests

18    propounded against GLSE are properly within the permissible scope of jurisdictional discovery

19    allowed in Judge Chesney's Order.

20

21        Respectfully submitted,

22    DATED:  April 29, 2019        KYZEN LAW PC

23        By: _____/s/_____

24        Q. Huy Do
        Attorney for Plaintiff GLASS EGG

25        DIGITAL MEDIA LIMITED

26

27

28