

**DLA Piper LLP (US)**
555 Mission Street
Suite 2400
San Francisco, California 94105-2933
www.dlapiper.com

Eliot R. Hudson
eliot.hudson@dlapiper.com
T  415.615.6026
F  415.659.7326

May 24, 2019

*VIA CM/ECF FILING*

Magistrate Judge Robert Illman
United States District Court for the Northern District of California

Re:     ***Glass Egg Digital Media v. Gameloft, Inc. et al., Case No.: 17-cv-04165-MMC***
        **Joint Letter Brief Pursuant to May 10, 2019 Order**

Magistrate Judge Illman:

In this action for copyright infringement, conversion, and unfair competition, Plaintiff Glass Egg Digital Media Limited ("Glass Egg" or "Plaintiff") and Defendant Gameloft SE ("GLSE") dispute the scope of jurisdictional discovery permitted by the Court's February 12, 2018 Order allowing discovery concerning specific jurisdiction on: "(a) the size of Gameloft SE's business in California and (b) the identity of the Gameloft entity/entities that operate(s) the website accessible to website users." (Order Granting in Part and Deferring Ruling in Part on Defendants' Motion to Dismiss ("February 12 Order"), Dkt. 94).

After the Court issued its February 12 Order, Plaintiff served GLSE with 410 written discovery requests (162 Requests for Production, 206 Requests for Admission, and 22 Interrogatories) and a Rule 30(b)(6) deposition notice on 25 topics.  GLSE timely objected to many of Plaintiff's discovery requests, as among other things, exceeding the scope of jurisdictional discovery allowed permitted by the Court. On February 19, 2019, GLSE informed Plaintiff that it had located and would produce certain documents, under agreed procedures to comply with the Hague Convention and French law, subject to a Stipulated Protective Order, and that Plaintiff could examine GLSE's witness(es) with respect to the existence of responsive documents.  Plaintiff elected to defer implementation of those procedures pending determination of the present issues concerning the scope of permissible jurisdictional discovery.

On April 5, 2019, the parties filed a joint letter regarding the present jurisdictional discovery dispute. (Dkt. 165).  On May 15, 2019, the Court ordered the parties to file a joint letter brief "strictly" adhering to the following form: First, GLSE will "produce a numbered list of any requested discovery items that are moot, that were unable to be found, that do not exist, or that have been or will be produced – each item of which shall be coupled with a 1-sentence explanation to that effect." (Dkt. 173, 4:4-7).  Second, "Plaintiff will follow with a numbered list of any ***other*** requested discovery items coupled with a 1-sentence explanation for why such discovery was encompassed by Judge Chesney's order." (*Id.*, 4:7-9 (emphasis in original)).  Third, "GLSE will follow with a matching numbered list where each rejected item is coupled with a 1-sentence explanation for why the request was not encompassed by Judge Chesney's order." (*Id.*, 4:9-11).



**GLSE'S position regarding third-party subpoena disputes under Dkt. 173 Order:** GLSE's portion of the joint letter (Dkt. No. 165) and brief (Dkt. No. 172) concerning the scope of discovery, both of which led to the present joint letter, objected to Plaintiff's subpoenas to seventeen (17) third parties on the grounds, and to the extent, those subpoenas are beyond the scope of permissible discovery and constitute an attempt to do an "end run" a round the limitations of the February 12, 2018 jurisdictional order. GLSE also joined with Gameloft, Inc. in a letter motion to quash (Dkt. 168), those subpoenas on the same grounds.  Whether the 17 subpoenas have independent relevance to Glass Egg's claims against Gameloft, Inc. has been reserved for later determination and is not at issue in this letter.  When Plaintiff failed to address the subpoenas in Plaintiff's "List 2" above, within the schedule agreed between Plaintiff and GLSE for the exchange of letter drafts, on May 23, 2019, GLSE pointed out the failure and requested that Plaintiff confirm waiver of the subpoenas or promptly add the subpoenas to Plaintiff's "List 2." Plaintiff refused to do either.  Plaintiff took the position that the court's May 10, 2019 order for this joint letter (Dkt. 173) somehow prohibited the parties from addressing their disputes over the 17 subpoenas. GLSE disagreed.  Plaintiff then took the position that the parties should send a letter to the court concerning that dispute and propose to the court that the Plaintiff and GLSE file a further letter brief after the court-ordered due date for this letter, which is in GLSE's view intended to address all discovery disputes. Despite repeated requests from GLSE, Plaintiff has refused to either waive its contention to or address the basis for its 17 subpoenas in its List 2.  GLSE will provide the exchange of emails on these issues at the court's request.  GLSE, therefore, submits that Plaintiff has violated the court's order and waived any claim to enforce its massively overbroad, deliberate harassment to business relationships and burdensome demands contained in its 17 subpoenas with respect to a very limited jurisdictional issue. Alternatively, GLSE submits the position statements below concerning the third-party subpoenas.

**Plaintiff's position regarding third-party subpoena disputes under Dkt. 173 Order:** The court's order at Dkt. 173 ("the Order") requires the parties to strictly adhere to a format of three (3) lists. The first list covers any "requested discovery items" by Plaintiff against GLSE for which GLSE claims are "moot, that were unable to be found, that do not exist, or that have been or will be produced." The second list requires Plaintiff to provide a "list of any other requested discovery items", the same phrase "requested discovery items" used in the first list, meaning the same items requested of GLSE. (Emphasis in original.) Consequently, Plaintiff understands "other" to mean other discovery against GLSE not covered in the first list. GLSE understands "other" to mean all other discovery, including the subpoenas. The third list requires GLSE to provide a "list where each rejected item is coupled with a 1-sentence explanation for why the request was not encompassed by Judge Chesney's order". Plaintiff understands this list to mean discovery requests propounded by Plaintiff against GLSE but were "rejected" by GLSE since GLSE were not served with any subpoenas to "reject" them. GLSE understands this list to mean all discovery including the subpoenas. Plaintiff's understanding is further bolstered by the court's description of the dispute in the Order. The Order described Plaintiff's portion of the joint letter at Dkt #165 as a "motion to compel," (at 2:1) then describes GLSE's portion of Dkt #165 identifying party (not non-party) discovery (at 2:7-12). The Order continues to describe the parties' defects without mentioning the subpoenas anywhere in the Order. Furthermore, the subpoenas are the subject of a pending motion to quash, at Dkt. 168, wherein GLSE (along with Gameloft USA) specifically <u>asserts the same jurisdictional scope argument</u> (at p.4). The motion to quash is NOT limited to the issue of



"independent relevance", as GLSE claims above. Given the parties' different understanding of the Order requiring strict compliance, the duplicity of the issue with the motion to quash, Plaintiff suggested the parties jointly request Your Honor clarify this issue to avoid either party inadvertently violating the Order. GLSE has declined ("Plaintiff's Subpoena Position").

The following reflects the format as ordered by the Court.  List No. 1 (GLSE's list) starts at page 3, List No. 2 (Plaintiff's List) starts at page 12, and List No. 3 (GLSE's list) starts at page 53.  For the convenience of the court, GLSE's List No. 3 repeats Plaintiff's positions as stated in List No. 2 to the extent those positions were provided to GLSE.

**I.      GLSE's Numbered List of Requested Discovery Items That Are Moot, That Were Unable To Be Found, That Do Not Exist, Or That Have Been or Will Be Produced.**

| Requests for Admission, Set 1 | | | |
|---|---|---|---|
| List No. | Req. No. | Request | Reason Request is Moot |
| (1) | 1 | Admit that GL FRANCE operates www.gameloft.com ("Website") for all non-English versions written in non-English languages since at least January 1, 2013. | GLSE admitted that it has held the registration to the www.gameloft.com since 2013 and that it has been involved in operation of the website since that time. |
| (2) | 2 | Admit that non-English versions of the Website can be accessed within the United States of America ("USA"), including California. | GLSE admitted that non-English versions of the Website can be accessed within the USA, including California. |
| (3) | 3 | Admit that GL FRANCE operates the English version of the Website if accessed outside of the USA. | GLSE admitted that it has held the registration to the www.gameloft.com since 2013 and that it has been involved in operation of the website since that time. |
| (4) | 12 | Admit that GL France signed an agreement with GL USA for GL USA to distribute and market the Asphalt games in the USA. | GLSE admitted that it signed an agreement with Gameloft, Inc. to distribute and market GLSE games in the United States, which could include one or more games in the Asphalt series. |
| Requests for Production, Set 1 | | | |
| List No. | Req. No. | Request | Reason Request is Moot |
| (5) | 1 | Sufficient DOCUMENTS reflecting total sales for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of |



| | | | |
|---|---|---|---|
| | | | mobile car games alleged in the Fourth Amended Complaint ("4AC"). |
| **(6)** | 2 | Sufficient DOCUMENTS reflecting total sales by geography, region, country, city and/or state for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witness(es) concerning the records that were available. |
| **(7)** | 3 | All DOCUMENTS which REFER, RELATE TO, or REFLECT sales attributed to California for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(8)** | 4 | Sufficient DOCUMENTS reflecting total revenue for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(9)** | 5 | Sufficient DOCUMENTS reflecting total revenue by geography, region, country, city and/or state for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(10)** | 6 | All DOCUMENTS which REFER, RELATE TO, or REFLECT revenue attributed to California for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(11)** | 7 | Sufficient DOCUMENTS reflecting total profits for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the |



| | | | records that were available. |
|---|---|---|---|
| **(12)** | 8 | Sufficient DOCUMENTS reflecting total profits by geography, region, country, city and/or state for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(13)** | 9 | All DOCUMENTS which REFER, RELATE TO, or REFLECT profits attributed to California for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(14)** | 13 | Sufficient DOCUMENTS reflecting the economic value of digital assets purchased by users by geography, region, country, city and/or state for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(15)** | 14 | All DOCUMENTS which REFER, RELATE TO, or REFLECT the economic value attributed to California of digital assets purchased by users for each fiscal year from 2013 to present. | GLSE informed Plaintiff it would produce reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(16)** | 16 | All DOCUMENTS which REFER, RELATE TO, or REFLECT the names of any and all 3D digital car purchased by users associated with California or each fiscal year from 2013 to present. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(17)** | 17 | Sufficient DOCUMENTS reflecting any and all advertisers who target users with a California physical or IP address for each fiscal year from 2013 to present. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(18)** | 18 | Sufficient DOCUMENTS reflecting the revenue generated from advertisers who target users with a California physical or IP address for each fiscal year from 2013 to present. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |



| **(19)** | 29 | Sufficient DOCUMENTS reflecting the number of advertising campaigns targeted at users associated with California. | GLSE responded that it has not located any documents its possession, custody, or control that are responsive to this request. |
|---|---|---|---|
| **(20)** | 31 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any advertising campaign for advertisers that targeted or targets users associated with California either through location, user preference, interests and lifestyles, and/or any other demographical information. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(21)** | 39 | Sufficient DOCUMENTS reflecting any and all agreements between YOU and any company with a California business address to distribute, market, and/or sell YOUR games. | GLSE informed Plaintiff it would produce the licensing and servicing agreements between GLSE and Gameloft, Inc. and an Apple Developer License Agreement and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(22)** | 40 | Sufficient DOCUMENTS reflecting the economic value derived from any and all agreements between YOU and any company with a California business address to distribute, market, and/or sell YOUR games. | GLSE informed Plaintiff it would produce the licensing and servicing agreements between GLSE and Gameloft, Inc. and an Apple Developer License Agreement and that Plaintiff could examine GLSE FRCP 30(b)(6) witnesses concerning the records that were available. |
| **(23)** | 42 | Sufficient DOCUMENTS reflecting any and all marketing, advertising, or sponsorship activities by YOU to promote or sell YOUR games in any offline or online advertising outlet or media, including newspapers, advertising agency, publicists, magazines, sponsorships of events in California, sponsorships of organizations based in California, TV commercials, TV shows, amusement parks, websites, blogs, game review websites, among others, and whose main audience, members, readership, and/or viewership are California users. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(24)** | 43 | Sufficient DOCUMENTS reflecting any and all | GLSE responded that it has not |

6



| | | | |
|---|---|---|---|
| | | marketing, advertising, or sponsorship activities by YOU to promote or sell YOUR in-game advertising solution in any offline or online advertising outlet or media, including newspapers, advertising agency, publicists, magazines, sponsorships of events in California, sponsorships of organizations based in California, TV commercials, TV shows, amusement parks, websites, blogs, game review websites, among others, and whose main audience, members, readership, and/or viewership are California users. | located any documents in its possession, custody, or control that are responsive to this request. |
| **(25)** | 59 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any outreach to California residents through any form social media such as Facebook, Twitter, LinkedIn, or similar social media platforms. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(26)** | 60 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any outreach to California residents on any of the app platforms used to distribute YOUR games. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(27)** | 61 | Sufficient DOCUMENTS reflecting the launch of any game in any California either offline or online. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(28)** | 62 | All DOCUMENTS which REFER, RELATE TO, or REFLECT development of any game within California. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(29)** | 65 | All COMMUNICATIONS between YOU and Gameloft, Inc. regarding sales, marketing, and/or business development since 2013. | GLSE informed Plaintiff it would produce the licensing and servicing agreements between GLSE and Gameloft, Inc. |
| **(30)** | 66 | Sufficient DOCUMENTS reflecting YOUR relationship with the French American Chamber of Commerce in San Francisco since 2013. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(31)** | 67 | All COMMUNICATIONS between YOU and the French American Chamber of Commerce in San | GLSE responded that it has not located any documents in its |



| | | | |
|---|---|---|---|
| | | Francisco since 2013. | possession, custody, or control that are responsive to this request. |
| **(32)** | 68 | All DOCUMENTS in any language which indicates that YOU operate www.gameloft.com ("Website") at any time since 2013 to the present. | GLSE informed Plaintiff that it would produce the website registration for www.gameloft.com and that Plaintiff could examine GLSE FRCP 30(b)(6) witness(es) concerning the records that were available. |
| **(33)** | 69 | All DOCUMENTS in any language which indicates that YOU publish the content on the Website at any time since 2013 to the present. | GLSE informed Plaintiff that it would produce the website registration for www.gameloft.com and that Plaintiff could examine GLSE FRCP 30(b)(6) witness(es) concerning the records that were available. |
| **(34)** | 70 | Sufficient DOCUMENTS reflecting that YOU have control and authority to decide what content is published on the Website in any language. | GLSE informed Plaintiff that it would produce the website registration for www.gameloft.com and that Plaintiff could examine GLSE FRCP 30(b)(6) witness(es) concerning the records that were available. |
| **(35)** | 71 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any records (e.g., cookies) that indicates a visitor to the Website is associated with California. | GLSE responded that it does not maintain records that associate a visitor to the Website with the state of their location. |
| **(36)** | 72 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any geo-tagging that enables YOU to associate a user with California. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(37)** | 75 | All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR business plans for 2013, 2014, 2015, 2016, and/or 2017 as they relate to California. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(38)** | 76 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any business development efforts or | GLSE responded that it has not located any documents in its |



| | | activities to market or generate new business in or from California users or businesses for YOU or any of YOUR subsidiaries in 2013, 2014, 2015, 2016, and/or 2017. | possession, custody, or control that are responsive to this request. |
|---|---|---|---|
| **(39)** | 77 | All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR decision to open an office in California or YOUR decision to allow Gameloft, Inc. to open an office in California. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(40)** | 78 | Sufficient DOCUMENTS reflecting how YOU decided to open an office in California or allow Gameloft, Inc. to open an office in California. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
| **(41)** | 79 | All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR decision to not close the office in California. | GLSE responded that it has not located any documents in its possession, custody, or control that are responsive to this request. |
|  | | **Interrogatories, Set 1** | |
| **List No.** | **Req. No.** | **Request** | **Reason Request is Moot** |
| **(42)** | 3 | How much revenue was generated from the sale of digital assets incorporated into the Asphalt games from all California sources for each of the fiscal years 2013 to the present? | GLSE responded that it referred Plaintiff to the documents it would produce, *i.e.* reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witness(es) concerning the records that were available. |
| **(43)** | 4 | How much revenue was generated from the sale of digital assets incorporated into the Asphalt games from all USA sources for each of the fiscal years 2013 to the present? | GLSE responded that it referred Plaintiff to the documents it would produce, *i.e.* reports of US sales of mobile car games alleged in the 4AC and that Plaintiff could examine GLSE FRCP 30(b)(6) witness(es) concerning the records that were available. |
| | | **30(b)(6) Topics** | |
| **List** | **Req.** | **Request** | **Reason Request is Moot** |



| No. | No. | | |
|---|---|---|---|
| **(44)** | 1 | The factual basis supporting GLSE's responses to Plaintiff's requests for documents served on March 19, 2018 and April 2, 2018. | GLSE informed Plaintiff that it could examine GLSE's witness(es) with respect to the existence of responsive documents. |
| **(45)** | 2 | The factual basis and documents supporting GLSE's denial or admission to any of Plaintiff's requests for admissions served on April 2, 2018. | GLSE informed Plaintiff that it could examine GLSE's witness(es) with respect to the existence of responsive documents.  GLSE does not object to Plaintiff examining the witness(es) concerning revenue and profits from mobile car sales in California and concerning the identity of the operator of the gameloft.com website.  GLSE objects only to the extent that Plaintiff seeks examination concerning requests for admissions that go beyond the scope of discovery allowed by the February 12, 2018 order. |
| **(46)** | 3 | The factual basis and documents supporting GLSE's responses to any of Plaintiff's written interrogatories served on April 2, 2018. | GLSE informed Plaintiff that it could examine GLSE's witness(es) with respect to the existence of responsive documents.  GLSE does not object to Plaintiff examining the witness(es) concerning revenue and profits from mobile car sales in California and concerning the identity of the operator of the gameloft.com website.  GLSE objects only to the extent that Plaintiff seeks examination concerning interrogatories that go beyond the scope of discovery allowed by the February 12, 2018 order. |
| **(47)** | 10 | Revenues generated from the purchase of | GLSE informed Plaintiff that it |



| | | | |
|---|---|---|---|
| | | digital assets incorporated into the Asphalt games by any player associated with California by way of residence, presence, or IP address or any other means used to geo-tag any player. | could examine GLSE's witness(es) with respect to the existence of responsive documents.  GLSE does not object to Plaintiff examining the witness(es) concerning revenue and profits from mobile car sales in California and concerning the identity of the operator of the gameloft.com website.  GLSE objects only to the extent that Plaintiff seeks examination concerning subjects that go beyond the scope of discovery allowed by the February 12, 2018 order. |
| **(48)** | 19 | The publication process to post and/or publish content on www.gameloft.com ("Website"). | GLSE informed Plaintiff that it could examine GLSE's witness(es) with respect to the existence of responsive documents.  GLSE does not object to Plaintiff examining the witness(es) concerning the identity of the operator of the gameloft.com website.  GLSE objects only to the extent that Plaintiff seeks examination concerning subjects that go beyond the scope of discovery allowed by the February 12, 2018 order. |
| **(49)** | 25 | The identity of the operator of the Website in any language since January 1, 2013, including the operator's role and scope of authority to publish content and enable any functionality on the Website. | GLSE informed Plaintiff that it could examine GLSE's witness(es) with respect to the existence of responsive documents. |



**II.    Glass Egg's List of Other Discovery Requests Items With an Explanation as to Why Each Is Encompassed by Judge Chesney's Order (Dkt. 94)**

| REQUESTS FOR ADMISSION (Set One) | | | |
|---|---|---|---|
| List No. | Req. No. | Request | Why is the Request encompassed by Judge Chesney's Order? |
| (1) | 4 | Admit that, in fiscal year 2015, North America accounted for 25% of consolidated world sales of €256.2 million (approximately $298 million), meaning North America generated approximately €64 million (approximately $75 million) in revenue. | The sales/revenues received from ads paid by advertisers or digital cars paid by players in North America determines the relative size of GLSE's business in California, as measured by sales activity. |
| (2) | 5 | Admit that, in fiscal year 2015, more than 95% of revenue from smartphones and touch tablets comes from the sale of virtual goods (also known as digital assets). | The sales/revenues received from virtual goods such as digital cars paid by players partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| (3) | 6 | Admit that over 75% of the sales, in fiscal year 2015, in North America were from the USA. | The sales/revenues received from ads paid by advertisers or digital cars paid by players in the USA partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| (4) | 7 | Admit that the largest amount of the sales of digital assets in 2015 in the USA were from California. | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| (5) | 8 | Admit that the largest amount of digital assets incorporated in the Asphalt games and purchased in the USA were from California. | The sales/revenues received from digital assets such as digital cars paid by players |



| | | | in the USA partly determines the relative size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| **(6)** | 9 | Admit that the largest number of players of the Asphalt games are associated with California by residence. | The number of players, as measured by residence in California, partly determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| **(7)** | 10 | Admit that the largest number of players of the Asphalt games are associated with California by presence. | The number of players, as measured by presence in California, partly determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| **(8)** | 11 | Admit that the largest number of players of the Asphalt games are associated with California by IP address. | The number of players, as measured by California IP address, partly determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| **(9)** | 13 | Admit that YOU are a signatory to license agreements with strategic partners located in California who hold trademarks used in Asphalt games. | The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |
| **(10)** | 14 | Admit that the ability to maintain good business relations with these trademark holders located in California is important to YOUR future development of Asphalt games. | The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |
| **(11)** | 15 | Admit that as a result of these trademark licenses from trademark holders located in California, YOU benefit from these brands' reputations which substantially increases the | The size of GLSE's business is directly tied to using well-known IP owned by California licensors to |



| | | | |
|---|---|---|---|
| | | sales potential of associated games, including Asphalt games. | attract players and drive sales of ads and digital cars. |
| **(12)** | 16 | Admit that licenses from trademark holders located in California represented at least 30% of sales in fiscal year 2015. | The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |
| **(13)** | 17 | Admit that, in fiscal year 2015, YOU implemented an internal structure for a digital advertising network called Gameloft Advertising Solutions ("GLADS") and began selling advertising space within games, including Asphalt games. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(14)** | 18 | Admit that GLADS offers advertisers the ability to geo-target players, including players associated with California by information such as residence, presence, and/or IP address, user preference, interests and lifestyle. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(15)** | 19 | Admit that the Website and/or Asphalt games collect demographical information about players, including residence, location, and other geographical information. | The number of players determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| **(16)** | 20 | Admit that GLADS enables advertisers to target players associated with California by using information such as residence, presence, and/or IP address, user preference, interests and lifestyle. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(17)** | 21 | Admit that advertisers have targeted players associated with California by using information such as residence, presence, and/or IP address, user preference, interests and lifestyle. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as |



| | | | measured by sales activity. |
|---|---|---|---|
| **(18)** | 22 | Admit that the ability to target players by geo location adds value to GLADS, enabling the sale of advertising space for a higher price. | The sales/revenues received from ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(19)** | 23 | Admit that the largest amount of revenues generated through GLADS in the USA come from advertisers located in California. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | Admit that the following digital car model was incorporated into one or more the Asphalt games: | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
| **(20)** | 24 | Ariel Nomad. | |
| **(21)** | 25 | Aston Martin DB11. | |
| **(22)** | 26 | Aston Martin DB9. | |
| **(23)** | 27 | Aston Martin One 77. | |
| **(24)** | 28 | BMW Z4 e 89. | |
| **(25)** | 29 | Cadillac Cien Concept 2002. | |
| **(26)** | 30 | Chevrolet Camaro 2016. | |
| **(27)** | 31 | Chevrolet Camaro LT 2.0L Turbo 2016. | |
| **(28)** | 32 | Chevrolet Camaro z11 50th Edition. | |
| **(29)** | 33 | Chevrolet Camaro Z06. | |
| **(30)** | 34 | Chevrolet Silverado 2500 HD. | |
| **(31)** | 35 | Citroen DS E-Tense. | |
| **(32)** | 36 | Dodge Ram 1500 Rebel. | |
| **(33)** | 37 | Ferrari 488 GTB. | |
| **(34)** | 38 | Ferrari fxxk 2014. | |
| **(35)** | 39 | Ford Fiesta ST GRC. | |
| **(36)** | 40 | Ford Mustang 2015. | |
| **(37)** | 41 | Ford Ranger Dakar. | |
| **(38)** | 42 | Holden Coupe 60. | |



| | | | |
|---|---|---|---|
| **(39)** | 43 | Honda NSX 2017. | |
| **(40)** | 44 | Jaguar F Type SVR Coupe 2017. | |
| **(41)** | 45 | Jeep Wrangler Rubicon. | |
| **(42)** | 46 | Koenigsegg Regera 2016. | |
| **(43)** | 47 | Koenigsegg Agera R. | |
| **(44)** | 48 | Lamborghini Aventador lp750-4 Supervolece. | |
| **(45)** | 49 | Lamborghini Egotista. | |
| **(46)** | 50 | Lamborghini Centenaro. | |
| **(47)** | 51 | Land Rover. | |
| **(48)** | 52 | Lotus Evora 410 Sport. | |
| **(49)** | 53 | Man TGX D38. | |
| **(50)** | 54 | Mazzanti Evantra. | |
| **(51)** | 55 | McLaren 675LT 2015. | |
| **(52)** | 56 | Mercedes Benz G500. | |
| **(53)** | 57 | Mercedes Benz AMG GT 2016. | |
| **(54)** | 58 | Mercedes Benz AMG S2016. | |
| **(55)** | 59 | Mercedes Unimog U 4023. | |
| **(56)** | 60 | Mosler GT3. | |
| **(57)** | 61 | Perlini 105F Red Tiger. | |
| **(58)** | 62 | Peugeot 208 T16 WRC. | |
| **(59)** | 63 | Polaris RZR 1000. | |
| **(60)** | 64 | Polo WRC. | |
| **(61)** | 65 | Predator X-18 Intimidator. | |
| **(62)** | 66 | SMG Buggy Dakar. | |
| **(63)** | 67 | Trion Nemesis. | |
| **(64)** | 68 | Volkswagen XL_Sport_Concept_2016. | |
| **(65)** | 69 | VW Beetle GRC. | |
| **(66)** | 70 | VW Polo WRC. | |
| **(67)** | 71 | Admit that players associated with California by information such as residence, presence or IP address, paid a fee to download any one of the following digital car models:<br><br>• Ariel Nomad<br>• Aston Martin DB11 | • Lamborghini Egotista | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by |



| | | • Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro 2016<br>• Chevrolet Camaro LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense<br>• Dodge Ram 1500 Rebel<br>• Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | • Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra<br>• McLaren 675LT 2015<br>• Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U 4023<br>• Mosler GT3<br>• Perlini 105F Red Tiger<br>• Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_2016<br>• VW Beetle GRC<br>• VW Polo WRC | sales activity. |
|---|---|---|---|---|
| **(68)** | 72 | Admit that players associated with California by information such as residence, presence or IP address, paid a fee to download more than one | | The sales/revenues received from digital assets such as digital cars paid by players |



of the following digital car models:

- Ariel Nomad
- Aston Martin DB11
- Aston Martin DB9
- Aston Martin One 77
- BMW Z4 e 89
- Cadillac Cien Concept 2002
- Chevrolet Camaro 2016
- Chevrolet Camaro LT 2.0L Turbo 2016
- Chevrolet Camaro z11 50th Edition
- Chevrolet Camaro Z06
- Chevrolet Silverado 2500 HD
- Citroen DS E-Tense
- Dodge Ram 1500 Rebel
- Ferrari 488 GTB
- Ferrari fxxk 2014
- Ford Fiesta ST GRC
- Ford Mustang 2015
- Ford Ranger Dakar
- Holden Coupe 60
- Honda NSX 2017
- Jaguar F Type SVR Coupe 2017
- Jeep Wrangler Rubicon
- Koenigsegg Regera 2016
- Koenigsegg Agera R
- Lamborghini Aventador lp750-4

- Lamborghini Egotista
- Lamborghini Centenaro
- Land Rover
- Lotus Evora 410 Sport
- Man TGX D38
- Mazzanti Evantra
- McLaren 675LT 2015
- Mercedes Benz G500
- Mercedes Benz AMG GT 2016
- Mercedes Benz AMG S2016
- Mercedes Unimog U 4023
- Mosler GT3
- Perlini 105F Red Tiger
- Peugeot 208 T16 WRC
- Polaris RZR 1000
- Polo WRC
- Predator X-18 Intimidator
- SMG Buggy Dakar
- Trion Nemesis
- Volkswagen XL_Sport_Concept_ 2016
- VW Beetle GRC
- VW Polo WRC

in the USA partly determines the size of GLSE's business in California, as measured by sales activity.



| | | Supervolece | | |
|---|---|---|---|---|
| **(69)** | 73 | Admit that players associated with California by information such as residence, presence or IP address, downloaded any one of the following digital car models, as individual model downloads, most frequently in the USA: | | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |

- Ariel Nomad
- Aston Martin DB11
- Aston Martin DB9
- Aston Martin One 77
- BMW Z4 e 89
- Cadillac Cien Concept 2002
- Chevrolet Camaro 2016
- Chevrolet Camaro LT 2.0L Turbo 2016
- Chevrolet Camaro z11 50th Edition
- Chevrolet Camaro Z06
- Chevrolet Silverado 2500 HD
- Citroen DS E-Tense
- Dodge Ram 1500 Rebel
- Ferrari 488 GTB
- Ferrari fxxk 2014
- Ford Fiesta ST GRC
- Ford Mustang 2015
- Ford Ranger Dakar
- Holden Coupe 60
- Honda NSX 2017
- Jaguar F Type SVR Coupe 2017
- Jeep Wrangler Rubicon

- Lamborghini Egotista
- Lamborghini Centenaro
- Land Rover
- Lotus Evora 410 Sport
- Man TGX D38
- Mazzanti Evantra
- McLaren 675LT 2015
- Mercedes Benz G500
- Mercedes Benz AMG GT 2016
- Mercedes Benz AMG S2016
- Mercedes Unimog U 4023
- Mosler GT3
- Perlini 105F Red Tiger
- Peugeot 208 T16 WRC
- Polaris RZR 1000
- Polo WRC
- Predator X-18 Intimidator
- SMG Buggy Dakar
- Trion Nemesis
- Volkswagen XL_Sport_Concept_



| | | | | |
|---|---|---|---|---|
| | | • Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | 2016<br>• VW Beetle GRC<br>• VW Polo WRC | |
| **(70)** | 74 | Admit that players associated with California by information such as residence, presence or IP address, downloaded more than one of the following digital car models, as individual model downloads, most frequently in the USA:<br><br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro 2016<br>• Chevrolet Camaro LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense<br>• Dodge Ram 1500 Rebel<br>• Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60 | • Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra<br>• McLaren 675LT 2015<br>• Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U 4023<br>• Mosler GT3<br>• Perlini 105F Red Tiger<br>• Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |



| | | | |
|---|---|---|---|
| | | • Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_2016<br>• VW Beetle GRC<br>• VW Polo WRC | |
| (71) | 75 | Admit that players associated with California by information such as residence, presence or IP address, downloaded any one of the following digital car models, in aggregate, most frequently in the USA: | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |

For row (71), the digital car models list:

• Ariel Nomad
• Aston Martin DB11
• Aston Martin DB9
• Aston Martin One 77
• BMW Z4 e 89
• Cadillac Cien Concept 2002
• Chevrolet Camaro 2016
• Chevrolet Camaro LT 2.0L Turbo 2016
• Chevrolet Camaro z11 50th Edition
• Chevrolet Camaro Z06
• Chevrolet Silverado 2500 HD
• Citroen DS E-Tense
• Dodge Ram 1500 Rebel
• Ferrari 488 GTB
• Ferrari fxxk 2014

• Lamborghini Egotista
• Lamborghini Centenaro
• Land Rover
• Lotus Evora 410 Sport
• Man TGX D38
• Mazzanti Evantra
• McLaren 675LT 2015
• Mercedes Benz G500
• Mercedes Benz AMG GT 2016
• Mercedes Benz AMG S2016
• Mercedes Unimog U 4023
• Mosler GT3
• Perlini 105F Red Tiger



| | | | |
|---|---|---|---|
| | | • Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | • Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_2016<br>• VW Beetle GRC<br>• VW Polo WRC | |
| (72) | 76 | Admit that players associated with California by information such as residence, presence or IP address, downloaded more than one of the following digital car models, in aggregate, most frequently in the USA:<br><br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro 2016<br>• Chevrolet Camaro LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense | • Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra<br>• McLaren 675LT 2015<br>• Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |



| | | | |
|---|---|---|---|
| | | <ul><li>Dodge Ram 1500 Rebel</li><li>Ferrari 488 GTB</li><li>Ferrari fxxk 2014</li><li>Ford Fiesta ST GRC</li><li>Ford Mustang 2015</li><li>Ford Ranger Dakar</li><li>Holden Coupe 60</li><li>Honda NSX 2017</li><li>Jaguar F Type SVR Coupe 2017</li><li>Jeep Wrangler Rubicon</li><li>Koenigsegg Regera 2016</li><li>Koenigsegg Agera R</li><li>Lamborghini Aventador lp750-4 Supervolece</li></ul> | <ul><li>4023</li><li>Mosler GT3</li><li>Perlini 105F Red Tiger</li><li>Peugeot 208 T16 WRC</li><li>Polaris RZR 1000</li><li>Polo WRC</li><li>Predator X-18 Intimidator</li><li>SMG Buggy Dakar</li><li>Trion Nemesis</li><li>Volkswagen XL_Sport_Concept_ 2016</li><li>VW Beetle GRC</li><li>VW Polo WRC</li></ul> | |
| **(73)** | 77 | Admit that advertising space generating revenue associated with California was sold to all of the following companies: AirBerlin, Alienware, Centennial College, Chiquita, Lego, Kellogg, Simple Mobile, Hasbro, Infiniti, Warner Bros., Gillette, Mercedes Benz, Disney, Huawei, Mondelez International, Twentieth Century Fox, LG, Close Up, Ferrari, Turkcell, Xbox, Coca Cola, McDonalds, and/or Netflix. | The sales/revenues received from ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(74)** | 78 | Admit that revenue associated with California is generated by partnerships with all of the following companies: DoubleClick, Sizmek, AppsFlyer, Kochava, AdRiver, Adjust, Predicta, S4M, Vindico, adMotion, Atlas by Facebook, Barometric, Innovid, Reamp, Moat, and/or Placed. | The sales/revenues received from ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(75)** | 79 | Admit that the success of the Asphalt games, including the number of players and downloads, were used to market GLADS along with its targeting capabilities to advertisers in California. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly |



| | | | determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| **(76)** | 80 | Admit that the success of the Asphalt games, including the number of players and downloads, were used to market other games to players associated with California. | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
| **(77)** | 81 | Admit that Defendant GL FRANCE signed license agreements with numerous car manufacturers to use the brand names of over 200+ cars in the Asphalt Games, including with Tesla. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| **(78)** | 82 | Admit that Defendant GL FRANCE pays a substantial license fee to these brand holders, including to Tesla. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| **(79)** | 83 | Admit that the California MARKET is the largest economy for Defendant GL FRANCE in the USA. | The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by sales activity. |
| **(80)** | 84 | Admit that the California MARKET adds the greatest economic value to Defendant GL FRANCE's business in the USA. | The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by sales activity. |
| **(81)** | 85 | Admit that the California MARKET generates the largest revenue for Defendant GL FRANCE's business in the USA. | The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by sales activity. |
| **(82)** | 86 | Admit that California's advertisers and players are targeted in Defendant GL FRANCE's | The sales/revenues received from players and advertisers |



| | | distribution strategy to generate the largest revenue in the USA. | in California determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| **REQUESTS FOR ADMISSION (Set Two)** | | | |
| **List No.** | **Req. No.** | **Request** | **Why is the Request encompassed by Judge Chesney's Order?** |
| | | Admit that players associated with California by residence, presence or IP address, downloaded the following digital car model (and/or associated accessories): | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
| **(83)** | 1 | Ariel Nomad. | |
| **(84)** | 2 | Aston Martin DB11. | |
| **(85)** | 3 | Aston Martin DB9. | |
| **(86)** | 4 | Aston Martin One 77. | |
| **(87)** | 5 | BMW Z4 e 89. | |
| **(88)** | 6 | Cadillac Cien Concept 2002. | |
| **(89)** | 7 | Chevrolet Camaro 2016. | |
| **(90)** | 8 | Chevrolet Camaro LT 2.0L Turbo 2016. | |
| **(91)** | 9 | Chevrolet Camaro z11 50th Edition. | |
| **(92)** | 10 | Chevrolet Camaro Z06. | |
| **(93)** | 11 | Chevrolet Silverado 2500 HD. | |
| **(94)** | 12 | Citroen DS E-Tense. | |
| **(95)** | 13 | Dodge Ram 1500 Rebel. | |
| **(96)** | 14 | Ferrari 488 GTB. | |
| **(97)** | 15 | Ferrari fxxk 2014. | |
| **(98)** | 16 | Ford Fiesta ST GRC. | |
| **(99)** | 17 | Ford Mustang 2015. | |
| **(100)** | 18 | Ford Ranger Dakar. | |
| **(101)** | 19 | Holden Coupe 60. | |
| **(102)** | 20 | Honda NSX 2017. | |
| **(103)** | 21 | Jaguar F Type SVR Coupe 2017. | |
| **(104)** | 22 | Jeep Wrangler Rubicon. | |
| **(105)** | 23 | Koenigsegg Regera 2016. | |



| (106) | 24 | Koenigsegg Agera R. | |
|---|---|---|---|
| (107) | 25 | Lamborghini Aventador lp750-4 Supervolece. | |
| (108) | 26 | Lamborghini Egotista. | |
| (109) | 27 | Lamborghini Centenaro. | |
| (110) | 28 | Land Rover. | |
| (111) | 29 | Lotus Evora 410 Sport. | |
| (112) | 30 | Man TGX D38. | |
| (113) | 31 | Mazzanti Evantra. | |
| (114) | 32 | McLaren 675LT 2015. | |
| (115) | 33 | Mercedes Benz G500. | |
| (116) | 34 | Mercedes Benz AMG GT 2016. | |
| (117) | 35 | Mercedes Benz AMG S2016. | |
| (118) | 36 | Mercedes Unimog U 4023. | |
| (119) | 37 | Mosler GT3. | |
| (120) | 38 | Perlini 105F Red Tiger. | |
| (121) | 39 | Peugeot 208 T16 WRC. | |
| (122) | 40 | Polaris RZR 1000. | |
| (123) | 41 | Polo WRC. | |
| (124) | 42 | Predator X-18 Intimidator. | |
| (125) | 43 | SMG Buggy Dakar. | |
| (126) | 44 | Trion Nemesis. | |
| (127) | 45 | Volkswagen XL_Sport_Concept_2016. | |
| (128) | 46 | VW Beetle GRC. | |
| (129) | 47 | VW Polo WRC. | |



| | | Admit that players associated with California by residence, presence or IP address, generated the most downloads in the USA of the following digital car model (and/or associated accessories): | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
|---|---|---|---|
| **(130)** | 48 | Ariel Nomad. | |
| **(131)** | 49 | Aston Martin DB11. | |
| **(132)** | 50 | Aston Martin DB9. | |
| **(133)** | 51 | Aston Martin One 77. | |
| **(134)** | 52 | BMW Z4 e 89. | |
| **(135)** | 53 | Cadillac Cien Concept 2002. | |
| **(136)** | 54 | Chevrolet Camaro 2016. | |
| **(137)** | 55 | Chevrolet Camaro LT 2.0L Turbo 2016. | |
| **(138)** | 56 | Chevrolet Camaro z11 50th Edition. | |
| **(139)** | 57 | Chevrolet Camaro Z06. | |
| **(140)** | 58 | Chevrolet Silverado 2500 HD. | |
| **(141)** | 59 | Citroen DS E-Tense. | |
| **(142)** | 60 | Dodge Ram 1500 Rebel. | |
| **(143)** | 61 | Ferrari 488 GTB. | |
| **(144)** | 62 | Ferrari fxxk 2014. | |
| **(145)** | 63 | Ford Fiesta ST GRC. | |
| **(146)** | 44 | Ford Mustang 2015. | |
| **(147)** | 65 | Ford Ranger Dakar. | |
| **(148)** | 66 | Holden Coupe 60. | |
| **(149)** | 67 | Honda NSX 2017. | |
| **(150)** | 68 | Jaguar F Type SVR Coupe 2017. | |
| **(151)** | 69 | Jeep Wrangler Rubicon. | |
| **(152)** | 70 | Koenigsegg Regera 2016. | |
| **(153)** | 71 | Koenigsegg Agera R. | |
| **(154)** | 72 | Lamborghini Aventador lp750-4 Supervolece. | |
| **(155)** | 73 | Lamborghini Egotista. | |
| **(156)** | 74 | Lamborghini Centenaro. | |
| **(157)** | 75 | Land Rover. | |
| **(158)** | 76 | Lotus Evora 410 Sport. | |



| (159) | 77 | Man TGX D38. | |
|---|---|---|---|
| (160) | 78 | Mazzanti Evantra. | |
| (161) | 79 | McLaren 675LT 2015. | |
| (162) | 80 | Mercedes Benz G500. | |
| (163) | 81 | Mercedes Benz AMG GT 2016. | |
| (164) | 82 | Mercedes Benz AMG S2016. | |
| (165) | 83 | Mercedes Unimog U 4023. | |
| (166) | 84 | Mosler GT3. | |
| (167) | 85 | Perlini 105F Red Tiger. | |
| (168) | 86 | Peugeot 208 T16 WRC. | |
| (169) | 87 | Polaris RZR 1000. | |
| (170) | 88 | Polo WRC. | |
| (171) | 89 | Predator X-18 Intimidator. | |
| (172) | 90 | SMG Buggy Dakar. | |
| (173) | 91 | Trion Nemesis. | |
| (174) | 92 | Volkswagen XL_Sport_Concept_2016. | |
| (175) | 93 | VW Beetle GRC. | |
| (176) | 94 | VW Polo WRC. | |
| (177) | 95 | Admit that players associated with California by residence, presence or IP address, generated the most downloads in the USA of the Asphalt games. | The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |
| (178) | 96 | Admit that players associated with California by residence, presence or IP address, generated the most revenue in the USA through the purchase of digital assets sold in the Asphalt games. | The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |



| | | | |
|---|---|---|---|
| **(179)** | 97 | Admit that players associated with California by residence, presence or IP address, generated the most revenue in the USA through the sale of in-game ads sold in the Asphalt games. | The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |
| **(180)** | 98 | Admit that players associated with California by residence, presence or IP address, generated the most downloads in the USA of the following digital car models in the aggregate: | The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |

For row (180), the following list appears:

- Ariel Nomad
- Aston Martin DB11
- Aston Martin DB9
- Aston Martin One 77
- BMW Z4 e 89
- Cadillac Cien Concept 2002
- Chevrolet Camaro 2016
- Chevrolet Camaro LT 2.0L Turbo 2016
- Chevrolet Camaro z11 50th Edition
- Chevrolet Camaro Z06
- Chevrolet Silverado 2500 HD
- Citroen DS E-Tense
- Dodge Ram 1500 Rebel
- Ferrari 488 GTB
- Ferrari fxxk 2014
- Ford Fiesta ST GRC
- Ford Mustang 2015
- Ford Ranger Dakar
- Holden Coupe 60
- Lamborghini Egotista
- Lamborghini Centenaro
- Land Rover
- Lotus Evora 410 Sport
- Man TGX D38
- Mazzanti Evantra
- McLaren 675LT 2015
- Mercedes Benz G500
- Mercedes Benz AMG GT 2016
- Mercedes Benz AMG S2016
- Mercedes Unimog U 4023
- Mosler GT3
- Perlini 105F Red Tiger
- Peugeot 208 T16 WRC
- Polaris RZR 1000
- Polo WRC
- Predator X-18



| | | | | |
|---|---|---|---|---|
| | | <ul><li>Honda NSX 2017</li><li>Jaguar F Type SVR Coupe 2017</li><li>Jeep Wrangler Rubicon</li><li>Koenigsegg Regera 2016</li><li>Koenigsegg Agera R</li><li>Lamborghini Aventador lp750-4 Supervolece</li></ul> | Intimidator<ul><li>SMG Buggy Dakar</li><li>Trion Nemesis</li><li>Volkswagen XL_Sport_Concept_ 2016</li><li>VW Beetle GRC</li><li>VW Polo WRC</li></ul> | |
| | | Admit that the following company targeted players associated with California by residence, presence or IP address: | | The sales/revenues received from advertisers targeting California players partly determines the size of GLSE's business, as measured by sales activity. |
| (181) | 99 | AirBerlin or the legal entity that owns this brand. | | |
| (182) | 100 | Alienware or the legal entity that owns this brand. | | |
| (183) | 101 | Centennial College or the legal entity that owns this brand. | | |
| (184) | 102 | Chiquita or the legal entity that owns this brand. | | |
| (185) | 103 | Lego or the legal entity that owns this brand. | | |
| (186) | 104 | Kellogg or the legal entity that owns this brand. | | |
| (187) | 105 | Simple Mobile or the legal entity that owns this brand | | |
| (188) | 106 | Hasbro or the legal entity that owns this brand. | | |
| (189) | 107 | Infiniti or the legal entity that owns this brand. | | |
| (190) | 108 | Warner Bros. or the legal entity that owns this brand. | | |
| (191) | 109 | Gillette or the legal entity that owns this brand. | | |
| (192) | 110 | Mercedes Benz or the legal entity that owns this brand. | | |
| (193) | 111 | Disney or the legal entity that owns this brand. | | |
| (194) | 112 | Huawei or the legal entity that owns this brand. | | |
| (195) | 113 | Mondelez International or the legal entity that owns this brand. | | |



| (196) | 114 | Twentieth Century Fox or the legal entity that owns this brand. | |
|---|---|---|---|
| (197) | 115 | LG or the legal entity that owns this brand. | |
| (198) | 116 | Close Up or the legal entity that owns this brand. | |
| (199) | 117 | Ferrari or the legal entity that owns this brand. | |
| (200) | 118 | Turkcell or the legal entity that owns this brand. | |
| (201) | 119 | Xbox or the legal entity that owns this brand. | |
| (202) | 120 | Coca Cola or the legal entity that owns this brand. | |
| (203) | 121 | McDonalds or the legal entity that owns this brand. | |
| (204) | 122 | Netflix or the legal entity that owns this brand. | |
| (205) | 123 | Admit that advertisers target mostly players associated with California by residence, presence or IP address. | The sales/revenues received from advertisers targeting California players partly determines the size of GLSE's business, as measured by sales activity. |
| (206) | 124 | Admit that advertisers registered to do business in California generated the most in-game ad revenue. | The sales/revenues received from advertisers targeting California players partly determines the size of GLSE's business, as measured by sales activity. |
| | | Admit that the partnership with the following company generated revenue from California: | The sales/revenues received from ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (207) | 125 | DoubleClick or the legal entity that owns this brand. | |
| (208) | 126 | Sizmek or the legal entity that owns this brand. | |
| (209) | 127 | AppsFlyer or the legal entity that owns this brand. | |
| (210) | 128 | Kochava or the legal entity that owns this brand. | |
| (211) | 129 | AdRiver or the legal entity that owns this brand. | |
| (212) | 130 | Adjust or the legal entity that owns this brand. | |
| (213) | 131 | Predicta or the legal entity that owns this brand. | |
| (214) | 132 | S4M or the legal entity that owns this brand. | |



| (215) | 133 | Vindico or the legal entity that owns this brand. | |
| (216) | 134 | adMotion or the legal entity that owns this brand. | |
| (217) | 135 | Atlas by Facebook or the legal entity that owns this brand. | |
| (218) | 136 | Barometric or the legal entity that owns this brand. | |
| (219) | 137 | Innovid or the legal entity that owns this brand. | |
| (220) | 138 | Reamp or the legal entity that owns this brand. | |
| (221) | 139 | Moat or the legal entity that owns this brand. | |
| (222) | 140 | Placed or the legal entity that owns this brand. | |

| REQUESTS FOR FOR PRODUCTION OF DOCUMENTS (Set One) | | | |
| --- | --- | --- | --- |
| List No. | Req. No. | Request | Why is the Request encompassed by Judge Chesney's Order? |
| (223) | 10 | Sufficient DOCUMENTS reflecting the total number of users who downloaded YOUR games for each fiscal year from 2013 to present. | The number of users/players measures the size of GLSE's business by mobile game player market share. |
| (224) | 11 | Sufficient DOCUMENTS reflecting the total number of users who downloaded YOUR games by geography, region, country, city and/or state for each fiscal year from 2013 to present. | The number of users/players measures the size of GLSE's business by mobile game player market share. |
| (225) | 12 | All DOCUMENTS which REFER, RELATE TO, or REFLECT the total number of users attributed to California who downloaded YOUR games for each fiscal year from 2013 to present. | The number of users/players measures the size of GLSE's business by mobile game player market share. |
| (226) | 15 | Sufficient DOCUMENTS reflecting any and all names of any 3D digital car purchased by users from 2013 to present. | The sales/revenues received from digital assets such as digital cars paid by players partly determines the size of GLSE's business in California, as measured by sales activity. |
| (227) | 19 | Sufficient DOCUMENTS reflecting the total number of advertisers with a physical business address in California or with whom YOU did | The sales/revenues received from advertisers/ads displayed while racing with |



| | | business in/from California for each fiscal year from 2013 to present. | infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| **(228)** | 20 | Sufficient DOCUMENTS reflecting the revenue generated from advertisers with a physical business address in California or with whom YOU did business in/from California for each fiscal year from 2013 to present. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(229)** | 21 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions target specific users of YOUR games. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(230)** | 22 | Sufficient DOCUMENTS which explains and/or demonstrates how any of YOUR online advertising solutions collect or obtain demographic information, including user preference, interests and lifestyle, or any other information associated with any of the users of YOUR games. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(231)** | 23 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to help advertisers target user audiences of YOUR games. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(232)** | 24 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to help advertisers target user audiences of YOUR games more efficiently. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |



| (233) | 25 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to help advertisers boost their key performance indicators ("KPIs"). | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| (234) | 26 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to collect or obtain a user's specific physical location through either latitude, longitude, and/or IP address. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (235) | 27 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to target a user based on interests and lifestyle. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (236) | 28 | Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to target a user based on user preferences. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (237) | 30 | Sufficient DOCUMENTS to explain and/or demonstrate how YOUR online advertising solutions is able to target users in California based on user preferences, and/or interests and lifestyle to reach users in/from California or using a California IP address. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (238) | 32 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any license agreements between YOU and any company with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |



| | | | |
|---|---|---|---|
| **(239)** | 33 | Sufficient DOCUMENTS reflecting the economic value derived from any and all license agreements between YOU and any company with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| **(240)** | 34 | Sufficient DOCUMENTS reflecting any and all license agreements between YOU and any car manufacturer with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| **(241)** | 35 | Sufficient DOCUMENTS reflecting the economic value derived from any and all license agreements between YOU and any car manufacturer with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| **(242)** | 36 | Sufficient DOCUMENTS reflecting any and all agreements between YOU and any company with a California business address for any commercial purpose. | The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California as part of its marketing and sales efforts, including advertisers, advertising agencies, human resource companies, car manufacturers, IP owners, conference organizers, among others. |
| **(243)** | 37 | Sufficient DOCUMENTS reflecting the economic value derived from any and all agreements between YOU and any company with a California business address for any commercial purpose. | The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California as part of its marketing and sales efforts, including advertisers, advertising agencies, human resource companies, car manufacturers, IP owners, conference organizers, |



| | | | among others. |
|---|---|---|---|
| **(244)** | 38 | Sufficient DOCUMENTS reflecting any monies owed pursuant to any and all agreements between YOU and any company with a California business address for any commercial purpose. | The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California as part of its marketing and sales efforts, including advertisers, advertising agencies, human resource companies, car manufacturers, IP owners, conference organizers, among others. |
| **(245)** | 41 | All COMMUNICATIONS between YOU and any company with a California business address and hired or retained to distribute, market, and/or sell YOUR games. | The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California to distribute, market, and/or sell its mobile games. |
| **(246)** | 44 | Sufficient DOCUMENTS reflecting the number and purpose of business trips taken by any of YOUR employees to California since 2013. | The size of GLSE's business in California is reflected by the extent its employees travel to California to engage with business partners and/or attend industry conferences to market and sell its mobile games. |
| **(247)** | 45 | Sufficient DOCUMENTS reflecting the number and purpose of business trips taken by any of YOUR officers to California since 2013. | The size of GLSE's business in California is reflected by the extent its officers travel to California to engage with business partners and/or attend industry conferences to market and sell its mobile games. |
| **(248)** | 46 | Sufficient DOCUMENTS reflecting the number and purpose of business trips taken by any of YOUR board of directors to California since 2013. | The size of GLSE's business in California is reflected by the extent its directors travel to California to engage with |



| | | | business partners and/or attend industry conferences to market and sell its mobile games. |
|---|---|---|---|
| **(249)** | 47 | All DOCUMENTS which REFER, RELATE TO, or REFLECT the Gameloft Advertising Solutions' network within California. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(250)** | 48 | All DOCUMENTS which REFER, RELATE TO, or REFLECT the Gameloft Advertising Solutions' activities within California. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(251)** | 49 | Sufficient DOCUMENTS reflecting YOUR contractual arrangement with Smart Recruiter in San Francisco. | The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in California. |
| **(252)** | 50 | All COMMUNICATIONS between YOU and Smart Recruiter in San Francisco regarding candidates from California. | The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in California. |
| **(253)** | 51 | Sufficient DOCUMENTS reflecting the number of resumes received from candidates associated with California. | The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in California. |
| **(254)** | 52 | Sufficient DOCUMENTS reflecting the number of candidates associated with California that YOU hired. | The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in |



|  |  |  | California. |
|---|---|---|---|
| **(255)** | 53 | Sufficient DOCUMENTS reflecting any legal document RELATING to the Website or any game whereby California and/or the exercise of jurisdiction in California was or is the venue to resolve disputes of any kind. | The author, publisher, and/or owner of the content dictating legal terms such as dispute resolution on the Website tends to identify who operates the Website. |
| **(256)** | 54 | Sufficient DOCUMENTS to indicate the commercial reasons why California was chosen as the venue to resolve disputes RELATING to the Website or any game. | The author, publisher, and/or owner of the content dictating legal terms on the Website such as dispute resolution tends to identify who operates the Website. |
| **(257)** | 55 | Sufficient DOCUMENTS to indicate which other jurisdictions were considered to resolve disputes, but not selected for the Website or any game. | The author, publisher, and/or owner of the content dictating legal terms on the Website such as dispute resolution tends to identify who operates the Website. |
| **(258)** | 56 | Sufficient DOCUMENTS reflecting any legal document whereby California law of any kind (*e.g.*, commercial, privacy, contract, employment, regulatory) is referenced as controlling or applicable for any purpose RELATING to the Website or any game. | The author, publisher, and/or owner of the content dictating legal terms on the Website such as governing law tends to identify who operates the Website. |
| **(259)** | 57 | Sufficient documents to indicate the commercial reasons why California law was referenced as controlling or applicable law RELATING to the Website or any game. | The author, publisher, and/or owner of the content dictating legal terms on the Website such as governing law tends to identify who operates the Website. |
| **(260)** | 58 | Sufficient documents to indicate all other legal jurisdictions considered to be applicable and/or controlling but not ultimately selected for the Website or any game. | The author, publisher, and/or owner of the content dictating legal terms on the Website such as governing jurisdiction tends to identify who operates the Website. |
| **(261)** | 64 | All DOCUMENTS which REFER, RELATE | The size of GLSE's business |



| | | | |
|---|---|---|---|
| | | TO, or REFLECT YOUR presence (attendance, sponsorship, or speakership) at any gaming conference in California since 2013. | in California is reflected by the extent GLSE attends, sponsors or speaks at industry conferences in California to market and sell its mobile games. |
| **(262)** | 65 | All COMMUNICATIONS between YOU and Gameloft, Inc. regarding sales, marketing, and/or business development since 2013. | The size of GLSE's business in California is reflected by the extent GLSE spends on revenue generating activities relating to sales, marketing and distributing of its games in California. |
| **(263)** | 73 | All DOCUMENTS in any language which REFER, RELATE TO, or REFLECT any version of the Terms of Use of the Website wherein California is referenced in any way. | The author, publisher, and/or owner of the content dictating terms of use on the Website tends to identify who operates the Website. |
| **(264)** | 74 | All DOCUMENTS in any language which REFER, RELATE TO, or REFLECT any version of the Privacy Policy for the Website wherein California is referenced in any way since 2013. | The author, publisher, and/or owner of the content dictating the privacy policy used on the Website tends to identify who operates the Website. |
| **(265)** | 81 | All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR decision to work with or selection of advertisers based in California. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(266)** | 82 | All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR decision to work with or selection of advertising agencies based in California. | T The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |



| \| REQUESTS FOR FOR PRODUCTION OF DOCUMENTS (Set Two) | | | |
|---|---|---|---|
| List No. | Req. No. | Request | Why is the Request encompassed by Judge Chesney's Order? |
| **(267)** | 1 | Sufficient DOCUMENTS reflecting the launch of any game in California either offline or online due to the size of the market in California. | The size of GLSE's business in California is reflected by the extent GLSE took part in the launch of any game in California. |
| **(268)** | 2 | All DOCUMENTS which REFER, RELATE TO, or REFLECT how players are associated with California for purposes of geo-targeting due to the size of California's population. | The number of players measures the size of GLSE's business by mobile game player market share. |
| **(269)** | 3 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any advertiser registered to do business in California with whom YOU do business. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(270)** | 4 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any Website functionality that collects information identifying a visitor as a resident or present in California. | The entity that dictates the functionalities of the Website and/or collects information gathered by the Website tends to identify who operates the Website. |
| **(271)** | 5 | Sufficient DOCUMENTS reflecting how languages were selected for use on the Website. | The entity that selects which languages to be used on the Website tends to identify who operates the Website. |
| **(272)** | 6 | All DOCUMENTS which REFER, RELATE TO, or REFLECT how languages used on the Website leverage California's diverse population. | The entity that selects which languages to be used on the Website tends to identify who operates the Website. |
| **(273)** | 7 | All DOCUMENTS which REFER, RELATE TO, or REFLECT languages used on the Website where California was part of the decision for language choice. | The entity that selects which languages to be used on the Website tends to identify who operates the Website. |



| (274) | 8 | All DOCUMENTS which REFER, RELATE TO, or REFLECT online and offline advertisements that track effectiveness via metrics demonstrating advertising impact associated with California. | The size of GLSE's business in California is reflected by the extent GLSE spent and tracked ads to sell its games and the effectiveness of those ads. |
|---|---|---|---|
| (275) | 9 | All DOCUMENTS which REFER, RELATE TO, or REFLECT online and offline advertisements that demonstrate modifications in response to demonstrated advertising impact associated with California. | The size of GLSE's business in California is reflected by the extent GLSE modified ads to make them more effective. |
| (276) | 10 | All DOCUMENTS which REFER, RELATE TO, or REFLECT any revenue generated from services associated with California. | The size of GLSE's business in California is reflected by the extent of any and all revenues generated from California. |
| (277) | 11 | All DOCUMENTS which REFER, RELATE TO, or REFLECT the Google Adwords and the relevant changes that are made to increase views and/or sales of YOUR games to PERSONS associated with California | The size of GLSE's business in California is reflected by the extent GLSE spent and tracked ads to sell its games and the effectiveness of those ads. |
| (278) | 12 | Sufficient DOCUMENTS reflecting all social media ads targeting any PERSONS associated with California. | The size of GLSE's business in California is reflected by the extent GLSE spent and tracked ads to sell its games and the effectiveness of those ads. |
| | | Sufficient DOCUMENTS reflecting the contractual terms between YOU and: | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (279) | 13 | Air Berlin or the company that owns this brand. | |
| (280) | 15 | Alienware or the company that owns this brand. | |
| (281) | 17 | Centennial College or the company that owns this brand. | |
| (282) | 19 | Chiquita or the company that owns this brand. | |
| (283) | 21 | Close Up or the company that owns this brand. | |
| (284) | 23 | Coca Cola or the company that owns this brand. | |



| (285) | 25 | Disney or the company that owns this brand. | |
| (286) | 27 | Ferrari or the company that owns this brand. | |
| (287) | 29 | Gillette or the company that owns this brand. | |
| (288) | 31 | Hasbro or the company that owns this brand. | |
| (289) | 33 | Huawei or the company that owns this brand. | |
| (290) | 35 | Infiniti or the company that owns this brand. | |
| (291) | 37 | Kellogg or the company that owns this brand. | |
| (292) | 39 | Lego or the company that owns this brand. | |
| (293) | 41 | LG or the company that owns this brand. | |
| (294) | 43 | McDonald's or the company that owns this brand. | |
| (295) | 45 | Mercedes-Benz or the company that owns this brand. | |
| (296) | 47 | Mondelez International or the company that owns this brand. | |
| (297) | 49 | Netflix or the company that owns this brand. | |
| (298) | 51 | Simple Mobile or the company that owns this brand. | |
| (299) | 53 | Turkcell or the company that owns this brand. | |
| (300) | 55 | Twentieth Century Fox or the company that owns this brand. | |
| (301) | 57 | Warner Bros. or the company that owns this brand. | |
| (302) | 59 | XBox or the company that owns this brand. | |
| | | Sufficient DOCUMENTS reflecting the amount of any and all revenue received from: | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (303) | 14 | Air Berlin or the company that owns this brand. | |
| (304) | 16 | Alienware or the company that owns this brand. | |
| (305) | 18 | Centennial College or the company that owns this brand. | |
| (306) | 20 | Chiquita or the company that owns this brand. | |
| (307) | 22 | Close Up or the company that owns this brand. | |
| (308) | 24 | Coca Cola or the company that owns this brand. | |
| (309) | 26 | Disney or the company that owns this brand. | |
| (310) | 28 | Ferrari or the company that owns this brand. | |



| | | | |
|---|---|---|---|
| **(311)** | 30 | Gillette or the company that owns this brand. | |
| **(312)** | 32 | Hasbro or the company that owns this brand. | |
| **(313)** | 34 | Huawei or the company that owns this brand. | |
| **(314)** | 36 | Infiniti or the company that owns this brand. | |
| **(315)** | 38 | Kellogg or the company that owns this brand. | |
| **(316)** | 40 | Lego or the company that owns this brand. | |
| **(317)** | 42 | LG or the company that owns this brand. | |
| **(318)** | 44 | McDonald's or the company that owns this brand. | |
| **(319)** | 46 | Mercedes-Benz or the company that owns this brand. | |
| **(320)** | 48 | Mondelez International or the company that owns this brand. | |
| **(321)** | 50 | Netflix or the company that owns this brand. | |
| **(322)** | 52 | Simple Mobile or the company that owns this brand. | |
| **(323)** | 54 | Turkcell or the company that owns this brand. | |
| **(324)** | 56 | Twentieth Century Fox or the company that owns this brand. | |
| **(325)** | 58 | Warner Bros. or the company that owns this brand. | |
| **(326)** | 60 | XBox or the company that owns this brand. | |
| | | Sufficient DOCUMENTS reflecting the contractual terms of the partnership: | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(327)** | 61 | with Adjust. | |
| **(328)** | 62 | with adMotion. | |
| **(329)** | 63 | with AdRiver. | |
| **(330)** | 64 | with AppsFlyer. | |
| **(331)** | 65 | with Atlas by Facebook. | |
| **(332)** | 66 | with Barometric. | |
| **(333)** | 67 | with DoubleClick. | |
| **(334)** | 68 | with Innovid. | |
| **(335)** | 69 | with Kochava. | |
| **(336)** | 70 | with Moat. | |



| (337) | 71 | with Placed. | |
| (338) | 72 | with Predicta. | |
| (339) | 73 | with Reamp. | |
| (340) | 74 | with Sizmek. | |
| (341) | 75 | with S4M. | |
| (342) | 76 | with Vindico | |
| (343) | 77 | Sufficient DOCUMENTS reflecting the number of players associated with California by presence, address, or IP address for each fiscal year since 2013. | The number of players measures the size of GLSE's business by mobile game player market share. |
| (344) | 78 | Sufficient DOCUMENTS reflecting the number of downloads by players associated with California by presence, address, or IP address for each fiscal year since 2013. | The number of downloads is a proxy for the number of players, which measures the size of GLSE's business by mobile game player market share. |
| (345) | 79 | Sufficient DOCUMENTS reflecting any and all contracts between YOU and Gameloft, Inc. for each fiscal year since 2013. | The size of GLSE's business in California is reflected by the extent of GLSE's engagement with Gameloft, Inc. to distribute, market, and/or sell its mobile games. |
| (346) | 80 | Sufficient DOCUMENTS reflecting any and all contracts between YOU and any licensor of trademarks registered to do business in California for each fiscal year since 2013. | The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |

| INTERROGATORIES (Set One) | | | |
|---|---|---|---|
| List No. | Req. No. | Request | Why is the Request encompassed by Judge Chesney's Order? |
| (347) | 1 | How much revenue was generated from all California sources for each of the fiscal years 2013 to the present? | The size of GLSE's business in California is reflected by the extent of any and all revenues generated from California sources. |
| (348) | 2 | How much revenue was generated from all USA sources for each of the fiscal years 2013 to the | The relative size of GLSE's business in California is |



| | | present? | reflected by the extent of any and all revenues generated from the USA. |
|---|---|---|---|
| **(349)** | 5 | How much revenue was generated from in-game advertisements while playing Asphalt games from all California sources for each of the fiscal years 2013 to the present? | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(350)** | 6 | How much revenue was generated from in-game advertisements while playing Asphalt games from all USA sources for each of the fiscal years 2013 to the present? | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| **(351)** | 7 | How much revenue was generated from each of these advertisers: AirBerlin, Alienware, Centennial College, Chiquita, Lego, Kellogg, Simple Mobile, Hasbro, Infiniti, Warner Bros., Gillette, Mercedes Benz, Disney, Huawei, Mondelez International Twentieth Century Fox, LG, Close Up, Ferrari, Turkcell, Xbox, Coca Cola, McDonalds, and Netflix for each of the fiscal years 2013 to the present. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(352)** | 8 | How much revenue was shared with or by each of the following companies: DoubleClick, Sizmek, AppsFlyer, Kochava, AdRiver, Adjust, Predicta, S4M, Vindico, adMotion, Atlas by Facebook, Barometric, Innovid, Reamp, Moat, and Placed for each of the fiscal years 2013 to the present. | These companies assist in generating sales/revenues received from ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(353)** | 9 | Identify (name, contact person, and address) any and all advertisers located in California who have placed ads within Asphalt games for each of the fiscal years 2013 to the present. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as |



| | | | measured by sales activity. |
|---|---|---|---|
| **(354)** | 10 | Identify (name, contact person, and address) any and all advertisers located in USA who have placed any ads in any of the Asphalt games for each of the fiscal years 2013 to the present. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(355)** | 11 | How much advertising revenue was generated for each advertiser located in California who have placed ads in any of the Asphalt games for each of the fiscal years 2013 to the present? | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(356)** | 12 | How much advertising revenue was generated for each advertiser located in USA who have placed ads in any of the Asphalt games for each of the fiscal years 2013 to the present? | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(357)** | 13 | How many players are associated with California by residence, presence, or IP address for each of the fiscal years 2013 to the present? | The number of players, which affects the sale of digital cars and ads, measures the relative size of GLSE's business in California by mobile game player market share. |
| **(358)** | 14 | How many players are associated with the USA by residence, presence, or IP address for each of the fiscal years 2013 to the present? | The number of players, which affects the sale of digital cars and ads, measures the relative size of GLSE's business in California by mobile game player market share. |
| **(359)** | 15 | How many players associated with California by residence, presence, or IP address have downloaded any digital assets from any Asphalt games for each of the fiscal years 2013 to the present? | The number of players, which affects the sale of digital cars and ads, measures the size of GLSE's business in California by |



| | | | |
|---|---|---|---|
| | | | mobile game player market share. |
| **(360)** | 16 | How many players associated with USA by residence, presence, or IP address have downloaded any digital assets from any Asphalt games for each of the fiscal years 2013 to the present? | The number of players, which affects the sale of digital cars and ads, measures the relative size of GLSE's business in California by mobile game player market share. |
| **(361)** | 17 | Identify (name of campaign, name of advertiser, date of campaign) any or all advertising campaigns for any advertiser in California for each of the fiscal years 2013 to the present? | The sales/revenues received from campaigns for advertisers displaying ads while racing with infringing digital cars partly determines the relative size of GLSE's business, as measured by sales activity. |
| **(362)** | 18 | Identify (name of campaign, name of advertiser, date of campaign) any or all advertising campaigns for any advertiser targeting players associated with California by residence, presence, or IP address for each of the fiscal years 2013 to the present? | The sales/revenues received from campaigns for advertisers displaying ads while racing with infringing digital cars partly determines the relative size of GLSE's business, as measured by sales activity. |
| **(363)** | 19 | Identify the aggregate world revenue (provide separate amount for downloading digital assets and amount from in-game ads) generated by the following digital car models for each of the fiscal years 2013 to the present?<br><br>• Ariel Nomad  • Lamborghini Egotista<br>• Aston Martin DB11  • Lamborghini Centenaro<br>• Aston Martin DB9<br>• Aston Martin One 77  • Land Rover<br>• BMW Z4 e 89  • Lotus Evora 410 Sport<br>• Cadillac Cien Concept 2002  • Man TGX D38<br>• Chevrolet Camaro 2016  • Mazzanti Evantra<br>• Chevrolet Camaro  • McLaren 675LT | The sales/revenues received from ads paid by advertisers or digital cars paid by players globally determines the relative size of GLSE's business in California, as measured by sales activity. |



| | | LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense<br>• Dodge Ram 1500 Rebel<br>• Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | 2015<br>• Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U 4023<br>• Mosler GT3<br>• Perlini 105F Red Tiger<br>• Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_ 2016<br>• VW Beetle GRC<br>• VW Polo WRC | |
| **(364)** | 20 | Identify the world revenue generated (provide separate amount for downloading digital assets and amount from in-game ads) by each of the following digital car models for each of the fiscal years 2013 to the present?<br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89 | • Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 | The sales/revenues received from ads paid by advertisers or digital cars paid by players globally determines the relative size of GLSE's business in California, as measured by sales activity. |



|  |  | | |  |
|---|---|---|---|---|
|  |  | <ul><li>Cadillac Cien Concept 2002</li><li>Chevrolet Camaro 2016</li><li>Chevrolet Camaro LT 2.0L Turbo 2016</li><li>Chevrolet Camaro z11 50th Edition</li><li>Chevrolet Camaro Z06</li><li>Chevrolet Silverado 2500 HD</li><li>Citroen DS E-Tense</li><li>Dodge Ram 1500 Rebel</li><li>Ferrari 488 GTB</li><li>Ferrari fxxk 2014</li><li>Ford Fiesta ST GRC</li><li>Ford Mustang 2015</li><li>Ford Ranger Dakar</li><li>Holden Coupe 60</li><li>Honda NSX 2017</li><li>Jaguar F Type SVR Coupe 2017</li><li>Jeep Wrangler Rubicon</li><li>Koenigsegg Regera 2016</li><li>Koenigsegg Agera R</li><li>Lamborghini Aventador lp750-4 Supervolece</li></ul> | <ul><li>Sport</li><li>Man TGX D38</li><li>Mazzanti Evantra</li><li>McLaren 675LT 2015</li><li>Mercedes Benz G500</li><li>Mercedes Benz AMG GT 2016</li><li>Mercedes Benz AMG S2016</li><li>Mercedes Unimog U 4023</li><li>Mosler GT3</li><li>Perlini 105F Red Tiger</li><li>Peugeot 208 T16 WRC</li><li>Polaris RZR 1000</li><li>Polo WRC</li><li>Predator X-18 Intimidator</li><li>SMG Buggy Dakar</li><li>Trion Nemesis</li><li>Volkswagen XL_Sport_Concept_2016</li><li>VW Beetle GRC</li><li>VW Polo WRC</li></ul> |  |
| **(365)** | 21 | How much of the revenue identified in interrogatory 19 was generated by players associated with California by presence, residence, or IP address? | | The sales/revenues received from digital assets such as digital cars paid by players partly determines the relative size of GLSE's business in California, as |



| | | measured by sales activity. |
|---|---|---|
| **(366)** 22 | How much of the revenue identified in interrogatory 20 was generated by players associated with California by presence, residence, or IP address? | The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the relative size of GLSE's business in California, as measured by sales activity. |

| **30(b)(6)** | | |
|---|---|---|
| **List No.** **Req. No.** | **Request** | **Why is the Request encompassed by Judge Chesney's Order?** |
| **(367)** 4 | Communications between GLSE and Gameloft, Inc. with respect to any revenue generating activities relating to California, including the Gameloft Advertising Solution, in-game ads, and/or the sale of digital assets incorporated into the Asphalt games. | The size of GLSE's business in California is reflected by the extent of any and all revenues generated from California sources, particularly revenues received from ads paid by advertisers or digital cars paid by player. |
| **(368)** 5 | Communications between GLSE and Gameloft, Inc. with respect to the publication of content on www.gameloft.com ("Website") referencing California in any way. | The author, publisher, and/or owner of the content dictating the content to be published on the Website tends to identify who operates the Website. |
| **(369)** 6 | Communications between GLSE and Gameloft, Inc. with respect to functionalities enabled on the Website to collect information from visitors to the Website. | The entity that dictates the functionalities of the Website and/or collects information gathered by the Website tends to identify who operates the Website. |
| **(370)** 7 | Board minutes referencing revenues generated by any California advertiser, any California licensor, any advertiser targeting players associated with California, or by the purchase of digital assets by Asphalt game players associated with California by way of residence, | The sales/revenues received from ads paid by advertisers or digital cars paid by players in the USA partly determines the relative size of GLSE's business in |



| | | presence, or IP address or any other means used to geo-tag any player. | California, as measured by sales activity. |
|---|---|---|---|
| **(371)** | 8 | The collection of any information about visitors to the Website or players to determine their demographics, preferences, interests and lifestyle, and/or location. | The entity that collects information gathered by the Website for commercial use tends to identify who operates the Website. |
| **(372)** | 9 | The collection of any information through the Internet, and/or social media such as Facebook or Twitter about visitors to the Website or players that associates them with California. | The entity that collects information about visitors to the Website for commercial use tends to identify who operates the Website. |
| **(373)** | 11 | Revenues generated from the sale of in game advertising space to advertisers targeting any player associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(374)** | 12 | Revenues generated from the sale of in game advertising space to advertisers with offices or doing business in California. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(375)** | 13 | Revenues generated by Gameloft Advertising Solutions ("GLADS") relating to players associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(376)** | 14 | Revenues generated by GLADS' ability to target specific audiences based on demographics, interests and lifestyle, user preferences, and/or geo location as they relate to players associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |



| | | | |
|---|---|---|---|
| (377) | 15 | Revenues generated or paid by any of the following companies as they relate to California: Lego, Kelloggs, Simple Mobile, Airberlin, Hasbro, Infiniti, Warner Bros., Gillette, Mercedes Benz, Alienware, Disney, Huawei, Mondelez International, 20th Century Fox, LG, Closeup, Ferrari, Centennial College, Turkcell, Xbox, Coca Cola, McDonalds, Netflix, Chiquita, DoubleClick, Sizmek, Appsflyer, Kochava, Adriver, adjust, Predicta, S4M, vindico, adMotion, atlas, Barometric, Innovid, reamp, Moat, and/or Placed. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (378) | 16 | Marketing and distribution expenses either budgeted or incurred related to any marketing or sales activity related to California. | The size of GLSE's business in California is reflected by the extent of GLSE spends on revenue generating activities relating to sales, marketing and distributing of its games in California. |
| (379) | 17 | The names and responsibilities of any personnel who has or is being tasked with developing more business or generating more revenue from California advertisers or players associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | The size of GLSE's business in California is reflected by the number of staff tasked with increasing business from California sources. |
| (380) | 18 | Any plans to develop or increase business from any California advertiser, any advertiser that targets California, or player associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (381) | 20 | The functionalities on the Website, including how they are identified, developed, and/or enabled on the Website to target specific audiences, including Website visitors associated with California by way of residence, presence, or IP address or any other means used to geo-tag a visitor. | The entity that dictates the functionalities of the Website and/or collects information gathered by the Website tends to identify who operates the Website. |
| (382) | 21 | The selection of California as the venue to | The author, publisher, |



| | | resolve disputes or as the controlling law for any legal matter relating to the Website, games or promotional activity. | and/or owner of the content dictating legal terms on the Website tends to identify who operates the Website. |
|---|---|---|---|
| **(383)** | 22 | The number of players associated with California as it relates to revenue generating activities. | To the extent users generate revenue, such as the purchase of digital cars or the display of ads, this number measures the size of GLSE's business in California by mobile game player market share. |
| **(384)** | 23 | The number of users associated with California as it relates to revenue generating activities. | To the extent users generate revenue, such as the purchase of digital cars or the display of ads, this number measures the size of GLSE's business in California by mobile game player market share. |
| **(385)** | 24 | The number of visitors to the website associated with California as it relates to revenue generating activities. | To the extent visitors generate revenue, such as the purchase of digital cars or the display of ads, this number measures the size of GLSE's business in California by mobile game player market share. |

**III.     GLSE's Matching Numbered List Where Each Rejected Item Is Coupled With A 1-Sentence Explanation For Why The Request Was Not Encompassed by Judge Chesney's Order.**

| Requests for Admission, Set 1 | | | |
|---|---|---|---|
| **List No.** | **Req. No.** | **Request** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(1)** | 4 | **Request:** Admit that, in fiscal year 2015, North America accounted for 25% of consolidated world sales of €256.2 million (approximately $298 million), meaning North America generated approximately €64 million | **Plaintiff's Position:** The sales/revenues received from ads paid by advertisers or digital cars paid by players in North America determines the relative size of |



| | | (approximately $75 million) in revenue. | GLSE's business in California, as measured by sales activity. |
|---|---|---|---|
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(2)** | 5 | **Request:** Admit that, in fiscal year 2015, more than 95% of revenue from smartphones and touch tablets comes from the sale of virtual goods (also known as digital assets). | **Plaintiff's Position:** The sales/revenues received from virtual goods such as digital cars paid by players partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(3)** | 6 | **Request:** Admit that over 75% of the sales, in fiscal year 2015, in North America were from the USA. | **Plaintiff's Position:** The sales/revenues received from ads paid by advertisers or digital cars paid by players in the USA partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(4)** | 7 | **Request:** Admit that the largest amount of the sales of digital assets in 2015 in the USA were from California. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the relative size of |



| | | | GLSE's business in California, as measured by sales activity. |
|---|---|---|---|
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(5)** | 8 | **Request:** Admit that the largest amount of digital assets incorporated in the Asphalt games and purchased in the USA were from California. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the relative size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(6)** | 9 | **Request:** Admit that the largest number of players of the Asphalt games are associated with California by residence. | **Plaintiff's Position:** The number of players, as measured by residence in California, partly determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have played an *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(7)** | 10 | **Request:** Admit that the largest number of players of the Asphalt games are associated with California by presence. | **Plaintiff's Position:** The number of players, as measured by presence in California, partly determines sales of ads and digital cars, which measures the |



| | | | |
|---|---|---|---|
| | | | size of GLSE's business by mobile game player market share. |
| | | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have played an *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(8)** | 11 | **Request:** Admit that the largest number of players of the Asphalt games are associated with California by IP address. | **Plaintiff's Position:** The number of players, as measured by California IP address, partly determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have played an *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **(9)** | 13 | **Request:** Admit that YOU are a signatory to license agreements with strategic partners located in California who hold trademarks used in Asphalt games. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with licensors who hold trademarks used in *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **(10)** | 14 | **Request:** Admit that the ability to maintain good business relations with these trademark holders located in California is important to YOUR future development of Asphalt games. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |



| | | |
|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with licensors who hold trademarks used in *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(11)** | 15 | **Request:** Admit that as a result of these trademark licenses from trademark holders located in California, YOU benefit from these brands' reputations which substantially increases the sales potential of associated games, including Asphalt games. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's benefit from brands or business relationships with licensors who hold trademarks, including those used in *Asphalt* games, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(12)** | 16 | **Request:** Admit that licenses from trademark holders located in California represented at least 30% of sales in fiscal year 2015. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by California licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with licensors who hold trademarks and the sales related thereto are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(13)** | 17 | **Request:** Admit that, in fiscal year 2015, YOU implemented an internal structure for a digital advertising network called Gameloft Advertising Solutions ("GLADS") and began selling advertising space within games, including Asphalt games. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |



| | | GLSE's Position: In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the content, strategy, and sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(14)** | 18 | **Request:** Admit that GLADS offers advertisers the ability to geo-target players, including players associated with California by information such as residence, presence, and/or IP address, user preference, interests and lifestyle. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | GLSE's Position: In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(15)** | 19 | **Request:** Admit that the Website and/or Asphalt games collect demographical information about players, including residence, location, and other geographical information. | **Plaintiff's Position:** The number of players determines sales of ads and digital cars, which measures the size of GLSE's business by mobile game player market share. |
| | | GLSE's Position: In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits,  the collection of demographic information about players is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(16)** | 20 | **Request:** Admit that GLADS enables advertisers to target players associated with California by using information such as residence, presence, and/or IP address, user preference, interests and lifestyle. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | GLSE's Position: In the context of Judge Chesney's hearing statements that specific | |



| | | | |
|---|---|---|---|
| | | jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the content, strategy, and sales of third-party advertising, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(17)** | 21 | **Request:** Admit that advertisers have targeted players associated with California by using information such as residence, presence, and/or IP address, user preference, interests and lifestyle. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy sales of third-party advertisers is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(18)** | 22 | **Request:** Admit that the ability to target players by geo location adds value to GLADS, enabling the sale of advertising space for a higher price. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy, ability and value thereof regarding the sale of third-party advertising, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(19)** | 23 | **Request:** Admit that the largest amount of revenues generated through GLADS in the USA come from advertisers located in California. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific | |



| | | jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the content, strategy, and sales of third-party advertisers and where they are located , is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
|---|---|---|
| | | **Request:** Admit that the following digital car model was incorporated into one or more the Asphalt games: |
| **(20)** | 24 | Ariel Nomad. |
| **(21)** | 25 | Aston Martin DB11. |
| **(22)** | 26 | Aston Martin DB9. |
| **(23)** | 27 | Aston Martin One 77. |
| **(24)** | 28 | BMW Z4 e 89. |
| **(25)** | 29 | Cadillac Cien Concept 2002. |
| **(26)** | 30 | Chevrolet Camaro 2016. |
| **(27)** | 31 | Chevrolet Camaro LT 2.0L Turbo 2016. |
| **(28)** | 32 | Chevrolet Camaro z11 50th Edition. |
| **(29)** | 33 | Chevrolet Camaro Z06. |
| **(30)** | 34 | Chevrolet Silverado 2500 HD. |
| **(31)** | 35 | Citroen DS E-Tense. |
| **(32)** | 36 | Dodge Ram 1500 Rebel. |
| **(33)** | 37 | Ferrari 488 GTB. |
| **(34)** | 38 | Ferrari fxxk 2014. |
| **(35)** | 39 | Ford Fiesta ST GRC. |
| **(36)** | 40 | Ford Mustang 2015. |
| **(37)** | 41 | Ford Ranger Dakar. |
| **(38)** | 42 | Holden Coupe 60. |
| **(39)** | 43 | Honda NSX 2017. |
| **(40)** | 44 | Jaguar F Type SVR Coupe 2017. |
| **(41)** | 45 | Jeep Wrangler Rubicon. |
| **(42)** | 46 | Koenigsegg Regera 2016. |
| **(43)** | 47 | Koenigsegg Agera R. |
| **(44)** | 48 | Lamborghini Aventador lp750-4 Supervolece. |
| **(45)** | 49 | Lamborghini Egotista. |

The Plaintiff's Position (spanning the rows for requests 20–45): **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity.



| (46) | 50 | Lamborghini Centenaro. | |
| (47) | 51 | Land Rover. | |
| (48) | 52 | Lotus Evora 410 Sport. | |
| (49) | 53 | Man TGX D38. | |
| (50) | 54 | Mazzanti Evantra. | |
| (51) | 55 | McLaren 675LT 2015. | |
| (52) | 56 | Mercedes Benz G500. | |
| (53) | 57 | Mercedes Benz AMG GT 2016. | |
| (54) | 58 | Mercedes Benz AMG S2016. | |
| (55) | 59 | Mercedes Unimog U 4023. | |
| (56) | 60 | Mosler GT3. | |
| (57) | 61 | Perlini 105F Red Tiger. | |
| (58) | 62 | Peugeot 208 T16 WRC. | |
| (59) | 63 | Polaris RZR 1000. | |
| (60) | 64 | Polo WRC. | |
| (61) | 65 | Predator X-18 Intimidator. | |
| (62) | 66 | SMG Buggy Dakar. | |
| (63) | 67 | Trion Nemesis. | |
| (64) | 68 | Volkswagen XL_Sport_Concept_2016. | |
| (65) | 69 | VW Beetle GRC. | |
| (66) | 70 | VW Polo WRC. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, whether a particular car model is in *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | |
| (67) | 71 | **Request:** Admit that players associated with California by information such as residence, presence or IP address, paid a fee to download any one of the following digital car models:<br><br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One     • Lamborghini Egotista<br>                 • Lamborghini Centenaro | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |



- 77
- BMW Z4 e 89
- Cadillac Cien Concept 2002
- Chevrolet Camaro 2016
- Chevrolet Camaro LT 2.0L Turbo 2016
- Chevrolet Camaro z11 50th Edition
- Chevrolet Camaro Z06
- Chevrolet Silverado 2500 HD
- Citroen DS E-Tense
- Dodge Ram 1500 Rebel
- Ferrari 488 GTB
- Ferrari fxxk 2014
- Ford Fiesta ST GRC
- Ford Mustang 2015
- Ford Ranger Dakar
- Holden Coupe 60
- Honda NSX 2017
- Jaguar F Type SVR Coupe 2017
- Jeep Wrangler Rubicon
- Koenigsegg Regera 2016
- Koenigsegg Agera R
- Lamborghini Aventador lp750-4 Supervolece

- Land Rover
- Lotus Evora 410 Sport
- Man TGX D38
- Mazzanti Evantra
- McLaren 675LT 2015
- Mercedes Benz G500
- Mercedes Benz AMG GT 2016
- Mercedes Benz AMG S2016
- Mercedes Unimog U 4023
- Mosler GT3
- Perlini 105F Red Tiger
- Peugeot 208 T16 WRC
- Polaris RZR 1000
- Polo WRC
- Predator X-18 Intimidator
- SMG Buggy Dakar
- Trion Nemesis
- Volkswagen XL_Sport_Concept_ 2016
- VW Beetle GRC
- VW Polo WRC

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) paid to  download such car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the



| | | specific *Asphalt* games and digital car models that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(68)** | 72 | **Request:** Admit that players associated with California by information such as residence, presence or IP address, paid a fee to download more than one of the following digital car models:<br><br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro 2016<br>• Chevrolet Camaro LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense<br>• Dodge Ram 1500 Rebel<br>• Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br><br>• Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra<br>• McLaren 675LT 2015<br>• Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U 4023<br>• Mosler GT3<br>• Perlini 105F Red Tiger<br>• Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_ | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |



| | | | 2016 <br> • VW Beetle GRC <br> • VW Polo WRC | |
|---|---|---|---|---|
| | | • Koenigsegg Regera 2016 <br> • Koenigsegg Agera R <br> • Lamborghini Aventador lp750-4 Supervolece | | |

| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) paid to download such car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|

| **(69)** | 73 | **Request:** Admit that players associated with California by information such as residence, presence or IP address, downloaded any one of the following digital car models, as individual model downloads, most frequently in the USA: <br><br> • Ariel Nomad <br> • Aston Martin DB11 <br> • Aston Martin DB9 <br> • Aston Martin One 77 <br> • BMW Z4 e 89 <br> • Cadillac Cien Concept 2002 <br> • Chevrolet Camaro 2016 <br> • Chevrolet Camaro LT 2.0L Turbo 2016 <br> • Chevrolet Camaro z11 50th Edition <br> • Chevrolet Camaro Z06 <br> • Chevrolet Silverado 2500 HD <br> • Citroen DS E-Tense <br> • Dodge Ram 1500 Rebel | • Lamborghini Egotista <br> • Lamborghini Centenaro <br> • Land Rover <br> • Lotus Evora 410 Sport <br> • Man TGX D38 <br> • Mazzanti Evantra <br> • McLaren 675LT 2015 <br> • Mercedes Benz G500 <br> • Mercedes Benz AMG GT 2016 <br> • Mercedes Benz AMG S2016 <br> • Mercedes Unimog U 4023 <br> • Mosler GT3 <br> • Perlini 105F Red | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
|---|---|---|---|---|



| | | |
|---|---|---|
| | • Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | Tiger<br>• Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_ 2016<br>• VW Beetle GRC<br>• VW Polo WRC | |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) downloaded such car models "most frequently in the U.S. is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim.

| (70) | 74 | **Request:** Admit that players associated with California by information such as residence, presence or IP address, downloaded more than one of the following digital car models, as individual model downloads, most frequently in the USA: | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
|---|---|---|---|
| | | • Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro | • Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra | |



| | | | |
|---|---|---|---|
| | | 2016 <ul><li>Chevrolet Camaro LT 2.0L Turbo 2016</li><li>Chevrolet Camaro z11 50th Edition</li><li>Chevrolet Camaro Z06</li><li>Chevrolet Silverado 2500 HD</li><li>Citroen DS E-Tense</li><li>Dodge Ram 1500 Rebel</li><li>Ferrari 488 GTB</li><li>Ferrari fxxk 2014</li><li>Ford Fiesta ST GRC</li><li>Ford Mustang 2015</li><li>Ford Ranger Dakar</li><li>Holden Coupe 60</li><li>Honda NSX 2017</li><li>Jaguar F Type SVR Coupe 2017</li><li>Jeep Wrangler Rubicon</li><li>Koenigsegg Regera 2016</li><li>Koenigsegg Agera R</li><li>Lamborghini Aventador lp750-4 Supervolece</li></ul> | <ul><li>McLaren 675LT 2015</li><li>Mercedes Benz G500</li><li>Mercedes Benz AMG GT 2016</li><li>Mercedes Benz AMG S2016</li><li>Mercedes Unimog U 4023</li><li>Mosler GT3</li><li>Perlini 105F Red Tiger</li><li>Peugeot 208 T16 WRC</li><li>Polaris RZR 1000</li><li>Polo WRC</li><li>Predator X-18 Intimidator</li><li>SMG Buggy Dakar</li><li>Trion Nemesis</li><li>Volkswagen XL_Sport_Concept_2016</li><li>VW Beetle GRC</li><li>VW Polo WRC</li></ul> | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) downloaded more than one of such car models "most frequently in the USA" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | |
| **(71)** | 75 | **Request:** Admit that players associated with California by information such as residence, presence or IP address, downloaded any one of | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars |



the following digital car models, in aggregate, most frequently in the USA:

- Ariel Nomad
- Aston Martin DB11
- Aston Martin DB9
- Aston Martin One 77
- BMW Z4 e 89
- Cadillac Cien Concept 2002
- Chevrolet Camaro 2016
- Chevrolet Camaro LT 2.0L Turbo 2016
- Chevrolet Camaro z11 50th Edition
- Chevrolet Camaro Z06
- Chevrolet Silverado 2500 HD
- Citroen DS E-Tense
- Dodge Ram 1500 Rebel
- Ferrari 488 GTB
- Ferrari fxxk 2014
- Ford Fiesta ST GRC
- Ford Mustang 2015
- Ford Ranger Dakar
- Holden Coupe 60
- Honda NSX 2017
- Jaguar F Type SVR Coupe 2017
- Jeep Wrangler Rubicon
- Koenigsegg Regera 2016
- Koenigsegg Agera R
- Lamborghini Aventador lp750-4

- Lamborghini Egotista
- Lamborghini Centenaro
- Land Rover
- Lotus Evora 410 Sport
- Man TGX D38
- Mazzanti Evantra
- McLaren 675LT 2015
- Mercedes Benz G500
- Mercedes Benz AMG GT 2016
- Mercedes Benz AMG S2016
- Mercedes Unimog U 4023
- Mosler GT3
- Perlini 105F Red Tiger
- Peugeot 208 T16 WRC
- Polaris RZR 1000
- Polo WRC
- Predator X-18 Intimidator
- SMG Buggy Dakar
- Trion Nemesis
- Volkswagen XL_Sport_Concept_ 2016
- VW Beetle GRC
- VW Polo WRC

paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity.



| | | Supervolece | | |
|---|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) downloaded more than one such car models in the aggregate "most frequently in the USA" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | | |
| **(72)** | 76 | **Request:** Admit that players associated with California by information such as residence, presence or IP address, downloaded more than one of the following digital car models, in aggregate, most frequently in the USA: <br><br> • Ariel Nomad <br> • Aston Martin DB11 <br> • Aston Martin DB9 <br> • Aston Martin One 77 <br> • BMW Z4 e 89 <br> • Cadillac Cien Concept 2002 <br> • Chevrolet Camaro 2016 <br> • Chevrolet Camaro LT 2.0L Turbo 2016 <br> • Chevrolet Camaro z11 50th Edition <br> • Chevrolet Camaro Z06 <br> • Chevrolet Silverado 2500 HD <br> • Citroen DS E-Tense <br> • Dodge Ram 1500 Rebel <br> • Ferrari 488 GTB <br> • Ferrari fxxk 2014 <br> • Ford Fiesta ST GRC <br> • Ford Mustang 2015 | • Lamborghini Egotista <br> • Lamborghini Centenaro <br> • Land Rover <br> • Lotus Evora 410 Sport <br> • Man TGX D38 <br> • Mazzanti Evantra <br> • McLaren 675LT 2015 <br> • Mercedes Benz G500 <br> • Mercedes Benz AMG GT 2016 <br> • Mercedes Benz AMG S2016 <br> • Mercedes Unimog U 4023 <br> • Mosler GT3 <br> • Perlini 105F Red Tiger <br> • Peugeot 208 T16 WRC <br> • Polaris RZR 1000 | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |



| | | | | |
|---|---|---|---|---|
| | | • Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | • Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_ 2016<br>• VW Beetle GRC<br>• VW Polo WRC | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, simple fact of whether anyone "associated with California" (whatever that means) downloaded such car models in the aggregate "most frequently in the U.S."  is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | | |
| **(73)** | 77 | **Request:** Admit that advertising space generating revenue associated with California was sold to all of the following companies: AirBerlin, Alienware, Centennial College, Chiquita, Lego, Kellogg, Simple Mobile, Hasbro, Infiniti, Warner Bros., Gillette, Mercedes Benz, Disney, Huawei, Mondelez International, Twentieth Century Fox, LG, Close Up, Ferrari, Turkcell, Xbox, Coca Cola, McDonalds, and/or Netflix. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **(74)** | 78 | **Request:** Admit that revenue associated with California is generated by partnerships with all of the following companies: DoubleClick, | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while | |



| | | | |
|---|---|---|---|
| | | Sizmek, AppsFlyer, Kochava, AdRiver, Adjust, Predicta, S4M, Vindico, adMotion, Atlas by Facebook, Barometric, Innovid, Reamp, Moat, and/or Placed. | racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the revenue "generated by partnerships" with the listed companies or any company not involved in the sale of the accused car models  is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(75)** | 79 | **Request:** Admit that the success of the Asphalt games, including the number of players and downloads, were used to market GLADS along with its targeting capabilities to advertisers in California. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and marketing of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(76)** | 80 | **Request:** Admit that the success of the Asphalt games, including the number of players and downloads, were used to market other games to players associated with California. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the marketing of other games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(77)** | 81 | **Request:** Admit that Defendant GL FRANCE signed license agreements with numerous car | **Plaintiff's Position:** The size of GLSE's business is directly tied to |



| | | manufacturers to use the brand names of over 200+ cars in the Asphalt Games, including with Tesla. | using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the GLSE's business relationships with licensors of car names used in *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(78)** | 82 | **Request:** Admit that Defendant GL FRANCE pays a substantial license fee to these brand holders, including to Tesla. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the GLSE's business relationships of car names used in *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(79)** | 83 | **Request:** Admit that the California MARKET is the largest economy for Defendant GL FRANCE in the USA. | **Plaintiff's Position:** The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(80)** | 84 | **Request:** Admit that the California MARKET adds the greatest economic value to Defendant GL FRANCE's business in the USA. | **Plaintiff's Position:** The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by |



| | | | sales activity. |
|---|---|---|---|
| | | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(81)** | 85 | **Request:** Admit that the California MARKET generates the largest revenue for Defendant GL FRANCE's business in the USA. | **Plaintiff's Position:** The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(82)** | 86 | **Request:** Admit that California's advertisers and players are targeted in Defendant GL FRANCE's distribution strategy to generate the largest revenue in the USA. | **Plaintiff's Position:** The sales/revenues received from players and advertisers in California determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the content, strategy, and sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| | | **Requests for Admission, Set 2** | |
| **List No.** | **Req. No.** | **Request** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |



| | | **Request:** Admit that players associated with California by residence, presence or IP address, downloaded the following digital car model (and/or associated accessories): | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
|---|---|---|---|
| **(83)** | 1 | Ariel Nomad. | |
| **(84)** | 2 | Aston Martin DB11. | |
| **(85)** | 3 | Aston Martin DB9. | |
| **(86)** | 4 | Aston Martin One 77. | |
| **(87)** | 5 | BMW Z4 e 89. | |
| **(88)** | 6 | Cadillac Cien Concept 2002. | |
| **(89)** | 7 | Chevrolet Camaro 2016. | |
| **(90)** | 8 | Chevrolet Camaro LT 2.0L Turbo 2016. | |
| **(91)** | 9 | Chevrolet Camaro z11 50th Edition. | |
| **(92)** | 10 | Chevrolet Camaro Z06. | |
| **(93)** | 11 | Chevrolet Silverado 2500 HD. | |
| **(94)** | 12 | Citroen DS E-Tense. | |
| **(95)** | 13 | Dodge Ram 1500 Rebel. | |
| **(96)** | 14 | Ferrari 488 GTB. | |
| **(97)** | 15 | Ferrari fxxk 2014. | |
| **(98)** | 16 | Ford Fiesta ST GRC. | |
| **(99)** | 17 | Ford Mustang 2015. | |
| **(100)** | 18 | Ford Ranger Dakar. | |
| **(101)** | 19 | Holden Coupe 60. | |
| **(102)** | 20 | Honda NSX 2017. | |
| **(103)** | 21 | Jaguar F Type SVR Coupe 2017. | |
| **(104)** | 22 | Jeep Wrangler Rubicon. | |
| **(105)** | 23 | Koenigsegg Regera 2016. | |
| **(106)** | 24 | Koenigsegg Agera R. | |
| **(107)** | 25 | Lamborghini Aventador lp750-4 Supervolece. | |
| **(108)** | 26 | Lamborghini Egotista. | |
| **(109)** | 27 | Lamborghini Centenaro. | |
| **(110)** | 28 | Land Rover. | |
| **(111)** | 29 | Lotus Evora 410 Sport. | |
| **(112)** | 30 | Man TGX D38. | |



| | | | |
|---|---|---|---|
| **(113)** | 31 | Mazzanti Evantra. | |
| **(114)** | 32 | McLaren 675LT 2015. | |
| **(115)** | 33 | Mercedes Benz G500. | |
| **(116)** | 34 | Mercedes Benz AMG GT 2016. | |
| **(117)** | 35 | Mercedes Benz AMG S2016. | |
| **(118)** | 36 | Mercedes Unimog U 4023. | |
| **(119)** | 37 | Mosler GT3. | |
| **(120)** | 38 | Perlini 105F Red Tiger. | |
| **(121)** | 39 | Peugeot 208 T16 WRC. | |
| **(122)** | 40 | Polaris RZR 1000. | |
| **(123)** | 41 | Polo WRC. | |
| **(124)** | 42 | Predator X-18 Intimidator. | |
| **(125)** | 43 | SMG Buggy Dakar. | |
| **(126)** | 44 | Trion Nemesis. | |
| **(127)** | 45 | Volkswagen XL_Sport_Concept_2016. | |
| **(128)** | 46 | VW Beetle GRC. | |
| **(129)** | 47 | VW Polo WRC. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) downloaded any such car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | |
| | | **Request:** Admit that players associated with California by residence, presence or IP address, generated the most downloads in the USA of the following digital car model (and/or associated accessories): | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the size of GLSE's business in California, as measured by sales activity. |
| **(130)** | 48 | Ariel Nomad. | |
| **(131)** | 49 | Aston Martin DB11. | |
| **(132)** | 50 | Aston Martin DB9. | |
| **(133)** | 51 | Aston Martin One 77. | |
| **(134)** | 52 | BMW Z4 e 89. | |
| **(135)** | 53 | Cadillac Cien Concept 2002. | |



| (136) | 54 | Chevrolet Camaro 2016. |
| (137) | 55 | Chevrolet Camaro LT 2.0L Turbo 2016. |
| (138) | 56 | Chevrolet Camaro z11 50th Edition. |
| (139) | 57 | Chevrolet Camaro Z06. |
| (140) | 58 | Chevrolet Silverado 2500 HD. |
| (141) | 59 | Citroen DS E-Tense. |
| (142) | 60 | Dodge Ram 1500 Rebel. |
| (143) | 61 | Ferrari 488 GTB. |
| (144) | 62 | Ferrari fxxk 2014. |
| (145) | 63 | Ford Fiesta ST GRC. |
| (146) | 44 | Ford Mustang 2015. |
| (147) | 65 | Ford Ranger Dakar. |
| (148) | 66 | Holden Coupe 60. |
| (149) | 67 | Honda NSX 2017. |
| (150) | 68 | Jaguar F Type SVR Coupe 2017. |
| (151) | 69 | Jeep Wrangler Rubicon. |
| (152) | 70 | Koenigsegg Regera 2016. |
| (153) | 71 | Koenigsegg Agera R. |
| (154) | 72 | Lamborghini Aventador lp750-4 Supervolece. |
| (155) | 73 | Lamborghini Egotista. |
| (156) | 74 | Lamborghini Centenaro. |
| (157) | 75 | Land Rover. |
| (158) | 76 | Lotus Evora 410 Sport. |
| (159) | 77 | Man TGX D38. |
| (160) | 78 | Mazzanti Evantra. |
| (161) | 79 | McLaren 675LT 2015. |
| (162) | 80 | Mercedes Benz G500. |
| (163) | 81 | Mercedes Benz AMG GT 2016. |
| (164) | 82 | Mercedes Benz AMG S2016. |
| (165) | 83 | Mercedes Unimog U 4023. |
| (166) | 84 | Mosler GT3. |
| (167) | 85 | Perlini 105F Red Tiger. |
| (168) | 86 | Peugeot 208 T16 WRC. |
| (169) | 87 | Polaris RZR 1000. |



| | | | |
|---|---|---|---|
| **(170)** | 88 | Polo WRC. | |
| **(171)** | 89 | Predator X-18 Intimidator. | |
| **(172)** | 90 | SMG Buggy Dakar. | |
| **(173)** | 91 | Trion Nemesis. | |
| **(174)** | 92 | Volkswagen XL_Sport_Concept_2016. | |
| **(175)** | 93 | VW Beetle GRC. | |
| **(176)** | 94 | VW Polo WRC. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the simple fact of whether anyone "associated with California" (whatever that means) "generated the most downloads in the USA" of such car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models that form the basis of Plaintiff's copyright violation claim. | |
| **(177)** | 95 | **Request:** Admit that players associated with California by residence, presence or IP address, generated the most downloads in the USA of the Asphalt games. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number persons who have downloaded an *Asphalt* game and whether players "associated with California" (whatever that means) have "generated the most downloads in the USA" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(178)** | 96 | **Request:** Admit that players associated with California by residence, presence or IP address, generated the most revenue in the USA through the purchase of digital assets sold in the Asphalt games. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |



| | | |
|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have purchased a digital asset in an *Asphalt* game, and whether players "associated with California" (whatever that means) "generated the most revenue in the USA" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(179)** | 97 | **Request:** Admit that players associated with California by residence, presence or IP address, generated the most revenue in the USA through the sale of in-game ads sold in the Asphalt games. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on the *Asphalt* games, and whether "players associated with California" (whatever that means) "generated the most revenue in the USA" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(180)** | 98 | **Request:** Admit that players associated with California by residence, presence or IP address, generated the most downloads in the USA of the following digital car models in the aggregate:<br><br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro 2016<br>• Chevrolet Camaro<br><br>• Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra<br>• McLaren 675LT 2015 | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the California partly determines the size of GLSE's business in California, as measured by sales activity. |



| | |
|---|---|
| LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense<br>• Dodge Ram 1500 Rebel<br>• Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC<br>• Ford Mustang 2015<br>• Ford Ranger Dakar<br>• Holden Coupe 60<br>• Honda NSX 2017<br>• Jaguar F Type SVR Coupe 2017<br>• Jeep Wrangler Rubicon<br>• Koenigsegg Regera 2016<br>• Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | • Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U 4023<br>• Mosler GT3<br>• Perlini 105F Red Tiger<br>• Peugeot 208 T16 WRC<br>• Polaris RZR 1000<br>• Polo WRC<br>• Predator X-18 Intimidator<br>• SMG Buggy Dakar<br>• Trion Nemesis<br>• Volkswagen XL_Sport_Concept_ 2016<br>• VW Beetle GRC<br>• VW Polo WRC | |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have downloaded a particular car model in an *Asphalt* game, and whether players "associated with California" (whatever that means) "generated the most downloads in the USA" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| | | |
|---|---|---|
| | **Request:** Admit that the following company targeted players associated with California by residence, presence or IP address: | **Plaintiff's Position:** The sales/revenues received from advertisers targeting California |



| (181) | 99 | AirBerlin or the legal entity that owns this brand. | players partly determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| (182) | 100 | Alienware or the legal entity that owns this brand. | |
| (183) | 101 | Centennial College or the legal entity that owns this brand. | |
| (184) | 102 | Chiquita or the legal entity that owns this brand. | |
| (185) | 103 | Lego or the legal entity that owns this brand. | |
| (186) | 104 | Kellogg or the legal entity that owns this brand. | |
| (187) | 105 | Simple Mobile or the legal entity that owns this brand | |
| (188) | 106 | Hasbro or the legal entity that owns this brand. | |
| (189) | 107 | Infiniti or the legal entity that owns this brand. | |
| (190) | 108 | Warner Bros. or the legal entity that owns this brand. | |
| (191) | 109 | Gillette or the legal entity that owns this brand. | |
| (192) | 110 | Mercedes Benz or the legal entity that owns this brand. | |
| (193) | 111 | Disney or the legal entity that owns this brand. | |
| (194) | 112 | Huawei or the legal entity that owns this brand. | |
| (195) | 113 | Mondelez International or the legal entity that owns this brand. | |
| (196) | 114 | Twentieth Century Fox or the legal entity that owns this brand. | |
| (197) | 115 | LG or the legal entity that owns this brand. | |
| (198) | 116 | Close Up or the legal entity that owns this brand. | |
| (199) | 117 | Ferrari or the legal entity that owns this brand. | |
| (200) | 118 | Turkcell or the legal entity that owns this brand. | |
| (201) | 119 | Xbox or the legal entity that owns this brand. | |
| (202) | 120 | Coca Cola or the legal entity that owns this brand. | |
| (203) | 121 | McDonalds or the legal entity that owns this brand. | |
| (204) | 122 | Netflix or the legal entity that owns this brand. | |



| | | | |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(205)** | **123** | **Request:** Admit that advertisers target mostly players associated with California by residence, presence or IP address. | **Plaintiff's Position:** The sales/revenues received from advertisers targeting California players partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(206)** | **124** | **Request:** Admit that advertisers registered to do business in California generated the most in-game ad revenue. | **Plaintiff's Position:** The sales/revenues received from advertisers targeting California players partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the location of companies that purchase third-party advertising and whether those companies "generated the most" in-game ad revenue is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(207)**<br><br>**(208)** | **125**<br><br>**126** | **Request:** Admit that the partnership with the following company generated revenue from California:<br><br>DoubleClick or the legal entity that owns this brand.<br><br>Sizmek or the legal entity that owns this brand. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by |



| (209) | 127 | AppsFlyer or the legal entity that owns this brand. | sales activity. |
|---|---|---|---|
| (210) | 128 | Kochava or the legal entity that owns this brand. | |
| (211) | 129 | AdRiver or the legal entity that owns this brand. | |
| (212) | 130 | Adjust or the legal entity that owns this brand. | |
| (213) | 131 | Predicta or the legal entity that owns this brand. | |
| (214) | 132 | S4M or the legal entity that owns this brand. | |
| (215) | 133 | Vindico or the legal entity that owns this brand. | |
| (216) | 134 | adMotion or the legal entity that owns this brand. | |
| (217) | 135 | Atlas by Facebook or the legal entity that owns this brand. | |
| (218) | 136 | Barometric or the legal entity that owns this brand. | |
| (219) | 137 | Innovid or the legal entity that owns this brand. | |
| (220) | 138 | Reamp or the legal entity that owns this brand. | |
| (221) | 139 | Moat or the legal entity that owns this brand. | |
| (222) | 140 | Placed or the legal entity that owns this brand. | |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's "partnerships" with third parties for the sale of third-party advertising and the revenue from those partnerships is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| Requests for Production, Set 1 | | | |
|---|---|---|---|
| List No. | Req. No. | Request | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |
| (223) | 10 | **Request:** Sufficient DOCUMENTS reflecting the total number of users who downloaded YOUR games for each fiscal year from 2013 to present. | **Plaintiff's Position:** The number of users/players measures the size of GLSE's business by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific | |



| | | jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have downloaded a GLSE game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(224)** | 11 | **Request:** Sufficient DOCUMENTS reflecting the total number of users who downloaded YOUR games by geography, region, country, city and/or state for each fiscal year from 2013 to present. | **Plaintiff's Position:** The number of users/players measures the size of GLSE's business by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of all persons who have downloaded a GLSE game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(225)** | 12 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT the total number of users attributed to California who downloaded YOUR games for each fiscal year from 2013 to present. | **Plaintiff's Position:** The number of users/players measures the size of GLSE's business by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons who have downloaded a GLSE game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(226)** | 15 | **Request:** Sufficient DOCUMENTS reflecting any and all names of any 3D digital car purchased by users from 2013 to present. | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players partly determines the size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the name of any 3D digital car that any person may have purchased is | |



|  |  | irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |  |
|---|---|---|---|
| **(227)** | 19 | **Request:** Sufficient DOCUMENTS reflecting the total number of advertisers with a physical business address in California or with whom YOU did business in/from California for each fiscal year from 2013 to present. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|  |  | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the location of companies that purchase third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |  |
| **(228)** | 20 | **Request:** Sufficient DOCUMENTS reflecting the revenue generated from advertisers with a physical business address in California or with whom YOU did business in/from California for each fiscal year from 2013 to present. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|  |  | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |  |
| **(229)** | 21 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions target specific users of YOUR games. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|  |  | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue |  |



| | | | |
|---|---|---|---|
| | | and profits, the strategy of third-party advertising associated with GLSE's games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(230)** | 22 | **Request:** Sufficient DOCUMENTS which explains and/or demonstrates how any of YOUR online advertising solutions collect or obtain demographic information, including user preference, interests and lifestyle, or any other information associated with any of the users of YOUR games. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising associated with GLSE's games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(231)** | 23 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to help advertisers target user audiences of YOUR games. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising associated with GLSE's games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(232)** | 24 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to help advertisers target user audiences of YOUR games more efficiently. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | |



| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising associated with GLSE's games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(233)** | 25 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to help advertisers boost their key performance indicators ("KPIs"). | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(234)** | 26 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to collect or obtain a user's specific physical location through either latitude, longitude, and/or IP address. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(235)** | 27 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to target a user based on interests and lifestyle. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | |



| | | | |
|---|---|---|---|
| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(236)** | 28 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how any of YOUR online advertising solutions is able to target a user based on user preferences. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(237)** | 30 | **Request:** Sufficient DOCUMENTS to explain and/or demonstrate how YOUR online advertising solutions is able to target users in California based on user preferences, and/or interests and lifestyle to reach users in/from California or using a California IP address. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(238)** | 32 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT any license agreements between YOU and any company with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue | |



| | | and profits, the GLSE's business relationships with licensors is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(239)** | 33 | **Request:** Sufficient DOCUMENTS reflecting the economic value derived from any and all license agreements between YOU and any company with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the GLSE's business relationships with licensors is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(240)** | 34 | **Request:** Sufficient DOCUMENTS reflecting any and all license agreements between YOU and any car manufacturer with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the GLSE's business relationships with car manufacturer licensors is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(241)** | 35 | **Request:** Sufficient DOCUMENTS reflecting the economic value derived from any and all license agreements between YOU and any car manufacturer with a California business address requiring YOU to pay a royalty and/or license fee of any kind. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the GLSE's business relationships with car manufacturer licensors is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (242) | 36 | **Request:** Sufficient DOCUMENTS reflecting any and all agreements between YOU and any company with a California business address for any commercial purpose. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California as part of its marketing and sales efforts, including advertisers, advertising agencies, human resource companies, car manufacturers, IP owners, conference organizers, among others. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with companies with a California business address is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (243) | 37 | **Request:** Sufficient DOCUMENTS reflecting the economic value derived from any and all agreements between YOU and any company with a California business address for any commercial purpose. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California as part of its marketing and sales efforts, including advertisers, advertising agencies, human resource companies, car manufacturers, IP owners, conference organizers, among others. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with companies with a California business address is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (244) | 38 | **Request:** Sufficient DOCUMENTS reflecting any monies owed pursuant to any and all agreements between YOU and any company with a California business address for any commercial purpose. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California as part of its marketing and sales efforts, including |



| | | | advertisers, advertising agencies, human resource companies, car manufacturers, IP owners, conference organizers, among others. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with companies with a California business address is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(245)** | 41 | **Request:** All COMMUNICATIONS between YOU and any company with a California business address and hired or retained to distribute, market, and/or sell YOUR games. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of GLSE's engagement with companies in California to distribute, market, and/or sell its mobile games. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(246)** | 44 | **Request:** Sufficient DOCUMENTS reflecting the number and purpose of business trips taken by any of YOUR employees to California since 2013. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent its employees travel to California to engage with business partners and/or attend industry conferences to market and sell its mobile games. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, information concerning business trips taken by GLSE employees is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(247)** | 45 | **Request:** Sufficient DOCUMENTS reflecting the number and purpose of business trips taken by | **Plaintiff's Position:** The size of GLSE's business in California is |



| | | any of YOUR officers to California since 2013. | reflected by the extent its officers travel to California to engage with business partners and/or attend industry conferences to market and sell its mobile games. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, information concerning business trips taken by GLSE employees is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(248)** | 46 | **Request:** Sufficient DOCUMENTS reflecting the number and purpose of business trips taken by any of YOUR board of directors to California since 2013. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent its directors travel to California to engage with business partners and/or attend industry conferences to market and sell its mobile games. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, information concerning business trips taken by GLSE employees is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(249)** | 47 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT the Gameloft Advertising Solutions' network within California. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the Gameloft Advertising Solutions network and its operations are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (250) | 48 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT the Gameloft Advertising Solutions' activities within California. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the Gameloft Advertising Solutions network and its operations are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (251) | 49 | **Request:** Sufficient DOCUMENTS reflecting YOUR contractual arrangement with Smart Recruiter in San Francisco. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in California. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's employee recruiting activities are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (252) | 50 | **Request:** All COMMUNICATIONS between YOU and Smart Recruiter in San Francisco regarding candidates from California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in California. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's employee recruiting activities are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (253) | 51 | **Request:** Sufficient DOCUMENTS reflecting the number of resumes received from candidates associated with California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits |



| | | | and hires personnel in California. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's employee recruiting activities are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(254)** | 52 | **Request:** Sufficient DOCUMENTS reflecting the number of candidates associated with California that YOU hired. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the number of staff it has and the extent it recruits and hires personnel in California. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's employee recruiting activities are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(255)** | 53 | **Request:** Sufficient DOCUMENTS reflecting any legal document RELATING to the Website or any game whereby California and/or the exercise of jurisdiction in California was or is the venue to resolve disputes of any kind. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms such as dispute resolution on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites or in a GLSE game for the resolution of disputes are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(256)** | 54 | **Request:** Sufficient DOCUMENTS to indicate the commercial reasons why California was chosen as the venue to resolve disputes RELATING to the Website or any game. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms on the Website such as dispute resolution tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its | |



| | | language sites or in a GLSE game for the resolution of disputes are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(257)** | 55 | **Request:** Sufficient DOCUMENTS to indicate which other jurisdictions were considered to resolve disputes, but not selected for the Website or any game. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms on the Website such as dispute resolution tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites or in a GLSE game for the resolution of disputes are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(258)** | 56 | **Request:** Sufficient DOCUMENTS reflecting any legal document whereby California law of any kind (*e.g.*, commercial, privacy, contract, employment, regulatory) is referenced as controlling or applicable for any purpose RELATING to the Website or any game. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms on the Website such as governing law tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites or in a GLSE game concerning controlling law or any other purpose are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(259)** | 57 | **Request:** Sufficient documents to indicate the commercial reasons why California law was referenced as controlling or applicable law RELATING to the Website or any game. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms on the Website such as governing law tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites or in a GLSE game concerning controlling law or any other purpose are irrelevant to the identity of the Gameloft entity/entities that operate(s) the | |



| | | | |
|---|---|---|---|
| | | website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(260)** | 58 | **Request:** Sufficient documents to indicate all other legal jurisdictions considered to be applicable and/or controlling but not ultimately selected for the Website or any game. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms on the Website such as governing jurisdiction tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated, or not stated, on www.gameloft.com or any of its language sites or in a GLSE game concerning applicable and/or controlling law are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(261)** | 64 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR presence (attendance, sponsorship, or speakership) at any gaming conference in California since 2013. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE attends, sponsors or speaks at industry conferences in California to market and sell its mobile games. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, information concerning business trips, including to gaming conferences, taken by GLSE employees is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (262) | 65 | **Request:** All COMMUNICATIONS between YOU and Gameloft, Inc. regarding sales, marketing, and/or business development since 2013. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE spends on revenue generating activities relating to sales, marketing and distributing of its games in California. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, communications between GLSE and Gameloft, Inc. regarding sales, marketing, and/or business development are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (263) | 73 | **Request:** All DOCUMENTS in any language which REFER, RELATE TO, or REFLECT any version of the Terms of Use of the Website wherein California is referenced in any way. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating terms of use on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (264) | 74 | **Request:** All DOCUMENTS in any language which REFER, RELATE TO, or REFLECT any version of the Privacy Policy for the Website wherein California is referenced in any way since 2013. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating the privacy policy used on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (265) | 81 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR decision to work with or selection of advertisers based in | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars |



| | | California. | partly determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(266)** | 82 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT YOUR decision to work with or selection of advertising agencies based in California. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |

| | | **Requests for Production, Set 2** | |
|---|---|---|---|
| **List No.** | **Req. No.** | **Request** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(267)** | 1 | **Request:** Sufficient DOCUMENTS reflecting the launch of any game in California either offline or online due to the size of the market in California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE took part in the launch of any game in California. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the "launch" of a GLSE game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(268)** | 2 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT how players are | **Plaintiff's Position:** The number of players measures the size of |



| | | associated with California for purposes of geo-targeting due to the size of California's population. | GLSE's business by mobile game player market share. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, whether and how a person player of a GLSE game can be identified as "associated with California" (whatever that means)  is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. ||
| **(269)** | 3 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT any advertiser registered to do business in California with whom YOU do business. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising and the location of advertisers is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. ||
| **(270)** | 4 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT any Website functionality that collects information identifying a visitor as a resident or present in California. | **Plaintiff's Position:** The entity that dictates the functionalities of the Website and/or collects information gathered by the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** Information concerning the demographics of visitors to www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. ||
| **(271)** | 5 | **Request:** Sufficient DOCUMENTS reflecting how languages were selected for use on the Website. | **Plaintiff's Position:** The entity that selects which languages to be used on the Website tends to identify who operates the |



| | | Website. | |
|---|---|---|---|
| | | **GLSE's Position:** Information concerning the selection of language(s) used on www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(272)** | 6 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT how languages used on the Website leverage California's diverse population. | **Plaintiff's Position:** The entity that selects which languages to be used on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** Information concerning the selection of language(s) used on www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(273)** | 7 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT languages used on the Website where California was part of the decision for language choice. | **Plaintiff's Position:** The entity that selects which languages to be used on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** Information concerning the selection of language(s) used on www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(274)** | 8 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT online and offline advertisements that track effectiveness via metrics demonstrating advertising impact associated with California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE spent and tracked ads to sell its games and the effectiveness of those ads. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and sales of third-party advertising and whether advertising impact can be tracked, is irrelevant to the size of revenue and profits of | |



| | | GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(275)** | 9 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT online and offline advertisements that demonstrate modifications in response to demonstrated advertising impact associated with California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE modified ads to make them more effective. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and sales of third-party advertising and whether advertising impact can be tracked, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(276)** | 10 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT any revenue generated from services associated with California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of any and all revenues generated from California. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(277)** | 11 | **Request:** All DOCUMENTS which REFER, RELATE TO, or REFLECT the Google Adwords and the relevant changes that are made to increase views and/or sales of YOUR games to PERSONS associated with California | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE spent and tracked ads to sell its games and the effectiveness of those ads. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's advertising strategies to increase views and/or sales of GLSE's games are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (278) | 12 | **Request:** Sufficient DOCUMENTS reflecting all social media ads targeting any PERSONS associated with California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent GLSE spent and tracked ads to sell its games and the effectiveness of those ads. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's social media advertising strategies are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| | | **Request:** Sufficient DOCUMENTS reflecting the contractual terms between YOU and: | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| (279) | 13 | Air Berlin or the company that owns this brand. | |
| (280) | 15 | Alienware or the company that owns this brand. | |
| (281) | 17 | Centennial College or the company that owns this brand. | |
| (282) | 19 | Chiquita or the company that owns this brand. | |
| (283) | 21 | Close Up or the company that owns this brand. | |
| (284) | 23 | Coca Cola or the company that owns this brand. | |
| (285) | 25 | Disney or the company that owns this brand. | |
| (286) | 27 | Ferrari or the company that owns this brand. | |
| (287) | 29 | Gillette or the company that owns this brand. | |
| (288) | 31 | Hasbro or the company that owns this brand. | |
| (289) | 33 | Huawei or the company that owns this brand. | |
| (290) | 35 | Infiniti or the company that owns this brand. | |
| (291) | 37 | Kellogg or the company that owns this brand. | |
| (292) | 39 | Lego or the company that owns this brand. | |
| (293) | 41 | LG or the company that owns this brand. | |
| (294) | 43 | McDonald's or the company that owns this brand. | |
| (295) | 45 | Mercedes-Benz or the company that owns this brand. | |
| (296) | 47 | Mondelez International or the company that | |



| | | owns this brand. | |
|---|---|---|---|
| **(297)** | 49 | Netflix or the company that owns this brand. | |
| **(298)** | 51 | Simple Mobile or the company that owns this brand. | |
| **(299)** | 53 | Turkcell or the company that owns this brand. | |
| **(300)** | 55 | Twentieth Century Fox or the company that owns this brand. | |
| **(301)** | 57 | Warner Bros. or the company that owns this brand. | |
| **(302)** | 59 | XBox or the company that owns this brand. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising and the terms of those contracts is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| | | **Request:** Sufficient DOCUMENTS reflecting the amount of any and all revenue received from: | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(303)** | 14 | Air Berlin or the company that owns this brand. | |
| **(304)** | 16 | Alienware or the company that owns this brand. | |
| **(305)** | 18 | Centennial College or the company that owns this brand. | |
| **(306)** | 20 | Chiquita or the company that owns this brand. | |
| **(307)** | 22 | Close Up or the company that owns this brand. | |
| **(308)** | 24 | Coca Cola or the company that owns this brand. | |
| **(309)** | 26 | Disney or the company that owns this brand. | |
| **(310)** | 28 | Ferrari or the company that owns this brand. | |
| **(311)** | 30 | Gillette or the company that owns this brand. | |
| **(312)** | 32 | Hasbro or the company that owns this brand. | |
| **(313)** | 34 | Huawei or the company that owns this brand. | |
| **(314)** | 36 | Infiniti or the company that owns this brand. | |
| **(315)** | 38 | Kellogg or the company that owns this brand. | |
| **(316)** | 40 | Lego or the company that owns this brand. | |
| **(317)** | 42 | LG or the company that owns this brand. | |



| | | | |
|---|---|---|---|
| **(318)** | 44 | McDonald's or the company that owns this brand. | |
| **(319)** | 46 | Mercedes-Benz or the company that owns this brand. | |
| **(320)** | 48 | Mondelez International or the company that owns this brand. | |
| **(321)** | 50 | Netflix or the company that owns this brand. | |
| **(322)** | 52 | Simple Mobile or the company that owns this brand. | |
| **(323)** | 54 | Turkcell or the company that owns this brand. | |
| **(324)** | 56 | Twentieth Century Fox or the company that owns this brand. | |
| **(325)** | 58 | Warner Bros. or the company that owns this brand. | |
| **(326)** | 60 | XBox or the company that owns this brand. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| | | **Request:** Sufficient DOCUMENTS reflecting the contractual terms of the partnership: | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| **(327)** | 61 | with Adjust. | |
| **(328)** | 62 | with adMotion. | |
| **(329)** | 63 | with AdRiver. | |
| **(330)** | 64 | with AppsFlyer. | |
| **(331)** | 65 | with Atlas by Facebook. | |
| **(332)** | 66 | with Barometric. | |
| **(333)** | 67 | with DoubleClick. | |
| **(334)** | 68 | with Innovid. | |
| **(335)** | 69 | with Kochava. | |
| **(336)** | 70 | with Moat. | |
| **(337)** | 71 | with Placed. | |
| **(338)** | 72 | with Predicta. | |



| (339) | 73 | with Reamp. | |
| (340) | 74 | with Sizmek. | |
| (341) | 75 | with S4M. | |
| (342) | 76 | with Vindico | |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the = sales of third-party advertising and the terms of those contracts is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| (343) | 77 | **Request:** Sufficient DOCUMENTS reflecting the number of players associated with California by presence, address, or IP address for each fiscal year since 2013. | **Plaintiff's Position:** The number of players measures the size of GLSE's business by mobile game player market share. |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of "players" of a GLSE game who are "associated with California" (whatever that means) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| (344) | 78 | **Request:** Sufficient DOCUMENTS reflecting the number of downloads by players associated with California by presence, address, or IP address for each fiscal year since 2013. | **Plaintiff's Position:** The number of downloads is a proxy for the number of players, which measures the size of GLSE's business by mobile game player market share. |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number downloads of any GLSE game by "players associated with California" (whatever that means)  is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| (345) | | **Request:** Sufficient DOCUMENTS reflecting any and all contracts between YOU and Gameloft, Inc. for each fiscal year since 2013. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of GLSE's engagement with Gameloft, Inc. |



| | | | to distribute, market, and/or sell its mobile games. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, all contracts (without specification) between GLSE and Gameloft, Inc. irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (346) | 80 | **Request:** Sufficient DOCUMENTS reflecting any and all contracts between YOU and any licensor of trademarks registered to do business in California for each fiscal year since 2013. | **Plaintiff's Position:** The size of GLSE's business is directly tied to using well-known IP owned by licensors to attract players and drive sales of ads and digital cars. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, GLSE's business relationships with licensors is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |

| Interrogatories, Set 1 | | | |
|---|---|---|---|
| List No. | Req. No. | Request | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |
| (347) | 1 | **Request:** How much revenue was generated from all California sources for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of any and all revenues generated from California sources. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (348) | 2 | **Request:** How much revenue was generated from all USA sources for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The relative size of GLSE's business in California is reflected by the extent of any and all revenues generated from the USA. |



| | | | |
|---|---|---|---|
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(349)** | 5 | **Request:** How much revenue was generated from in-game advertisements while playing Asphalt games from all California sources for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on the *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(350)** | 6 | **Request:** How much revenue was generated from in-game advertisements while playing Asphalt games from all USA sources for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on the Asphalt games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(351)** | 7 | **Request:** How much revenue was generated from each of these advertisers: AirBerlin, Alienware, Centennial College, Chiquita, Lego, Kellogg, Simple Mobile, Hasbro, Infiniti, Warner Bros., Gillette, Mercedes Benz, Disney, Huawei, Mondelez International Twentieth Century Fox, | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by |



| | | | |
|---|---|---|---|
| | | LG, Close Up, Ferrari, Turkcell, Xbox, Coca Cola, McDonalds, and Netflix for each of the fiscal years 2013 to the present. | sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(352)** | 8 | **Request:** How much revenue was shared with or by each of the following companies: DoubleClick, Sizmek, AppsFlyer, Kochava, AdRiver, Adjust, Predicta, S4M, Vindico, adMotion, Atlas by Facebook, Barometric, Innovid, Reamp, Moat, and Placed for each of the fiscal years 2013 to the present. | **Plaintiff's Position:** These companies assist in generating sales/revenues received from ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(353)** | 9 | **Request:** Identify (name, contact person, and address) any and all advertisers located in California who have placed ads within Asphalt games for each of the fiscal years 2013 to the present. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on the *Asphalt* games, and the identity of those advertisers, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(354)** | 10 | **Request:** Identify (name, contact person, and address) any and all advertisers located in USA | **Plaintiff's Position:** The sales/revenues received from |



| | | who have placed any ads in any of the Asphalt games for each of the fiscal years 2013 to the present. | advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on *Asphalt* games, and the identity of those advertisers, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(355)** | 11 | **Request:** How much advertising revenue was generated for each advertiser located in California who have placed ads in any of the Asphalt games for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(356)** | 12 | **Request:** How much advertising revenue was generated for each advertiser located in USA who have placed ads in any of the Asphalt games for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising that appear on *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(357)** | 13 | **Request:** How many players are associated | **Plaintiff's Position:** The number |



| | | with California by residence, presence, or IP address for each of the fiscal years 2013 to the present? | of players, which affects the sale of digital cars and ads, measures the relative size of GLSE's business in California by mobile game player market share. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of "players" that are "associated with California" (whatever that means) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(358)** | 14 | **Request:** How many players are associated with the USA by residence, presence, or IP address for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The number of players, which affects the sale of digital cars and ads, measures the relative size of GLSE's business in California by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of "players" of a GLSE game and are "associated with the USA" (whatever that means) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(359)** | 15 | **Request:** How many players associated with California by residence, presence, or IP address have downloaded any digital assets from any Asphalt games for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The number of players, which affects the sale of digital cars and ads, measures the size of GLSE's business in California by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons "associated with California" (whatever that means) who have downloaded a digital asset from an *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(360)** | 16 | **Request:** How many players associated with USA by residence, presence, or IP address have | **Plaintiff's Position:** The number of players, which affects the sale |



| | | | |
|---|---|---|---|
| | | downloaded any digital assets from any *Asphalt* games for each of the fiscal years 2013 to the present? | of digital cars and ads, measures the relative size of GLSE's business in California by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of persons "associated with USA" (whatever that means) who have downloaded a digital asset from an *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(361)** | 17 | **Request:** Identify (name of campaign, name of advertiser, date of campaign) any or all advertising campaigns for any advertiser in California for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from campaigns for advertisers displaying ads while racing with infringing digital cars partly determines the relative size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(362)** | 18 | **Request:** Identify (name of campaign, name of advertiser, date of campaign) any or all advertising campaigns for any advertiser targeting players associated with California by residence, presence, or IP address for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from campaigns for advertisers displaying ads while racing with infringing digital cars partly determines the relative size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (363) | 19 | **Request:** Identify the aggregate world revenue (provide separate amount for downloading digital assets and amount from in-game ads) generated by the following digital car models for each of the fiscal years 2013 to the present? | **Plaintiff's Position:** The sales/revenues received from ads paid by advertisers or digital cars paid by players globally determines the relative size of GLSE's business in California, as measured by sales activity. |
|---|---|---|---|

- Ariel Nomad
- Aston Martin DB11
- Aston Martin DB9
- Aston Martin One 77
- BMW Z4 e 89
- Cadillac Cien Concept 2002
- Chevrolet Camaro 2016
- Chevrolet Camaro LT 2.0L Turbo 2016
- Chevrolet Camaro z11 50th Edition
- Chevrolet Camaro Z06
- Chevrolet Silverado 2500 HD
- Citroen DS E-Tense
- Dodge Ram 1500 Rebel
- Ferrari 488 GTB
- Ferrari fxxk 2014
- Ford Fiesta ST GRC
- Ford Mustang 2015
- Ford Ranger Dakar
- Holden Coupe 60
- Honda NSX 2017
- Jaguar F Type SVR Coupe 2017
- Jeep Wrangler Rubicon
- Koenigsegg Regera 2016

- Lamborghini Egotista
- Lamborghini Centenaro
- Land Rover
- Lotus Evora 410 Sport
- Man TGX D38
- Mazzanti Evantra
- McLaren 675LT 2015
- Mercedes Benz G500
- Mercedes Benz AMG GT 2016
- Mercedes Benz AMG S2016
- Mercedes Unimog U 4023
- Mosler GT3
- Perlini 105F Red Tiger
- Peugeot 208 T16 WRC
- Polaris RZR 1000
- Polo WRC
- Predator X-18 Intimidator
- SMG Buggy Dakar
- Trion Nemesis
- Volkswagen XL_Sport_Concept_ 2016
- VW Beetle GRC



| | | | | |
|---|---|---|---|---|
| | | • Koenigsegg Agera R<br>• Lamborghini Aventador lp750-4 Supervolece | • VW Polo WRC | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the aggregate world revenue generated from such car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **(364)** | 20 | **Request:** Identify the world revenue generated (provide separate amount for downloading digital assets and amount from in-game ads) by each of the following digital car models for each of the fiscal years 2013 to the present?<br><br>• Ariel Nomad<br>• Aston Martin DB11<br>• Aston Martin DB9<br>• Aston Martin One 77<br>• BMW Z4 e 89<br>• Cadillac Cien Concept 2002<br>• Chevrolet Camaro 2016<br>• Chevrolet Camaro LT 2.0L Turbo 2016<br>• Chevrolet Camaro z11 50th Edition<br>• Chevrolet Camaro Z06<br>• Chevrolet Silverado 2500 HD<br>• Citroen DS E-Tense<br>• Dodge Ram 1500 Rebel<br>• Ferrari 488 GTB<br>• Ferrari fxxk 2014<br>• Ford Fiesta ST GRC | • Lamborghini Egotista<br>• Lamborghini Centenaro<br>• Land Rover<br>• Lotus Evora 410 Sport<br>• Man TGX D38<br>• Mazzanti Evantra<br>• McLaren 675LT 2015<br>• Mercedes Benz G500<br>• Mercedes Benz AMG GT 2016<br>• Mercedes Benz AMG S2016<br>• Mercedes Unimog U 4023<br>• Mosler GT3<br>• Perlini 105F Red Tiger<br>• Peugeot 208 T16 WRC | **Plaintiff's Position:** The sales/revenues received from ads paid by advertisers or digital cars paid by players globally determines the relative size of GLSE's business in California, as measured by sales activity. |



| | | | | |
|---|---|---|---|---|
| | | <ul><li>Ford Mustang 2015</li><li>Ford Ranger Dakar</li><li>Holden Coupe 60</li><li>Honda NSX 2017</li><li>Jaguar F Type SVR Coupe 2017</li><li>Jeep Wrangler Rubicon</li><li>Koenigsegg Regera 2016</li><li>Koenigsegg Agera R</li><li>Lamborghini Aventador lp750-4 Supervolece</li></ul> | <ul><li>Polaris RZR 1000</li><li>Polo WRC</li><li>Predator X-18 Intimidator</li><li>SMG Buggy Dakar</li><li>Trion Nemesis</li><li>Volkswagen XL_Sport_Concept_ 2016</li><li>VW Beetle GRC</li><li>VW Polo WRC</li></ul> | |

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the aggregate world revenue generated from such car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| (365) | 21 | **Request:** How much of the revenue identified in interrogatory 19 was generated by players associated with California by presence, residence, or IP address? | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players partly determines the relative size of GLSE's business in California, as measured by sales activity. |
|---|---|---|---|

**GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the aggregate world revenue generated from such individual car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim.

| (366) | 22 | **Request:** How much of the revenue identified in interrogatory 20 was generated by players associated with California by presence, residence, or IP address? | **Plaintiff's Position:** The sales/revenues received from digital assets such as digital cars paid by players in the USA partly determines the relative size of GLSE's business in California, as |
|---|---|---|---|



| | | measured by sales activity. |
|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the aggregate world revenue generated from such individual car models is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |

| 30(b)(6) Topics | | | |
|---|---|---|---|
| **List No.** | **Req. No.** | **Request** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(367)** | 4 | **Topic:** Communications between GLSE and Gameloft, Inc. with respect to any revenue generating activities relating to California, including the Gameloft Advertising Solution, in-game ads, and/or the sale of digital assets incorporated into the Asphalt games. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of any and all revenues generated from California sources, particularly revenues received from ads paid by advertisers or digital cars paid by player. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, communications between GLSE and Gameloft, Inc. concerning the sales of third-party advertising and the sale of digital assets, is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(368)** | 5 | **Topic:** Communications between GLSE and Gameloft, Inc. with respect to the publication of content on www.gameloft.com ("Website") referencing California in any way. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating the content to be published on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** Communications between GLSE and Gameloft, Inc. concerning the publication of specific content on the www.gameloft.com website and its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(369)** | 6 | **Topic:** Communications between GLSE and | **Plaintiff's Position:** The entity that |



| | | Gameloft, Inc. with respect to functionalities enabled on the Website to collect information from visitors to the Website. | dictates the functionalities of the Website and/or collects information gathered by the Website tends to identify who operates the Website. |
|---|---|---|---|
| | | **GLSE's Position:** Communications between GLSE and Gameloft, Inc. concerning the functionality of and demographics of visitors to www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(370)** | 7 | **Topic:** Board minutes referencing revenues generated by any California advertiser, any California licensor, any advertiser targeting players associated with California, or by the purchase of digital assets by Asphalt game players associated with California by way of residence, presence, or IP address or any other means used to geo-tag any player. | **Plaintiff's Position:** The sales/revenues received from ads paid by advertisers or digital cars paid by players in the USA partly determines the relative size of GLSE's business in California, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the content, strategy, and sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(371)** | 8 | **Topic:** The collection of any information about visitors to the Website or players to determine their demographics, preferences, interests and lifestyle, and/or location. | **Plaintiff's Position:** The entity that collects information gathered by the Website for commercial use tends to identify who operates the Website. |
| | | **GLSE's Position:** Information concerning the demographics of visitors to www.gameloft.com or any of its language sites or a GLSE game is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(372)** | 9 | **Topic:** The collection of any information through the Internet, and/or social media such as Facebook or Twitter about visitors to the | **Plaintiff's Position:** The entity that collects information about visitors to the Website for |



| | | Website or players that associates them with California. | commercial use tends to identify who operates the Website. |
|---|---|---|---|
| | | **GLSE's Position:** Information concerning the demographics of "players" or visitors to www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(373)** | 11 | **Topic:** Revenues generated from the sale of in game advertising space to advertisers targeting any player associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(374)** | 12 | **Topic:** Revenues generated from the sale of in game advertising space to advertisers with offices or doing business in California. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(375)** | 13 | **Topic:** Revenues generated by Gameloft Advertising Solutions ("GLADS") relating to players associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of |



| | | | GLSE's business, as measured by sales activity. |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy and revenues of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(376)** | 14 | **Topic:** Revenues generated by GLADS' ability to target specific audiences based on demographics, interests and lifestyle, user preferences, and/or geo location as they relate to players associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the strategy of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(377)** | 15 | **Topic:** Revenues generated or paid by any of the following companies as they relate to California: Lego, Kelloggs, Simple Mobile, Airberlin, Hasbro, Infiniti, Warner Bros., Gillette, Mercedes Benz, Alienware, Disney, Huawei, Mondelez International, 20th Century Fox, LG, Closeup, Ferrari, Centennial College, Turkcell, Xbox, Coca Cola, McDonalds, Netflix, Chiquita, DoubleClick, Sizmek, Appsflyer, Kochava, Adriver, adjust, Predicta, S4M, vindico, adMotion, atlas, Barometric, Innovid, reamp, Moat, and/or Placed. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (378) | 16 | **Topic:** Marketing and distribution expenses either budgeted or incurred related to any marketing or sales activity related to California. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the extent of GLSE spends on revenue generating activities relating to sales, marketing and distributing of its games in California. |
|---|---|---|---|
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (379) | 17 | **Topic:** The names and responsibilities of any personnel who has or is being tasked with developing more business or generating more revenue from California advertisers or players associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | **Plaintiff's Position:** The size of GLSE's business in California is reflected by the number of staff tasked with increasing business from California sources. |
| | | **GLSE's Position:** The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (380) | 18 | **Topic:** Any plans to develop or increase business from any California advertiser, any advertiser that targets California, or player associated with California by way of residence, presence, or IP address or any other means used to geo-tag a player. | **Plaintiff's Position:** The sales/revenues received from advertisers/ads displayed while racing with infringing digital cars partly determines the size of GLSE's business, as measured by sales activity. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the sales of third-party advertising is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |



| (381) | 20 | **Topic:** The functionalities on the Website, including how they are identified, developed, and/or enabled on the Website to target specific audiences, including Website visitors associated with California by way of residence, presence, or IP address or any other means used to geo-tag a visitor. | **Plaintiff's Position:** The entity that dictates the functionalities of the Website and/or collects information gathered by the Website tends to identify who operates the Website. |
|---|---|---|---|
| | | **GLSE's Position:** Information concerning the functionality www.gameloft.com or any of its language sites, including the collection of visitor demographics, is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (382) | 21 | **Topic:** The selection of California as the venue to resolve disputes or as the controlling law for any legal matter relating to the Website, games or promotional activity. | **Plaintiff's Position:** The author, publisher, and/or owner of the content dictating legal terms on the Website tends to identify who operates the Website. |
| | | **GLSE's Position:** The legal terms stated on www.gameloft.com or any of its language sites are irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (383) | 22 | **Topic:** The number of players associated with California as it relates to revenue generating activities. | **Plaintiff's Position:** To the extent users generate revenue, such as the purchase of digital cars or the display of ads, this number measures the size of GLSE's business in California by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number of "players" who are "associated with California" (whatever that means) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (384) | 23 | **Topic:** The number of users associated with California as it relates to revenue generating activities. | **Plaintiff's Position:** To the extent users generate revenue, such as the purchase of digital cars or the |



| | | | |
|---|---|---|---|
| | | | display of ads, this number measures the size of GLSE's business in California by mobile game player market share. |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, the number a"users" who are "associated with California ("whatever that means") is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(385)** | 24 | **Topic:** The number of visitors to the website associated with California as it relates to revenue generating activities. | **Plaintiff's Position:** To the extent visitors generate revenue, such as the purchase of digital cars or the display of ads, this number measures the size of GLSE's business in California by mobile game player market share. |
| | | **GLSE's Position:** Information concerning the number of visitors to www.gameloft.com or any of its language sites is irrelevant to the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California and irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **Subpoena to App Nexus** | | | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(386)** | 1 | **Category:** ALL DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, concerning documents relating to third0party advertising involving Gameloft Advertising Solutions are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(387)** | 2 | **Category:** ALL DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | |



| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(388)** | 3 | **Category:** ALL DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, for "ALL DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined)  is  irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(389)** | 4 | **Category:** ALL DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, for "all DOCUMENTS") concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(390)** | 5 | **Category:** Sufficient DOCUMENTS to describe how AppNexus serves as a supply side platform (SSP) for Gameloft Advertising Solution's inventory. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, concerning how App Nexus provides services to Gameloft Advertising Solutions is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(391)** | 6 | **Category:** All DOCUMENTS discussing any benefits to GAMELOFT by using AppNexus for | **Plaintiff's Position:** n/a |



| | | | |
|---|---|---|---|
| | | mobile inventory. | |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, concerning how multiple "GAMELOFT" entities (as defined) benefit from services provided by Nexus is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(392)** | 7 | **Category:** Sufficient DOCUMENTS to describe how AppNexus helps publishers, including GAMELOFT, to monetize their mobile inventory. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, concerning how App Nexus's services help mobile application publishers "monetize" their mobile inventory is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(393)** | 8 | **Category:** ALL DOCUMENTS by YOU RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, concerning "all DOCUMENTS by" App Nexus (whatever that means) relating to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(394)** | 9 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to App Nexus, an advertising software company, concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of | |



| | | Plaintiff's copyright violation claim. | |
|---|---|---|---|
| | | **Subpoena to Basecamp** | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(395)** | 1 | **Category:** All DOCUMENTS or COMMUNICATIONS RELATING to any projects or teams created by or for GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning "projects or teams created by or for" multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(396)** | 2 | **Category:** All DOCUMENTS or COMMUNICATIONS RELATING to any tasks associated with any team or project created by or for GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning "tasks associated with any team or project created by or for" multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(397)** | 3 | **Category:** All DOCUMENTS or COMMUNICATIONS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(398)** | 4 | **Category:** All DOCUMENTS or COMMUNICATIONS containing the name | **Plaintiff's Position:** n/a |



| | | Alexandru Adam as the author or recipient of that document. | |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning all documents or communications containing the name "Alexandru Adam" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(399)** | 5 | **Category:** All DOCUMENTS or COMMUNICATIONS containing the name Do Quoc Hung, Quoc Hung Do, and/or Hung Do as the author or recipient of that document. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning alldocuments or communications containing the name of "Do Quoc Hung, Quoc Hung Do, and/or Hung Do" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(400)** | 6 | **Category:** All DOCUMENTS or COMMUNICATIONS containing the name Donn Garton as the author or recipient of that document. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerningall documents or communications containing the name of "Donn Garten" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(401)** | 7 | **Category:** All DOCUMENTS or COMMUNICATIONS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, | |



| | | concerning "all DOCUMENTS or COMMUNICATIONS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(402)** | 8 | **Category:** All DOCUMENTS or COMMUNICATIONS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning "all DOCUMENTS or COMMUNICATIONS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim | |
| **(403)** | 9 | **Category:** All DOCUMENTS or COMMUNICATIONS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning "all DOCUMENTS or COMMUNICATIONS" relating to all commercial arrangements with multiple "GAMELOFT "entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim | |
| **(404)** | 10 | **Category:** All DOCUMENTS or COMMUNICATIONS by YOU REFERRING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Basecamp, a project management software company, concerning "all DOCUMENTS by" Basecamp (whatever that means) referring to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **Subpoena to Coca Cola** | | | |
| **List** | **Req.** | **Category** | **Reason Why the Request Is Or Is** |



| No. | No. | | Not Encompassed by Judge Chesney's Order |
|-----|-----|---|---|
| (405) | 1 | **Category:** All DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, concerning documents relating to third-party advertising involving Gameloft Advertising Solutions are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (406) | 2 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (407) | 3 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| (408) | 4 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California | |



| | | attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(409)** | 5 | **Category:** All DOCUMENTS RELATING TO any ad campaign by GAMELOFT for YOU. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any ad campaign" by multiple "GAMELOFT" (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(410)** | 6 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(411)** | 7 | **Category:** All DOCUMENTS by YOU RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Coca Cola, a company that purportedly advertises on GLSE's games, concerning "all DOCUMENTS" "by YOU" (whatever that means) relating to multiple "GAMELOFT" entities (as defined)  is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **Subpoena to Entertainment Software Association** | | | |
| List No. | Req. No. | Category | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |
| **(412)** | 1 | **Category:** All DOCUMENTS RELATING TO GAMELOFT in any role, including as speakers, in | **Plaintiff's Position:** n/a |



| | | any capacity (e.g. lecture, tutor, expert, etc.), sponsors, partners, and/or exhibitors, at each of the annual E3 conferences (annual conferences held in Southern California). | |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any role multiple "GAMELOFT" entities (as defined) have taken at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(413)** | 2 | **Category:** All DOCUMENTS RELATING TO any media coverage, including interviews, of GAMELOFT at each of the annual E3 conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any media coverage of multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(414)** | 3 | **Category:** All DOCUMENTS RELATING TO any attendees (e.g., programmers, artists, producers, game designers, audio professionals, business decision-makers or others involved in the development of interactive games) from GAMELOFT at each of the annual E3 conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning attendance by multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (415) | 4 | **Category:** All DOCUMENTS RELATING TO the Gameloft Advertising Solutions at each of the annual E3 conferences. | **Plaintiff's Position:** n/a |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning Gameloft Advertising Solutions at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (416) | 5 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES at each of the annual E3 conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any *Asphalt* game "at" a gaming conference (whatever that means) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (417) | 6 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (418) | 7 | **Category:** All DOCUMENTS by YOU RELATING TO any awards recognizing GAMELOFT at each of the annual E3 conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | | |



| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any awards to multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(419)** | 8 | **Category:** All DOCUMENTS RELATING TO the selection process for any awards recognizing GAMELOFT at each of the annual E3 conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any awards to multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(420)** | 9 | **Category:** All DOCUMENTS RELATING TO GAMELOFT as a member of the Entertainment Software Association. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Entertainment Software Association, a company that organizes gaming conferences, for "all DOCUMENTS" concerning membership of multiple "GAMELOFT" entities (as defined) in the Association is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |

| Subpoena to French-American Chamber of Commerce – Los Angeles | | | |
|---|---|---|---|
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(421)** | 1 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los | |



| | | Angeles, a trade network for French and American companies, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(422)** | 2 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los Angeles, a trade network for French and American companies, for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(423)** | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los Angeles, a trade network for French and American companies, for "all DOCUMENTS" all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(424)** | 4 | **Category:** All DOCUMENTS reflecting GAMELOFT's role as a member, sponsor, benefactor or supporter of any kind to your organization or to any event YOU organize. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los Angeles, a trade network for French and American companies, for "all DOCUMENTS" concerning the role of multiple "GAMELOFT" entities (as defined) at any French-America Chamber-organized event is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |

130



| (425) | 5 | **Category:** All DOCUMENTS by YOU REFERRING TO GAMELOFT. | **Plaintiff's Position:** n/a |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los Angeles, a trade network for French and American companies, for "all DOCUMENTS" referring to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (426) | 6 | **Category:** All DOCUMENTS RELATING TO any corporate services (e.g. missions, business set up, recruitment, training, advertising) YOU provided to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los Angeles, a trade network for French and American companies, for "all DOCUMENTS" relating to any "corporate services" provided to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (427) | 7 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the French-American Chamber of Commerce – Los Angeles, a trade network for French and American companies, for "all DOCUMENTS" concerning the *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |

| **Subpoena to San Diego French-American Chamber of Commerce** | | | |
|---|---|---|---|
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| (428) | 1 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |



| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for all DOCUMENTS received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(429)** | 2 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(430)** | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(431)** | 4 | **Category:** All DOCUMENTS reflecting GAMELOFT's role as a member, sponsor, benefactor or supporter of any kind to your organization or to any event YOU organize. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" concerning the role of multiple "GAMELOFT" entities (as defined) at any French- | |



| | | America Chamber-organized event is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(432)** | 5 | **Category:** All DOCUMENTS by YOU REFERRING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" referring to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(433)** | 6 | **Category:** All DOCUMENTS RELATING TO any corporate services (e.g. missions, business set up, recruitment, training, advertising) YOU provided to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" relating to any "corporate services" provided to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(434)** | 7 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" concerning the *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **Subpoena to French-American Chamber of Commerce – San Francisco** | | | |
| List No. | Req. No. | Category | Reason Why the Request Is Or Is Not Encompassed by Judge |



| | | | Chesney's Order |
|---|---|---|---|
| **(435)** | 1 | **Category:** ALL DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Francisco French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(436)** | 2 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Francisco French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(437)** | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Francisco French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(438)** | 4 | **Category:** All DOCUMENTS reflecting GAMELOFT's role as a member, sponsor, benefactor or supporter of any kind to your organization or to any event YOU organize. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | |



| | | | |
|---|---|---|---|
| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Francisco French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" concerning the role of multiple "GAMELOFT" entities (as defined) at any French-America Chamber-organized event is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(439)** | 5 | **Category:** All DOCUMENTS by YOU REFERRING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Francisco French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" referring to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(440)** | 6 | **Category:** All DOCUMENTS RELATING TO any corporate services (e.g. missions, business set up, recruitment, training, advertising) YOU provided to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Francisco French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" relating to any "corporate services" provided to multiple "GAMELOFT" entities (as defined) isirrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(441)** | 7 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to the San Diego French-American Chamber of Commerce, a trade network for French and American companies, for "all DOCUMENTS" concerning the *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games | |



| | | and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **Subpoena to Ford** | | | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(442)** | 1 | **Category:** ALL DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position**: In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Ford, a company that purportedly advertises on GLSE's games, concerning documents relating to third-party advertising involving Gameloft Advertising Solutions is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(443)** | 2 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Ford, company that purportedly advertises on GLSE's games for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(444)** | 3 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Ford, company that purportedly advertises on GLSE's games for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(445)** | 4 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue | |



| | | and profits, a subpoena to Ford, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(446)** | 5 | **Category:** All DOCUMENTS RELATING TO any ad campaign by GAMELOFT for YOU. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position**: In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Ford, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any ad campaign" by multiple "GAMELOFT" (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(447)** | 6 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Ford, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(448)** | 7 | **Category:** All DOCUMENTS by YOU RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Ford, a company that purportedly advertises on GLSE's games, concerning "all DOCUMENTS" relating to multiple "GAMELOFT" entities (as defined)  is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| | | **Subpoena to Lensa** | |
| List No. | Req. No. | Category | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |



| (449) | 1 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (450) | 2 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (451) | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (452) | 4 | **Category:** All DOCUMENTS RELATING TO any job postings for GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" concerning all job postings for multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |



| (453) | 5 | **Category:** ALL DOCUMENTS RELATING TO any candidate responding to any job postings for GAMELOFT. | **Plaintiff's Position:** n/a |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" concerning any candidates responding to job postings for multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (454) | 6 | **Category:** All DOCUMENTS by you RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" "by YOU" (whatever that means) relating to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (455) | 7 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Lensa, a human resources company, for "all DOCUMENTS" relating to any *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **Subpoena to Mattel** | | | |
| List No. | Req. No. | Category | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |
| (456) | 1 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue | | |



| | | and profits, a subpoena to Mattel, company that purportedly advertises on GLSE's games for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
|---|---|---|
| **(457)** | 2 | **Category:** All DOCUMENTS YOU sent to GAMELOFT.      **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mattel, company that purportedly advertises on GLSE's games for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(458)** | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT.      **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mattel, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(459)** | 4 | **Category:** All DOCUMENTS by you REFERRING TO GAMELOFT.      **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mattel, a company that purportedly advertises on GLSE's games, concerning "all DOCUMENTS" referring to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(460)** | 5 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES.      **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and |



| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mattel, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
|---|---|---|

|  | | | |
|---|---|---|---|
| **Subpoena to McDonald's** | | | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(461)** | 1 | **Category:** ALL DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games, concerning documents relating to third-party advertising involving Gameloft Advertising Solutions irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **(462)** | 2 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, subpoena to McDonald's, a company that purportedly advertises on GLSE's games for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| **(463)** | 3 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |



| (464) | 4 | **Category:** ALL DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (465) | 5 | **Category:** ALL DOCUMENTS RELATING TO any ad campaign by GAMELOFT for YOU. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any ad campaign" by multiple "GAMELOFT" (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (466) | 6 | **Category:** ALL DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (467) | 7 | **Category:** ALL DOCUMENTS by YOU RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games, concerning "all DOCUMENTS" "by YOU" (whatever that means) relating to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of | | |



| | | revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **Subpoena to Mobile Marketing Association** | | | |
| List No. | Req. No. | Category | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |
| **(468)** | 1 | **Category:** ALL DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mobile Marketing Association, a mobile marketing trade association, concerning documents relating to third-party advertising involving Gameloft Advertising Solutions irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | | |
| **(469)** | 2 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mobile Marketing Association, a mobile marketing trade association, for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | | |
| **(470)** | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mobile Marketing Association, a mobile marketing trade association, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | | |
| **(471)** | 4 | **Category:** All DOCUMENTS RELATING TO any | **Plaintiff's Position:** n/a |



| | | awards recognizing GAMELOFT. | |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mobile Marketing Association, a mobile marketing trade association, for "all DOCUMENTS" relating to awards recognizing multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(472)** | 5 | **Category:** All DOCUMENTS RELATING TO the selection process for any awards recognizing GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mobile Marketing Association, a mobile marketing trade association, for "all DOCUMENTS" relating to the selection of awards recognizing multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(473)** | 6 | **Category:** All DOCUMENTS RELATING TO GAMELOFT as a member of the Mobile Marketing Association, Inc. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Mobile Marketing Association, a mobile marketing trade association, for "all DOCUMENTS" relating to the membership of multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|  | | **Subpoena to Netflix** | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(474)** | 1 | **Category:** ALL DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | |



| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Netflix, a company that purportedly advertises on GLSE's games, concerning documents relating to third-party advertising involving Gameloft Advertising Solutions irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
|---|---|---|
| **(475)** | 2 | **Category:** ALL DOCUMENTS YOU received from GAMELOFT. **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Netflix, a company that purportedly advertises on GLSE's games for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(476)** | 3 | **Category:** ALL DOCUMENTS YOU sent to GAMELOFT. **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Netflix, a company that purportedly advertises on GLSE's games for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(477)** | 4 | **Category:** ALL DOCUMENTS RELATING TO any game in the ASPHALT SERIES. **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Netflix, a company that purportedly advertises on GLSE's games for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
| **(478)** | 5 | **Category:** ALL DOCUMENTS RELATING TO any ad campaign by GAMELOFT for YOU. **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue |



| | | and profits, a subpoena to Netflix, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any ad campaign" by multiple "GAMELOFT" (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(479)** | 6 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Netflix, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(480)** | 7 | **Category:** All DOCUMENTS by YOU RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to McDonald's, a company that purportedly advertises on GLSE's games, concerning "all DOCUMENTS" relating to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| Subpoena to Smart Recruiters | | | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(481)** | 1 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |



| (482) | 2 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (483) | 3 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (484) | 4 | **Category:** All DOCUMENTS RELATING TO any job postings for GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" concerning all job postings for multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | | |
| (485) | 5 | **Category:** All DOCUMENTS RELATING TO any candidate responding to any job postings for GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" concerning any candidates responding to job postings for multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games | | |



| | | and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(486)** | 6 | **Category:** ALL DOCUMENTS by you RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" relating to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(487)** | 7 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Smart Recruiters, a human resources company, for "all DOCUMENTS" relating to any *Asphalt* game is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **Subpoena to SpotX** | | | |
| List No. | Req. No. | Category | Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order |
| **(488)** | 1 | **Category:** ALL DOCUMENTS RELATING TO the Gameloft Advertising Solutions. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning documents relating to third-party advertising involving Gameloft Advertising Solutions are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(489)** | 2 | **Category:** All DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue | |



| | | and profits, a subpoena to SpotX, an advertising software company, for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(490)** | 3 | **Category:** All DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, for "ALL DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(491)** | 4 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, for "all DOCUMENTS") concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(492)** | 5 | **Category:** Sufficient DOCUMENTS to describe how SpotX serves targeted video ads to gamers of any games, including any games in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning how SpotX serves ads in *Asphalt* games is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(493)** | 6 | **Category:** All DOCUMENTS discussing any benefits to GAMELOFT by using SpotX for video | **Plaintiff's Position:** n/a |



| | | inventory management. | |
|---|---|---|---|
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning "all DOCUMENTS" discussing the benefits to multiple "GAMELOFT" entities (as defined) by using SpotX is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(494)** | 7 | **Category:** Sufficient DOCUMENTS to identify all geographic locations targeted by GAMELOFT or any of its customers. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning all geographic locations targeted by multiple "GAMELOFT" entities (as defined) or any of the multiple "GAMELOFT" entities' "customers" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(495)** | 8 | **Category:** Sufficient DOCUMENTS to identify all geographic markers (e.g. age, ethnicity, gender, income, profession, etc.) targeted by GAMELOFT or any of its customers. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning all geographic "markers" targeted by multiple "GAMELOFT" entities (as defined) or any of the multiple "GAMELOFT" entities' "customers" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(496)** | 9 | **Category:** All DOCUMENTS by you RELATING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning "all DOCUMENTS by" SpotX (whatever that means) relating to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in | |



| | | California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(497)** | 10 | **Category:** ALL DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to SpotX, an advertising software company, concerning "any game in the ASPHALT SERIES" irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |

| Subpoena to Tesla | | | |
|---|---|---|---|
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(498)** | 1 | **Category:** ALL DOCUMENTS YOU received from GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Tesla, company that purportedly advertises on GLSE's games for "all DOCUMENTS" received from multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(499)** | 2 | **Category:** ALL DOCUMENTS YOU sent to GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Tesla, company that purportedly advertises on GLSE's games for "all DOCUMENTS" sent to multiple "GAMELOFT" entities (as defined) is are irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(500)** | 3 | **Category:** ALL DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and | |



| | | her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Tesla, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(501)** | 4 | **Category:** All DOCUMENTS by you REFERRING TO GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Tesla, a company that purportedly advertises on GLSE's games, concerning "all DOCUMENTS" referring to multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(502)** | 5 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to Tesla, a company that purportedly advertises on GLSE's games, for "all DOCUMENTS" concerning "any game in the ASPHALT SERIES" is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific *Asphalt* games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| Subpoena to UBM | | | |
| **List No.** | **Req. No.** | **Category** | **Reason Why the Request Is Or Is Not Encompassed by Judge Chesney's Order** |
| **(503)** | 1 | **Category:** All DOCUMENTS RELATING TO GAMELOFT in any role at each of the annual Game Developer Conferences, including as speakers, in any capacity (e.g. lecture, tutor, expert, etc.), sponsors, partners, and/or exhibitors. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any role multiple "GAMELOFT" entities (as defined) | |



| | | have taken at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(504)** | 2 | **Category:** All DOCUMENTS RELATING TO any media coverage, including interviews, of GAMELOFT at each of the annual Game Developer Conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any media coverage of multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(505)** | 3 | **Category:** All DOCUMENTS RELATING TO any attendees (e.g., programmers, artists, producers, game designers, audio professionals, business decision-makers or others involved in the development of interactive games) from GAMELOFT at each of the annual Game Developer Conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning attendance by multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(506)** | 4 | **Category:** All DOCUMENTS RELATING TO the Gameloft Advertising Solutions at any of the annual Game Developer Conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning Gameloft Advertising Solutions at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in | |



| | | California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
|---|---|---|---|
| **(507)** | 5 | **Category:** All DOCUMENTS RELATING TO any game in the ASPHALT SERIES at any of the annual Game Developer Conferences. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any *Asphalt* game "at" a gaming conference (whatever that means) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(508)** | 6 | **Category:** All DOCUMENTS RELATING TO any commercial arrangement, including contracts, between YOU and GAMELOFT. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning all commercial arrangements with multiple "GAMELOFT" entities (as defined) is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(509)** | 7 | **Category:** All DOCUMENTS by YOU RELATING TO any awards recognizing GAMELOFT at any Game Developer Conference. | **Plaintiff's Position:** n/a |
| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any awards to multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. | |
| **(510)** | 8 | **Category:** All DOCUMENTS RELATING TO the selection process for any awards recognizing GAMELOFT at any Game Developer Conference. | **Plaintiff's Position:** n/a |



| | | **GLSE's Position:** In the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the copyright claim and her reference to the "size" of business in terms of the economic aspects of revenue and profits, a subpoena to UBM, a company that organizes gaming conferences, for "all DOCUMENTS" concerning any awards to multiple "GAMELOFT" entities (as defined) at a gaming conference is irrelevant to the size of revenue and profits of GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim. |
|---|---|---|

Very truly yours,

___/s/ Eliot Hudson_____
Eliot Hudson
DLA Piper LLP (US)
Attorney for Gameloft SE

___/s/ Q. Huy Doan Do_____
Q. Huy Doan Do
Kyzen Law PC
Attorney for Glass Egg Digital Media Limited