# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# EUREKA DIVISION

| | |
|---|---|
| GLASS EGG DIGITAL MEDIA, Plaintiff, v. GAMELOFT, INC., *et al.*, Defendants. | Case No. 17-cv-04165-MMC (RMI) **DISCOVERY ORDER** Re: Dkt. Nos. 165, 168, 171, 172, 176 |

Pending before the court is a jointly filed discovery letter brief (dkt. 165), as well as several related supplemental filings (dkts. 171, 172, 176), presenting a discovery dispute that is essentially Plaintiff's motion to compel certain discovery. Also pending before the court is another jointly filed discovery letter brief (dkt. 168) that is essentially a motion by Defendant Gameloft, Inc. ("GLI") and Defendant Gameloft SE ("GLSE") to quash subpoenas sent by Plaintiff to third parties. For the reasons stated below, Plaintiff's motion to compel discovery is granted in part and denied in part; and, as discussed below, the motion by GLI and GLSE to quash or limit Plaintiff's third party subpoenas is deferred.

## **INTRODUCTION**

Plaintiff, Glass Egg Digital Media, is currently embroiled in a discovery dispute with Defendant Gameloft SE ("GLSE") regarding the scope of permissible jurisdictional discovery under Judge Chesney's Order of February 12, 2018 ("Order") (dkt. 94). On February 9, 2018, Judge Chesney held a hearing (dkt. 98) on GLSE's motion to dismiss for lack of personal jurisdiction. Following the hearing, Judge Chesney entered an order that deferred ruling on GLSE's request for dismissal pending a period of jurisdictional discovery relating to the

establishment of "specific jurisdiction over Gameloft SE based on Gameloft SE's own contacts with California." *Order* (dkt. 94) at 1. The Court granted Plaintiff leave to conduct discovery "pertaining to (a) the size of Gameloft SE's business in California and (b) the identity of the Gameloft entity / entities that operate(s) the website accessible to website users within California." *Id*. at 2. Since then, Plaintiff and GLSE have disagreed about the meaning of the word "size" and both parties contend that Judge Chesney's comments at the February 9, 2018, hearing bear out their respective interpretations of the word. GLSE contends that in the present context, "size" can only refer to the sales that gave rise to Plaintiff's copyright infringement claim; on the other hand, Plaintiff essentially contends that "size" encompasses all details relating to the extent and commercial value of all facets of the market, including the viewer base, commercial partners, promotional efforts, and so on.

The hearing of February 8, 2018, began with the Court noting that to survive GLSE's motion to dismiss under the present circumstances, Plaintiff would need to show that GLSE "purposefully directed their activities toward California . . . [and] that the infringement claim arises out of or relates to those activities." *See Hearing Transcript ("Tr.")* (dkt. 172-1) at 10. When counsel for GLSE reiterated that for specific jurisdiction, Plaintiff's claim has to arise from the activity that is directed to the state, the Court responded that "the idea here is that there's two references to California law on the website . . . no reference to any other state." *Id*. at 15. Thus, summarizing Plaintiff's position, the Court noted that "if you've got a website that's directed at the forum, even though part of it isn't the infringing part, to the extent that the infringing part is part of that overall directedness, then that's enough." *Id*. at 20. As far as establishing a scope for the jurisdictional discovery that Plaintiff had requested, the Court noted that "I think Mr. Do (Plaintiff's counsel) is right that you don't have to look at it just with blinders on . . . [s]o there's some flexibility here as to - - looking at contacts . . . [b]ut they have to have something to do with what's going on in the case . . ." *Id*. at 23. Formulating the parameters of discovery, the Court added that "I may find it appropriate . . . to give the plaintiff some limited discovery on some of these points, including the sales, perhaps, here in California . . . [a]nd then there's this question about who runs which website." *Id*. at 24.

2

Having accepted Plaintiff's position, over GLSE's objection, that discovery did not have to be conducted "with blinders on," the Court noted that Plaintiff wished for discovery to be as broad as possible, repeatedly urging that broad discovery was essentially required by *Mavrix v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2010).[1] As to the parameters of the discovery that would be allowed, Court stated that "[o]riginally I was thinking in terms of how much money are they really making out of the California market . . . how big a market is California." *Tr.* (dkt. 172-1) at 42, 44. The Court then addressed counsel for Plaintiff and informed that jurisdictional discovery would be permitted as to, "[h]ow do you want to phrase? Is it the percentage of their sales? Or just the amount of sales here in California? Or how do you want to describe that sort of economic concept?" *Id.* at 45. Plaintiff's counsel responded, "Your Honor, I would rely on *Mavrix*, the three factors the Ninth Circuit used to look and consider." *Id.* at 51. Eventually, Plaintiff submitted that discovery should encompass GLSE's entire "business model," but the Court responded that "[b]usiness model is too mushy. What else have you got?" *Id.* at 51. Plaintiff then submitted a phrase that the Court found acceptable in capturing "the economic aspect," noting that "[t]he size of their business in California is a pretty good phrase." *Id.* at 52. Thereafter, on February 12, 2018, the Court issued a written order granting Plaintiff leave to conduct jurisdictional discovery "pertaining to (a) the size of Gameloft SE's business in California and (b) the identity of the Gameloft entity/entities that operate(s) the website accessible to website users within California." *Order* (dkt. 94) at 1-2.

---

[1] Plaintiff mentioned the case no fewer than seven times before the Court finally noted that "[y]ou're back on your same favorite case," and then Plaintiff mentioned it another two times. *See Tr.* (dkt. 172-1) at 19, 20, 21, 22, 32, 33, 34, 35, 51). For the purpose establishing the scope of jurisdictional discovery, a matter committed to the discretion of the district court, *see Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), *Mavrix* does not appear particularly informative. There, a district court had denied Mavrix's request for leave to conduct jurisdictional discovery, and had granted the motion to dismiss for lack of personal jurisdiction. *Mavrix*, 647 F.3d at 1223. While discovery was not an issue in that case, the appellate court applied the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), and determined that the dismissal was error because Mavrix had already presented a *prima face* case of purposeful direction by Brand that was sufficient to survive a motion to dismiss for lack of personal jurisdiction. *Mavrix*, 647 F.3d at 1228, 1232. The case turned on the notion that although "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed . . . [however] where, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Id.* at 1231.

## DISCUSSION

**Plaintiff's Motion to Compel**

In presenting the dispute through their initial Joint Discovery Letter (dkt. 165), Plaintiff and GLSE noted that while they agreed that their disputes about the "scope" of jurisdictional discovery were "important and complex," they disagreed about which judge should resolve the dispute, and about who would be the moving party. *Id*. at 1. The essence of the instant discovery dispute between Plaintiff and GLSE can be stated as such: Plaintiff appears to have been proceeding as though Judge Chesney did not reject its argument that discovery at this stage should encompass GLSE's entire "business model," and GLSE appears to have been proceeding as though Judge Chesney did not reject its argument that jurisdictional discovery should be limited to California sales that gave rise to the infringement claims at the heart of the case. *See Def.'s Resp.* (dkt. 172) at 7; and, *Pl.'s Br.* (dkt. 171) at 4-19. In reviewing the previous filings, it was apparent that neither party had taken a reasonable interpretation of Judge Chesney's discovery order, which is why it was imperative that Plaintiff and GLSE be made to submit briefing that identifies each and every contested discovery item, attended with each party's justification for entitlement or refusal. *See Orders* (dkts. 169 & 173).

The term at the heart of this dispute, "size," when used in connection with the term "business," has a common understanding. It is neither limited to sales revenue, as suggested by GLSE; nor is it as broad as to encompass specific characteristics of the entirety of a company's operations, such as a "business model," as suggested by Plaintiff. The common understanding of the term "business size" in a particular market (such as California) for various types of businesses could include, the amount of capital that has been invested (such as in the case of a lending or investment company), the value of the product (such as in the cases of ranchers and farmers), the number of employees or the company's income are also frequently used measures, as are the number of buildings, facilities or other assets or equipment, as well as the amount of raw materials consumed, the volume of output, or, sometimes, the overall productive capacity of that business in that market (such as would be the case for refineries or power generation companies).

Convoluted as the Parties have made it, resolving this dispute is straightforward because

Judge Chensey's order, in light of her statements at the hearing, was clear and straightforward. Prior to the issuance of her written order, Judge Chesney was urged by Plaintiff to allow jurisdictional discovery as to GLSE's entire business model, and was urged by GLSE to limit jurisdictional discovery to California-generated revenue associated with the allegedly infringing products – both arguments were rejected. The Court told counsel for GLSE that discovery would not be conducted "with blinders on," and, likewise, the Court informed counsel for Plaintiff that "business model is too mushy." Instead, the Court elected to focus the jurisdictional inquiry on GLSE's business size within the California market. Nevertheless, and without either party moving for clarification or reconsideration, Plaintiff and GLSE each thereafter proceeded as though their respective arguments had carried the day when that was not the case. If the Court wished to limit discovery to GLSE's sales figures in California, the court would have done so, as there are narrower terms with which to describe revenue or income as opposed to size. Likewise, if the Court wished to allow expansive discovery into every facet of GLSE's "business model" it would have done so. Accordingly, in light of the above, the court will address the disputed items individually. At the outset, the court will note that the Parties were ordered (dkt. 173) to file briefing containing three lists, the first of which would enumerate any disputed items that are moot, that were unable to be found, that do not exist, or that have been or will be produced. The parties complied and filed an acceptable letter brief containing the requisite numbered lists. *See Joint Letter Br.* (dkt. 176).

As to the 49 requests (*see id.* at 3-11) contained in the first list, List Nos. (1) through (49), given that those items are moot, or were unable to be found, or do not exist, or have been admitted or denied, or have already been or will be produced, Plaintiff's motion to compel is **DENIED** as to those items or requests. At this juncture it should be noted that, in producing the itemized list of contested discovery items attended with each party's justification for entitlement or refusal, Plaintiff and GLSE have largely replicated, verbatim, hundreds of times, their same single-sentence explanations for nearly every contested item. GLSE's much repeated explanation for nearly all of its refusals is as follows: "The February 12 Order, in the context of Judge Chesney's hearing statements that specific jurisdiction must be based on contacts that are related to the

5

copyright claim and her reference to the 'size' of business in terms of the economic aspects of revenue and profits, only permits discovery concerning GLSE's sales in California attributable to purchases of the specific Asphalt games and digital car models in-game assets that form the basis of Plaintiff's copyright violation claim." *See* generally *Id*. at 54-155. Likewise, Plaintiff's justification for its overbroad discovery demands that clearly fit the business model rubric, rather than business size, are invariably phrased as "partly" establishing size, or, when asking for information pertaining to Defendants' website's business model, Plaintiff repeatedly states that the request "tends to identify who operates the website." *See id*. In any event, based on the above-described, commonly accepted understanding of the phrase, "size of business," as used in the Court's order permitting jurisdictional discovery, the undersigned rules as follows.

*Requests for Admission*

Initially, there are 208 requests for admission at issue, List Nos. (1) through (208). *Id*. at 53-81. The requests contained in List Nos. (1) through (3) (*id*. at 53-54) deal with corporate revenue in markets other than just California, accordingly, as to these requests, Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (4) through (8) (*id*. at 54-56) are all relevant to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (9) through (11), and (13) (*id*. at 56-57) appear to fall under the "business model" category that Plaintiff unsuccessfully solicited, rather than being relevant to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (12), and (14) through (19) (*id*. at 58-59) are relevant to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (20) through (66) (*id*. at 60-61) do not appear relevant to determining the size of GLSE's business in California; as to these requests Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (67) through (76) (*id*. at 61-70) all appear relevant to a determination of the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (77) and (78) (*id*. at 70-71) once again fall into the rejected "business model" category rather than being relevant to the size of GLSE's business in California,

as to these items Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (79) through (180) (*id* at 71-78) all appear relevant to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (181) through (205) (*id*. at 78-80) simply ask GLSE to admit or deny whether or not a number of companies (advertisers) targeted players associated with California, however, these requests are not tailored sufficiently narrowly to be relevant (as currently phrased) to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (206) through (222) appear relevant to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **GRANTED**.

*Requests for Production*

The requests contained in List Nos. (223), (224), (226), and (229) through (236) (*id*. at 81-86) all seek documents that fall under the already rejected business model rubric and, further, these requests seek global information that is not limited to the California market; thus, as to these requests Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (225), (227), (228), (239), (241), (243), and (244) (*id*. at 82-83, 87, 88) are relevant to GLSE's business size in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (237), (238), (240), (242), and (245) through (266) (*id*. at 86-96) all fall under the business model rubric and are not relevant to the size of GLSE's business in California, as to these requests Plaintiff's motion to compel is **DENIED**. The requests contained in List Nos. (267) through (270), (276), (278), (343), and (344) (*id*. at 96-97, 99, 100, 103) all appear relevant to GLSE's business size in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (271) through (275), (277), (279) through (342), (345), and (346) (*id*. at 97-104) all reach beyond the scope of determining GLSE's business size in California, and most of which fall under the business model rubric, as to these requests Plaintiff's motion to compel is **DENIED**.

*Interrogatories and (30)(b)(6) Topics*

The requests contained in List Nos. (347), (349), (353), (355), (357), (359), (362), (367), (370), (373), (375), (376) through (380), and (383) through (385) (*id*. at 104-109, 113, 114-119)

all appear relevant to GLSE's business size in California, as to these requests Plaintiff's motion to compel is **GRANTED**. The requests contained in List Nos. (348), (350) through (352), (354), (356), (358), (360), (361), (363) through (366), (368), (369), (371), (372), (374), (377), (381), and (382) (*id*. at 104-116, 118) either fall under the business model rubric, or are focused on GLSE's global size rather than its business size in California, or are otherwise outside the scope of permitted jurisdictional discovery, as to these requests Plaintiff's motion to compel is **DENIED**.

**Defendants' Motion to Quash Third Party Subpoenas**

In early March of 2019, Plaintiff served subpoenas on eleven nonparties (including Tesla, Mattel, Netflix, and an attorney for GLI); Plaintiff also provided GLI and GLSE with notice of its intent to serve subpoenas on an additional six nonparties (including Coca-Cola, Ford Motor Company, and McDonald's). *Joint Letter Br.* (dkt. 168) at 1. While the above described motion to compel was being briefed and resolved, the court issued an order staying compliance with Plaintiff's subpoenas. *Order* (dkt. 169) at 2. The subpoenas appear to be broadly framed (e.g., subpoena to Coca-Cola demands all documents sent to or received from Gameloft). *See generally Joint Letter Br.* (dkt. 176) at 119-154.

GLI moves the court "to quash and/or limit the Subpoenas because they seek irrelevant information untethered to the subject matter of this suit, including confidential commercial information for which Glass Egg has not shown . . . any need, particularly at this stage of the case." *Joint Letter Br.* (dkt. 168) at 2. "[B]ecause the Subpoenas seek information directly related to GLI's confidential interests," GLI argues that it has standing to make this motion. *Id*. While GLI's portion of the jointly filed letter brief did not identify the objectionable portions of the subpoenas, GLI did note that, if necessary, it was "prepared to identify each request and demonstrate why such should be quashed." *Id*. at 2 n.5. GLI further submits that the subpoenas, if not quashed, should be limited in scope to documents that are relevant to the allegations pleaded in the Fourth Amended Complaint and not within GLI's possession or control, and to defer the deadline for nonparty objections or productions until after the Parties have engaged in discovery. *Id*. at 3. On the other hand, GLSE submits that the subpoenas are an end-run around the limits of jurisdictional discovery imposed by Judge Chesney, arguing that they should be quashed or

limited "as discussed in this letter." *Id*. at 4. Plaintiff submits that GLI and GLSE have failed to establish standing in order to move to quash the subpoenas because they have not shown why the existing stipulated protective order (dkt. 154) does not protect their interests, that this is not the proper court for motions to quash 11 out of the 15 subpoenas, and that the subpoenas are relevant, proportional, and necessary. *Joint Letter Br.* (dkt. 168) at 5-7.

Federal Rule of Civil Procedure 45 governs motions to quash or modify a subpoena, and provides that a court must modify or quash a subpoena that, among other things, "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(i), (iii), (iv). Generally speaking, a party to an action does not have standing to move to quash a subpoena served upon a nonparty unless the party claims a personal right or privilege with respect to the documents requested in the subpoena. *See e.g.*, *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (no standing to quash third party subpoenas where moving party "included no evidence to show that [the information] was meant to be private or confidential in any manner"); *see also Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856-PJH (DMR), 2012 U.S. Dist. LEXIS 173365, at *5-6 (N.D. Cal. Dec. 6, 2012); *Del Campo v. Mealing*, No. C 01-21151 JW, 2011 U.S. Dist. LEXIS 158018, at *8 (N.D. Cal. Sep. 29, 2011); *Coulter v. Murrell*, No. 10-102-IEG (NLS), 2011 U.S. Dist. LEXIS 14922, 2011 WL 666894, at *2 (S.D. Cal. Feb. 14, 2011); *Knoll, Inc. v. Moderno, Inc.*, No. 12-mc-80193-SI, 2012 U.S. Dist. LEXIS 138497, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) ("[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed."); *Chevron Corp. v. Donzinger*, No. 12-mc-80237-CRB (NC), 2013 U.S. Dist. LEXIS 119622, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (same); *Am. Broadcasting Cos. Inc. v. Aereo, Inc.*, No. 12-mc-80300-RMW (PSG), 2013 U.S. Dist. LEXIS 51894, 2013 WL 1508894, at *2 (N.D. Cal. Apr. 10, 2013) (same); and, *In re Ashworth, Inc. Securities Litig.*, No. 99-CV-121, 2002 U.S. Dist. LEXIS 27991, 2002 WL 33009225, at *2 (S.D. Cal. May 10, 2002) (standing could, for example, be based on a party's "proprietary interest" in commercial information sought). Therefore, a party's objection that a subpoena to a nonparty

9

seeks irrelevant information, or that it would impose an undue burden, are not grounds on which that party can base standing to move to quash a subpoena when the nonparty has not objected. *See Finley v. Pulcrano*, No. C 08-0248 PVT, 2008 U.S. Dist. LEXIS 83821, 2008 WL 4500862, at *1 (N.D. Cal. Oct. 6, 2008); *see also Drummond Co. v. Collingsworth*, No. 13-mc-80169-JST(JCS), 2013 U.S. Dist. LEXIS 163971, at *51-52 (N.D. Cal. Nov. 18, 2013). However, a party may seek to protect these interests through a protective order pursuant to Rule 26(c) regarding a subpoena issued to a nonparty if it believes its own interest is jeopardized by the discovery sought from that nonparty. *See Wells Fargo & Co.*, 2012 U.S. Dist. LEXIS at *5-6.

In light of this, the court notes that GLSE and GLI have not identified the exact nature of their claims of personal right or privilege with respect to the documents requested by the subpoenas, or explained why those rights are not adequately protected under the existing protective order in this case. Accordingly, the Parties are **ORDERED** to meet and confer forthwith regarding Plaintiff's third party subpoenas in a good faith effort to refine or resolve the issues. Thereafter, on or before Friday, June 28, 2019, the Parties are **ORDERED** to either file a notice stating that the subpoena issues have been resolved, or to file a joint letter brief clearly setting forth any remaining issues, and in which GLI and GLSE shall explain why they believe they have standing as to each subpoena, why the existing protective order (dkt. 154) is insufficient to protect their interests, and, to which subpoenas they object and on what grounds.

## **CONCLUSION**

As stated above, Plaintiff's motion to compel discovery (dkts. 165, 176) is **GRANTED** in part and **DENIED** in part. Defendants' motion to quash subpoenas issued to nonparties (dkt. 168) is **DEFERRED** pending a meet and confer session by the Parties and further briefing as described above.

**IT IS SO ORDERED.**

Dated: June 17, 2019

ROBERT M. ILLMAN
United States Magistrate Judge