UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GLASS EGG DIGITAL MEDIA,<br><br>Plaintiff,<br><br>v.<br><br>GAMELOFT, INC., et al.,<br><br>Defendants. | Case No. 17-cv-04165-MMC (RMI)<br><br>**ORDER ON DISCOVERY LETTER BRIEFS**<br><br>Re: Dkt. Nos. 168, 203 |

Currently pending before the court are the Parties' jointly filed letters briefs (dkts. 168, 203) setting forth a discovery dispute pertaining to a number of third-party subpoenas served and noticed by Plaintiff. In essence, Defendants move to quash or limit the subpoenas, or in the alternative, to make the responsive information subject to a protective order. For the reasons stated below, Defendants' motions to quash Plaintiff's third-party subpoenas are granted.

**BACKGROUND**

This is an action for copyright infringement and conversion, as well as unfair competition (based on conversion) pertaining to digital car models used in the gaming industry. *See Order* (dkt. 141) at 16-17; *see also Fourth Amend. Compl.* (dkt. 144). In early March of 2019, Plaintiff served 11 subpoenas on various third parties and served Defendants with notice of an intent to serve an additional 6 on other third parties. *See Letter Br. of August 16, 2019 ("Defs.' Mot.")* (dkt. 203) at 1, 3. The following month, Defendant Gameloft, Inc. ("GLI") and Defendant Gameloft SE ("GLSE") submitted a joint letter brief to the court setting forth two sets of discovery disputes. *Letter Br. of April 5, 2019* (dkt. 161). The disputes, a motion to compel between Plaintiff and GLSE, and a motion to quash by GLI and GLSE regarding Plaintiff's third-party subpoenas,

would be presented in two separate letter briefs, but a stay of compliance with the subpoenas was sought pending the resolution of that particular dispute. *Id.* at 1. Thereafter, on April 9, 2019, the Parties filed another joint letter brief setting forth their various arguments regarding Plaintiff's subpoenas. *Letter Br. of April 9, 2019*, (dkt. 168). Being positioned differently, GLSE and GLI made different arguments about Plaintiff's subpoenas. *See id.* at 2-4. At the same time, Plaintiff and Defendant GLSE were embroiled in a separate, though related, discovery dispute pertaining to the scope of jurisdictional discovery that was previously ordered and necessary to a determination of GLSE's motion to dismiss. *See Letter Br. of April 5, 2019* (dkt. 165). Because the resolution of the discovery motion could affect the outcome of the motion to quash (as to GLSE), on April 15, 2019, the court decided that judicial economy counseled in favor of initially proceeding with the discovery motion (dkt. 165), while staying compliance with Plaintiff's subpoenas in the meantime. *See Order of April 15, 2019* (dkt. 169). The discovery motion was eventually resolved on July 18, 2019 (dkt. 196), following which, the Parties solicited and were given clarification as to the effect of the July 18th Order on the still-pending subpoena dispute (dkt. 200). Thereafter, a second jointly-filed letter brief, presenting the Parties' arguments as to Plaintiff's subpoenas was filed. *Defs.' Mot.* (dkt. 203). As noted, because the scope of discovery as to GLSE is limited to the test for specific jurisdiction commonly applied to tort claims (dkt. 196), and because the Court has already clarified that this scope also applies to third-party discovery (dkt. 200), GLI and GLSE offer differing justifications for quashing or limiting the subpoenas in question. However, both GLI and GLSE argue in the alternative that the information returned in response to the subpoenas in question should be made subject to a protective order. *Defs.' Mot.* (dkt. 203) at 1-3, 8 n.10.

### ***GLI's Arguments:***

GLI contends that it has standing to move to quash or limit the subpoenas because they "seek information directly related to Defendants' confidential interests." *Id.* at 2. The basis on which the subpoenas would be quashed, as GLI urges, would be because they seek information that is irrelevant to the litigation and unduly burdensome to the nonparties. *Id.* In the alternative, GLI moves to subject the information sought by the subpoenas to a protective order. *Id.* at 3. In support of its arguments as to irrelevance and undue burden, GLI has divided the 17 subpoenas

into a list of 19 topics attended with 19 footnotes, "for convenience." *Defs.' Mot*. (dkt. 203) at 16-17. GLI does not challenge Topic No. 2 ("[a]ll documents relating to any game in the Asphalt series," included in 14 of the 17 subpoenas); however, GLI contends that the entirety of the remainder of the 19 topics fall outside the bounds of permissible discovery as irrelevant and disproportionate. *Id*. at 3. The essence of GLI's position is that there are no causes of action that would permit Plaintiff to generally discover information about GLI's business or relationship with nonparties, and that the information sought is not relevant to Plaintiff's unfair competition claim as part of Plaintiff's "pattern and practice" theory, which GLI claims is Plaintiff's "attempt to revive its dismissed negligence claim." *Id*. at 2, 4. Thus, GLI submits that because "pattern and practice" is not relevant to either copyright infringement or conversion, Plaintiff's third-party discovery "should be limited to the Asphalt Games." *Id*. at 4. GLI contends that Plaintiff has failed to give "even an indication whether a nonparty has objected to the Subpoenas." *Id*. at 2 n.4. However, GLI appears to have overlooked the fact that in a joint letter brief filed several months ago, Plaintiff stated it had already received objections from Tesla, Netflix, SmartRecruiters, and Lesna. *See Letter Br. of April 9, 2019* (dkt. 168) at 6 n.16.

Additionally, GLI has submitted that the dispute is properly in this court as compliance with the subpoenas is due at Plaintiff's counsel's office in California. *Id*. at 2. More importantly, GLI has also noted that Plaintiff "has not requested the majority of documents sought in the Subpoenas from GLI; and those that it has are subject to ongoing discovery disputes where the parties are in the process of setting a date to exchange documents . . . [and that] it is entirely premature to make requests through overbroad and burdensome third party subpoenas." *Id*.[1] GLI has committed to producing all relevant non-privileged information responsive to Plaintiff's third-party subpoenas, and GLI has further proposed that following the substantial completion of that process, Plaintiff can then seek relevant documents from subpoenaed third parties if such a need continues to exist at that time. *See Letter Br. of April 9, 2019* (dkt. 168) at 3 n.10.

---

[1] It should be noted that Plaintiff and GLI are positioned no differently now than they were in April of 2019, as they are still in the early stages of "discovery and investigation regarding their respective claims and defenses," and the Parties Joint Case Management Statement is not even due to be filed until September 27, 2019. *See Order* (dkt. 179).

***GLESE's Arguments:***

GLSE submits that Plaintiff's subpoenas have been a "wholly disingenuous" attempt to circumvent the limits of jurisdictional discovery as to GLSE, and that regarding the issue of standing, "Plaintiff deliberately misses the point." *Defs.' Mot.* (dkt. 203) at 5. Characterizing Plaintiff's argument that the subpoenas have independent relevance to GLI as "pure subterfuge" and lamenting "the latest of Plaintiff's improper tactics," GLSE argues that the breadth and wording of the subpoenas, constantly using the word, "Gameloft," where "Gameloft" is defined as including GLSE, operates to exceed the scope of jurisdictional discovery currently permitted as to GLSE. *Id.* at 6-7. Given that the subpoenas are all worded to include GLI as well as GLSE in their sweep, GLSE submits that the subpoenas themselves are "with limited and incidental exception, disingenuous subterfuge," and that "Plaintiff's real purpose is to discover currently barred information concerning GLSE." *Id.* at 8. Consequently, GLSE requests that the court either quash the subpoenas in their entirety, or to order them limited such as to "exclude all information concerning GLSE and/or limit them to third parties and [r]equests that have independent relevance to Plaintiff's claims or defenses against GLI." *Id.* Lastly, GLSE adds that "any allowed discovery should be subject to designation as confidential information subject to the Stipulated Protective Order on file in this action." *Id.*

***Plaintiff's Arguments:***

It should first be noted that Plaintiff's arguments appear to contemplate a dispute as to 15 rather than 17 subpoenas. *See id.* at 8 n.11 ("For 11 of the 15 subpoenas . . ."), *see also id.* at 11-13 (describing and defending 15 subpoenas). After complaining that Defendants "obstinately refused to engage in any meaningful discussion" about standing at any of the meet and confer sessions, Plaintiff submits that the broad scope of the subpoenas is necessary to prove "liability, damages, as well as to disprove many of GLI's defenses relating to the culprit's identity, such as license, innocent infringement, and indemnity." *Id.* at 8-9. As to GLI and GLSE's motions to quash the subpoenas, Plaintiff argues that "Defendants' conclusory assertion of confidential commercial information without providing the requisite description of such confidential information . . . is entirely insufficient to show prejudice, harm or how the existing protective order is insufficient to

4

protect their interests." *Id*. at 10.

    Plaintiff contends that its third-party subpoenas constitute relevant and proper discovery against GLI; and that specifically, the information is relevant to "allegations of willful misconduct," "GLI's 21 defenses," "purposefully ignor[ing] established Due Diligence standards," as well as being generally relevant to willful copyright infringement, conversion, and unfair competition. *Id*. Plaintiff then notes that "[t]he persistent conflation of the corporate separateness of GLI and GLSE is integral to the scope of third-party discovery," and then proceeds to ask a series of rhetorical questions about GLI. *Id.* at 11 (e.g., "Why is GLI innocent? . . . Is GLI's misconduct intentional?"). In any event, as to GLI's contention that the scope of discovery should be limited to the Asphalt Games series (containing the allegedly infringing products), Plaintiff argues that "whether GLI conducted any due diligence with other similar outsourced projects for other games is of the utmost importance on the issues of conscious disregard and willfulness, as well as unlawful pattern and practice of purposeful infringement and/or conversion, exposing GLI to punitive damages." *Id.* at 11. Plaintiff submits that "the extent of GLI's involvement with other third parties has a direct bearing on GLI's knowledge and control over the marketing, promotion and sale of ads and/or the infringing Asphalt games and its intent in committing the alleged misconduct." *Id*. Further, Plaintiff argues that discovery within this scope is not an attempt to bring about a "revival of the negligence claim," because "[t]he failure to conduct the industry standard due diligence, under FRE 401, is relevant to GLI's intentional disregard of Plaintiff's copyrights and/or proprietary assets." *Id*. Plaintiff opposes limiting the subpoenas to the Asphalt Games series because it has alleged that Defendants have a pattern and practice of such misappropriation as well as alleging intentional misconduct, which Plaintiff contends "mak[es] other games relevant in discovery." *Id.* at 12. Regarding GLI's contention that Plaintiff's third-party subpoenas are premature, in that most of the information requested can be obtained through Rule 26 discovery from GLI, Plaintiff has responded only to the extent of addressing a single third-party subpoena (to SmartRecruiters) by stating that the pertinent documents requested from GLI were either never in GLI's possession or that GLI has no obligation to produce any such information. *See Letter Br. of April 9, 2019* (dkt. 168) at 6. The balance of Plaintiff's arguments,

5

across the various letter briefs submitted in this matter, concern the relevance of the information sought, rather than any effort by Plaintiff to justify such broad third-party subpoenas at this stage of the case.

In the most recently filed joint letter brief, Plaintiff presents a chart providing the named party in each of 15 subpoenas, as well as a description and explanation as to the general relevance of each subpoena. *Defs.' Mot*. (dkt. 203) at 11-13. For the subpoena to Basecamp, LLC (a web-based project management tool used in the development of the Asphalt Games series), Plaintiff essentially seeks all documents referring or relating to "Gameloft" in any way (*see id.* at 16, GLI's list of 19 topics) and submits that this request is relevant to due diligence, as well knowledge of infringing activity (*id.* at 11). For the subpoenas to the Coca-Cola Company, the McDonald's Corporation, and Netflix, Inc., Plaintiff essentially seeks all documents related to any advertising campaigns "by Gameloft to you" or any documents referring or relating to "Gameloft" in any way (*see id.* at 16-17, GLI's list of 19 topics) and argues that the information is related to damages (*id.* at 11-12). Regarding the subpoenas to the Ford Motor Company, Tesla, Inc., and Mattel, Inc., Plaintiff again seeks any and all documents referring or relating in any way to "Gameloft," submitting that its request is relevant to damages and also "bears on the industry standard to conduct due diligence before outsourcing work." *Id.* at 12, 16-17. Similarly, concerning the subpoenas to Entertainment Software Association; UBM, LLC; the Mobile Marketing Association, Inc.; the French-American Chamber of Commerce San Francisco; Lesna, Inc.; SmartRecruiters, Inc.; AppNexus, Inc.; and SpotX, Inc., Plaintiff's repeated explanation for the relevance and necessity of the broad sweep of these subpoenas (*see id.* at 16-17, GLI's list of topics) is a statement to the effect that any "[f]ees paid [to these entities] may be deductible and relevant to damages." *Id.* at 12-13. Plaintiff concludes by asserting generally that "[t]he subpoenas seek discovery directly related to legitimate issues of culpability and intent." *Id.* at 13.

## DISCUSSION

To begin with, it should be noted that "[t]his Court is particularly concerned anytime enforcement of a subpoena imposes an economic burden on a non-party . . . [and that] [u]ndue burden to the non-party is evaluated under both Rule 26 and Rule 45." *Gonzales v. Google, Inc.*,

234 F.R.D. 674, 683 (N.D. Cal. 2006) (citing *Exxon Shipping Co. v. U.S. Dept. of Interior.*, 34 F.3d 774, 779 (9th Cir. 1994)). Federal Rule of Civil Procedure 45 governs discovery sought from non-parties by subpoena, and provides that a party may command a non-party to testify at a deposition and "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 26 allows a party to obtain discovery concerning any non-privileged matter that is relevant to any claim or defense. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The Rule 26 relevancy standard also applies to third-party subpoenas. *See Beinin v. Ctr. for Study of Popular Culture*, No. 06-cv-02298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007).

To determine whether a subpoena should be enforced, the court is guided by both Rule 45, which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the court must limit discovery if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i). A party or lawyer responsible for issuing and serving a subpoena therefore must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). In short, the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

In terms of subpoena enforcement in a different district, while Rule 45(d) draws distinctions between the issuing court and the compliance court in which enforcement of a third-party subpoena must be pursued, it is beyond dispute that the issuing court, under Rule 26, retains full control of the overall discovery process in the case at its own bar. Indeed, Rule 26 requires district courts to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Furthermore, because pretrial discovery has a potential for abuse (*see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35-36 (1984)) district courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

7

oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c) therefore confers broad discretion to district courts to decide when a protective order is appropriate, and what degree of protection is required. *See e.g.*, *Robinson v. Chefs' Warehouse*, 3:15-cv-05421-RS (KAW), 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (citing *Seattle Times*, 467 U.S. at 36). Thus, a district court's Rule-26 discretion can extend to, by way of example, forbidding certain discovery entirely, specifying the terms for discovery in general, forbidding inquiry into particular matters, or limiting the scope of discovery as to certain matters. *See* Fed. R. Civ. P. 26(c)(1)(A), (B), and (D); *see also Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 U.S. Dist. LEXIS 104398, at *7-8 (N.D. Cal. July 26, 2012); and, *Youngevity Int'l, Corp. v. Smith*, No. 16-cv-704 BTM (JLB), 2017 U.S. Dist. LEXIS 176282, at *15-16 (S.D. Cal. Oct. 23, 2017).

***GLSE's Motion to Quash:***

Resolving the subpoena dispute between GLSE and Plaintiff is relatively straightforward because Plaintiff and GLSE are still at the threshold stage of this case, currently conducting jurisdictional discovery in support of a motion to dismiss, and because Judge Chesney has already established a clear and narrow scope of permissible discovery. *See Order of February 12, 2018* (dkt. 94). After Plaintiff and GLSE found themselves in continued disagreement about the permissible scope of jurisdictional discovery, Judge Chesney once again informed the parties that discovery against GLSE was limited to the inquiry as to "whether GLSE, by operating its interactive website containing the allegedly infringing car models, directly targeted California residents." *Order of July 18, 2019* (dkt. 196) at 2. When disagreement persisted between Plaintiff and GLSE about the application of the scope of jurisdictional discovery to third-party subpoenas, Judge Chesney made clear that the established scope of jurisdictional discovery includes and applies to any subpoenas to be issued to third parties. *See Order of August 9, 2019* (dkt. 200). As described above, all of Plaintiff's subpoenas simply refer to "Gameloft," failing to distinguish between GLSE and GLI in any way; GLSE submits that this is an end-run around the limits of jurisdictional discovery imposed by Judge Chesney. Because Plaintiff continues to persist in challenging the separateness of GLSE and GLI, the court must note that Plaintiff's third party

8

subpoena practice does at least appear to resemble such an attempted end-run; particularly when Plaintiff continues to assert that "[t]he persistent conflation of the corporate separateness of GLI and GLSE is integral to the permissible scope of third-party discovery." *See Joint Letter Brief of August 16, 2019* (dkt. 203) at 11.

Accordingly, because none of the subpoenas described above make any effort to distinguish between GLI and GLSE (simply calling both, "Gameloft"); because none of the subpoenas are in any way limited to seeking information within the scope of permitted jurisdictional discovery; and because the subpoenas are overly broad and needlessly burdensome and costly to third parties, GLSE's motion to quash is **GRANTED**. Plaintiff may engage in third-party discovery practice, but only *within* the scope that has already been stated (dkt. 94), reiterated (dkt. 196), and re-stated (dkt. 200) by Judge Chesney. If Plaintiff does elect to engage in third-party discovery practice as to its jurisdictional dispute with GLSE, Plaintiff should take care to be able to explain, should a dispute arise, why any and all documents sought in third party discovery could not be obtained directly from GLSE. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (motions to quash plaintiff's third-party subpoena by defendant and the third-party) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

### *GLI's Motion to Quash:*

As mentioned above, GLI argues that Plaintiff "has not requested the majority of documents sought in the Subpoenas from GLI; and those that it has are subject to ongoing discovery disputes where the parties are in the process of setting a date to exchange documents . . . [and that] it is entirely premature to make requests through overbroad and burdensome third party subpoenas." *Letter Br. of April 9, 2019* (dkt. 168) at 2. While they are well beyond the threshold, Plaintiff and GLI are nevertheless still at a relatively early stage in the case. The parties are in the early phases of "discovery and investigation regarding their respective claims and defenses," the Joint Case Management Statement has not yet been filed, and it is not even due to be filed until September 27, 2019. *See Order* (dkt. 179). In the meantime, GLI has committed to producing all relevant non-privileged information responsive to Plaintiff's third-party subpoenas, and GLI has

9

further proposed that following the substantial completion of that process, Plaintiff can then seek relevant documents from subpoenaed third parties if such a need continues to exist at that time. *See* (dkt. 168) at 3 n.10. Plaintiff has offered no substantial or serious answer to this; instead, Plaintiff has pointed to a small subset of information relevant to a single subpoena that Plaintiff contends related to a rejected request for discovery. The court finds that Plaintiff's scattershot approach to the discovery process has put the proverbial cart before the horse, and is inconsistent with the orderly administration of the case. The court further finds that serving such broad subpoenas to third parties at such an early juncture in the case would subject those parties to unnecessary expense and undue burden to the extent that some or all of the necessary information can be secured from the other party to the action.

Once again, "[i]n determining whether [a] subpoena should be enforced, the Court is guided by not only Federal Rule of Civil Procedure 45(d)(3)(A)(iv) which protects subpoenaed parties from 'undue burden' but also Rule 26, which provides, *inter alia*, that a court must limit discovery if 'the discovery sought . . . is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Nidec Corp.*, 249 F.R.D. at 577 (citing Fed. R. Civ. P. 26(b)(2)(C)(i) and finding that "the vast majority of the discovery sought from TPGI is discovery obtainable from a source more direct, convenient, and less burdensome – namely, from Defendants."). Likewise, because the court finds that the vast majority of the discovery sought by Plaintiff's third party subpoenas can be obtained directly from the Defendant GLI, GLI's motion to quash Plaintiff's overly broad and burdensome subpoenas is **GRANTED**.

The Parties are ordered to meet and confer regarding discovery in light of the guidance provided herein.

**IT IS SO ORDERED.**

Dated: September 3, 2019

ROBERT M. ILLMAN
United States Magistrate Judge

10