United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GLASS EGG DIGITAL MEDIA,<br><br>Plaintiff,<br><br>v.<br><br>GAMELOFT, INC., et al.,<br><br>Defendants. | Case No.  17-cv-04165-MMC   (RMI)<br><br>**ORDER ON MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 223 |

Now pending is a motion for monetary sanctions filed by Defendant Gameloft SE ("GLSE") (dkt. 223). Plaintiff has responded (dkt. 228), GLSE has replied (dkt. 229), and the matter came on to be heard at oral argument before the undersigned on January 7, 2020 (dkt. 232). For the reasons described below, GLSE's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

This is an action for copyright infringement, conversion, and unfair competition. *See* Fourth Amend. Compl. (Dkt. 144). Plaintiff, Glass Egg Digital Media, a British Virgin Islands corporation, creates digital car models for use in the electronic game industry, while Defendant GLSE, a French corporation, and Defendant Gameloft Inc. ("GLI"), a Delaware corporation, are engaged in the business of producing electronic games. *See id.* at 2-3. On February 9, 2018, the Parties appeared before Judge Chesney (*see* dkt. 98) to present arguments pertaining to GLSE's motion to dismiss (dkt. 63) for lack of personal jurisdiction. Thereafter, on February 12, 2018, Judge Chesney entered an order that granted in part and deferred ruling in part on the motion to dismiss, while allowing Plaintiff leave to conduct jurisdictional discovery pertaining to the size of GLSE's business in California, as well as the identity of the entity or entities that operate(s) the

1   Gameloft website accessible to users within California. *See* Order of February 12, 2018 (dkt. 94)

2   (hereafter, "Jurisdictional Discovery Order") at 1-2.

3   On February 6, 2018, Plaintiff filed an *ex parte* motion seeking a temporary restraining

4   order as well as an order to show cause why a preliminary injunction should not issue – both

5   requests boiled down to Plaintiff's desire to restrain and enjoin Defendants from making any

6   changes to their website such that the evidentiary value perceived by Plaintiff in a particular

7   incarnation of that website might be preserved. *See* Pl.'s Mot. of February 6, 2018 (dkt. 91) at 5-8.

8   The same day, Judge Chesney entered an order denying preliminary injunctive relief, and to the

9   extent that Plaintiff sought an order precluding Defendants from spoliation of material evidence,

10  Judge Chesney referred "the motion, as well as all further discovery matters" to the undersigned

11  for resolution. *See* Order of February 6, 2018 (dkt. 92) at 1. That dispute was thereafter presented

12  to the undersigned by way of a joint letter brief (dkt. 111) filed on March 12, 2018. Therein,

13  Plaintiff argued that changes made to Defendants' website in late 2017 and early 2018 were

14  tantamount to evidentiary spoliation and sought an order precluding Defendants from making any

15  changes to their website lest Plaintiffs "suffer immediate and irreparable harm." *Id*. at 1-2.

16  Defendants' portion of that letter brief detailed the burden associated with the effective freezing of

17  the website while making clear that Defendants were aware of their evidence preservation

18  obligations and that prior iterations of the website remain available for discovery. *Id*. at 3-5. A

19  hearing was convened on the same day and Plaintiff's request for a TRO to effectively freeze

20  Defendants' website was denied on grounds that the availability of prior iterations of the website

21  for discovery purposes rendered the hamstringing of Defendants' website wholly unnecessary (*see*

22  dkt. 112).

23  More than a year later, in early April of 2019, the Parties presented three discovery

24  disputes through a series of joint letter briefs filed in succession. The first letter brief began by

25  noting that two additional briefs, which the parties had agreed to present to the undersigned, were

26  forthcoming; one dealing with a dispute about the propriety of a number of subpoenas sent to third

27  parties by Plaintiff (hereafter, "the subpoena dispute"), and the other was a dispute as to the scope

28  of permissible jurisdictional discovery (hereafter, "the discovery dispute") pertaining to GLSE

United States District Court
Northern District of California

2

United States District Court
Northern District of California

under the Jurisdictional Discovery Order. *See* Letter Br. of April 5, 2019 (dkt. 161). Substantively, in the first letter brief, GLSE and GLI sought an order extending the response dates for Plaintiff's third-party subpoenas until after the resolution of the Parties' disputes about the scope of jurisdictional discovery and the propriety of the subpoenas. *Id*. at 2-4. As GLSE put it, Plaintiff delayed a full year before serving the subpoenas in question, and only did so when GLSE indicated that it would only produce information in accordance with GLSE's interpretation of the Jurisdictional Discovery Order. *Id*. at 3. The same day, the undersigned entered an order extending the deadline for third parties to respond to Plaintiff's subpoenas until April 9, 2019, while also directing Defendants to file any motions to quash by the same date. *See* Order of April 5, 2019 (dkt. 164).

*The Discovery Dispute:*

The Parties then filed the first of their two promised letter briefs, attempting to set forth a discovery dispute pertaining to "the scope" of the Jurisdictional Discovery Order, however, the letter brief appeared convoluted for a number of reasons. *See generally* Letter Br. of April 5, 2019 (dkt. 165). First, the Parties appeared to have worked themselves into such depths of disagreement that they disputed the very nature of the issues presented in the letter brief, as well as disputing which judge should decide those issues, and which party might be considered the movant. *Id*. Second, what seemed to be missing from this letter brief, was an enumeration of exactly which items of discovery had been sought and declined, and for what reasons. *Id*. Each side spoke only in generalities; for example, Plaintiff stated that the Jurisdictional Discovery Order did not limit discovery of contacts related to the claims to establish that GLSE purposefully availed itself such that the exercise of jurisdiction would be proper, and that the limits expressed therein did not apply to discovery sought to be obtained from GLI or from third parties. *Id*. at 1. Similarly, GLSE's portion of this letter brief was equally unhelpful in that rather than enumerating specific items of discovery in dispute, GLSE focused on characterizing the letter brief itself as a "fallacious guise of a [] dispute" where Plaintiff sought a *de facto* reconsideration of a district judge's order by the undersigned, and noting that "the intent of the jurisdictional discovery order [] is uniquely known to Judge Chesney," and that Plaintiff's "pattern of disregarding law and orders of the Court

[] is also known to Judge Chesney." *Id*. GLSE did mention in this letter brief that in March and April of 2018, Plaintiff served GLSE with 410 written discovery requests, and that GLSE had "objected to *many* of the discovery requests as, among other things, exceeding the scope of discovery allowed under the February 12 Order." *Id*. at 2 (emphasis added). GLSE then noted that it had informed Plaintiff that GLSE "would produce certain documents subject to a Stipulated Protective Order," adding also that GLSE objected to Plaintiff's issuance of subpoenas and to any discovery response from GLI that would exceed the scope of jurisdictional discovery permitted as to GLSE. *Id*. Further, GLSE and GLI noted that "[t]his is the latest instance of Plaintiff ignoring the rules and directions of the court, with which Judge Chesney is familiar." *Id*. at 4. Defendants added that, while Judge Chesney had denied GLI's previous motion for sanctions against Plaintiff for reportedly threatening a witness with possible criminal charges in Vietnam, Plaintiff's counsel acknowledged he had committed the accused acts . . . [and] Judge Chesney is familiar with this history." *Id*. As to the portion of the letter brief authored by Plaintiff, it did nothing to abate the confusion as to what specific items of discovery were in dispute and why; namely, because Plaintiff only couched the dispute over several hundred items of discovery in sweeping and general terms as well. *See id*. at 4-6.

Several days later, on April 9, 2019, the Parties filed the second of their promised letter briefs pertaining to eleven subpoenas served by Plaintiff on various third parties as well as six notices of intent to serve subpoenas on additional third parties, all of whom are involved to one degree or another with Defendants' business interests. *See* Letter Br. of April 9, 2019 (dkt. 168) at 1. GLI moved to quash or limit the subpoenas on a number of grounds including that Plaintiff had not requested a majority of the documents from GLI, or that some of the subpoenas encompassed documents that were the subject of ongoing discovery disputes, but that in any event it was "premature to make requests through overbroad and burdensome third-party subpoenas." *Id*. at 2-3. Likewise, GLSE sought relief from these subpoenas because they failed to distinguish between GLI and GLSE, and instead sought essentially all information related to "Gameloft" in the possession of a number of trade associations and other corporations such as Tesla, Netflix, Coca-Cola, Ford, Mattel, and McDonald's. *Id*. at 4. Plaintiff's portion of this letter brief did not address

4

United States District Court
Northern District of California

1    GLSE's argument that the subpoenas were an "end run" around the limits on discovery pertaining

2    to GLSE, as set forth in the Jurisdictional Discovery Order. *See id*. at 5-7. Instead, Plaintiff

3    contended that both GLI and GLSE lacked standing to move to quash any of the subpoenas, that

4    the subpoenas were relevant and proportional to the needs of the case, and that Plaintiff could

5    demonstrate that the requests for documents already propounded on GLI covered the subpoena

6    requests. *Id*. at 5, 6-7.

7            Thereafter, on April 15, 2019, the undersigned entered an order addressing both the

8    subpoena dispute and the discovery dispute. *See* Order of April 15, 2019 (dkt. 169). Beginning

9    with the discovery dispute between Plaintiff and GLSE (set forth in the Letter Br. of April 9, 2019

10   (dkt. 168)), the court ordered the Parties to file separate briefs describing each rejected discovery

11   request and explaining why that request does, or does not, fall within one of the two categories

12   permitted by the Jurisdictional Discovery Order. *See* Order of April 15, 2019 (dkt. 169) at 2. The

13   reason for this was because neither Party's portion of the letter brief had specified the discovery

14   requests that were in dispute, with Plaintiff focusing its arguments on what perhaps *should have*

15   *been* the scope of jurisdictional discovery under *Maverix v. Brand Technologies*, 647 F.3d 1218

16   (9th Cir. 2011), while GLSE argued, among other generally couched arguments, that it had

17   objected to "many" of the discovery requests and that it had located and would produce certain

18   other documents. *See* Order of May 10, 2019 (dkt. 173) at 2. As to the motions to quash or limit

19   Plaintiff's third-party subpoenas, the court deferred ruling on those issues until after the resolution

20   of the discovery dispute, staying compliance with the subpoenas in the meantime. *See* Order of

21   April 15, 2019 (dkt. 169) at 2.

22           Following the order for Plaintiff and GLSE to submit separate briefing that would

23   individually address each disputed discovery request within the framework set forth in the

24   Jurisdictional Discovery Order, the Parties once again filed briefing that rendered disposition

25   unnecessarily difficult. Plaintiff's brief once again failed to specify the nature of each discovery

26   request that remained in dispute, let alone explain why each item fell within the framework

27   established. Instead, Plaintiff's brief included an exhibit containing a 20-page chart with a several-

28   hundred-item list of discovery requests and expected the court to sift through the entirety to find

and sort the ones that remained the subject of an active dispute. *See* App'x. to Pl.'s Br. (dkt. 171-19) at 1-20. As for the brief itself, Plaintiff formulated three questions of its own design and then proceeded to answer them. The questions that were asked and answered by Plaintiff touched on the following topics: (1) the proper test for specific jurisdiction and how that might impact the scope of jurisdictional discovery; (2) in light of this discussion, Plaintiff then opined on the permissible scope of jurisdictional discovery as allowed by Judge Chesney; and lastly, (3) Plaintiff discussed whether or not limitations on jurisdictional discovery that overlap with claims and defenses could act as a bar to evidence that is also related to claims and defenses. *See* Pl.'s Br. (dkt. 171) at 4.

On the other hand, while it was more responsive to the Order of April 15, 2019, GLSE's brief still also followed a thematic, rather than numeric or consecutive, approach to presenting the discovery requests that were the subject of the dispute. *See generally* GLSE's Br. (dkt. 172). GLSE's brief also included an attachment of nearly 700 pages, in the middle of which were GLSE's original responses to Plaintiff's several hundred requested items. *See* GLSE's Br. Exh. (dkt. 172-1) at 104-555. Meanwhile, in the body of its brief, while making largely categorical objections to the effect that large portions of the requested discovery fell outside of the parameters set forth in the Jurisdictional Discovery Order, GLSE also noted: that certain discovery requests had been rendered moot; that some requests for admission had already been addressed; that certain documents were unable to be located; that these facts had been communicated to Plaintiff; and, that GLSE had expressed a willingness to produce certain other documents imminently or in due course. *See* Def. GLSE's Br. (dkt. 172) at 11-12, 13-14, 16-18, 19, 20. In the end, this combination of briefing left the court saddled with the task of having to dig through each Party's thematically-arranged briefs in an effort to determine which discovery requests remained in dispute, and then compare the pair of thematic briefs to the voluminous pair of numerically-arranged exhibits to fish for each Party's argument as to each item of requested and rejected discovery. *See* Order of May 10, 2019 (dkt. 173) at 2-3. Accordingly, Plaintiff and GLSE were ordered to prepare a joint brief that would strictly adhere to a prescribed format that was calculated to avoid the obfuscation of the matters actually in dispute – first, GLSE would produce a list of discovery requests that were

United States District Court
Northern District of California

6

moot, or that were unable to be found, or that do not exist, or that had already been or would be produced; second, Plaintiff would follow with a list of any other requested discovery items coupled with a 1-sentence explanation for why such discovery was encompassed by the Jurisdictional Discovery Order; and third, GLSE would follow with a matching list of those same items but explaining why each request was not encompassed by the Jurisdictional Discovery Order. *Id.* at 3.

Thereafter, Plaintiff and GLSE filed a joint letter brief that adhered to the prescribed format, which rendered the dispute more amenable to resolution. *See generally* Letter Br. of May 24, 2019 (dkt. 176). At the heart of this particular discovery dispute – essentially Plaintiff's motion to compel discovery from GLSE – was a fundamental disagreement over the definition of the word "size," as used in the Jurisdictional Discovery Order. *See* (dkt. 94) (Plaintiff was granted leave to conduct jurisdictional discovery "pertaining to [] the size of Gameloft SE's business in California . . ."). Where GLSE contended that "size" can only refer to the sales that gave rise to Plaintiff's infringement claim; Plaintiff took the position that "size" includes all details relating to nearly every facet of GLSE's existence, including the extent and commercial value of the market and the viewer base, GLSE's commercial partners, its promotional efforts, and so on and so forth. *See* Order of June 17, 2019 (dkt. 178) at 2. Upon review of the transcript of the hearing on February 8, 2018 (dkt. 172-1), it appeared to the undersigned that neither Party's arguments had wholly convinced Judge Chesney to rule entirely in either Party's favor, but that Plaintiff and GLSE had each nevertheless proceeded as though they had carried the day. Thus, the undersigned found that Plaintiff appeared to have been proceeding as though Judge Chesney did not reject its argument that jurisdictional discovery should encompass the entirety of GLSE's "business model," while GLSE appeared to be of the opinion that Judge Chesney had not rejected its argument that discovery should be limited to the particular California sales that gave rise to the claims at the heart of this case. *See* Order of June 17, 2019 (dkt. 178) at 4.

In venturing to reconcile these differing interpretations of the word "size" as it related to GLSE's business in California, the undersigned began by noting that neither Party had moved for clarification or reconsideration of the Jurisdictional Discovery Order. *Id.* at 5. Instead, it appeared

to the undersigned that Plaintiff had demanded discovery of GLSE's entire "business model," and that GLSE had objected to nearly every request on grounds that they did not relate to a California sale that may have given rise to the claims at the heart of the case. *Id.* at 4. To reconcile the Parties' differing interpretations of the word "size," as used in the Jurisdictional Discovery Order, the undersigned elected to settle on the common understanding of the term when used in the business context, finding that it was neither limited to sales revenue, nor was it so broad as to include virtually every characteristic of the entirety of a company's operations. *Id.* The undersigned noted that "business size" in a particular market such as California could include the amount of capital invested there, the number persons employed there, the company's income from that market, the number of buildings or other assets present within that market, and the volume of output or the overall productive capacity within that market. *Id.* Accordingly, operating with this understanding, the undersigned proceeded to grant in part, and deny in part, Plaintiff's motion to compel several-hundred individual discovery requests for various reasons, such as finding that some of the requests fell under the business model rubric, or that some requests sought to ascertain GLSE's global size, or, in other cases, that they were rationally related to determining GLSE's size in California. *Id.* at 5-8. As for the Parties' subpoena dispute, because GLI and GLSE had not yet identified the exact nature of their claims of personal right or privilege with respect to the documents requested from third parties by Plaintiff's subpoenas, or explained why those rights would not be adequately protected under the existing protective order, or explained the grounds for specified objections as to each subpoena, the Parties were ordered to meet and confer and then to file a joint letter brief explaining their respective positions in these regards. *Id.* at 10. Shortly thereafter, on July 1, 2019, Plaintiff and GLSE both appealed to Judge Chesney and sought relief from the Order entered on the discovery dispute by the undersigned. *See* Def.'s Mot. (dkts. 182, 184); Pl.'s Mot. (dkts. 183, 185).

On July 18, 2019, Judge Chesney entered an Order that made it clear that neither Plaintiff nor GLSE had correctly interpreted the Jurisdictional Discovery Order. *See* Order of July 18, 2019 (dkt. 196) (hereafter, the "Second Jurisdictional Discovery Order"). In doing so, Judge Chesney noted that it was regrettable that Plaintiff and GLSE had not sought clarification regarding the

8

United States District Court
Northern District of California

1   Court's intent when using the word "size," adding that "the Court's intention was not to use such

2   phrase in quite as broad a manner as it might otherwise be used . . ." *Id*. Accordingly, Judge

3   Chesney found that 29 of "[Plaintiff's] requests seeking information as to the revenue GLSE

4   received from the use of its website by California residents, and from entities who directed their

5   advertisements on GLSE's website to California residents . . . fall within the scope of the February

6   12 Order, and that the remaining disputed requests do not fall within the scope of said order, as

7   they seek information concerning revenue sources and activities that, regardless of their location,

8   are unrelated to the allegedly infringing conduct." *Id*. at 2-3. For this reason, Judge Chesney found

9   that 48 of Plaintiff's discovery requests that had been allowed by the undersigned we due to be

10  disallowed. *Id*. Otherwise, GLSE's and Plaintiff's motions for relief were denied. *Id*. at 3.

11  *The Subpoena Dispute:*

12      The core of the Parties' subpoena dispute involves a backdrop which has its roots in

13  arguments unsuccessfully advanced by Plaintiff more than two years ago. On November 9, 2017,

14  GLI moved for dismissal of all claims against it in Plaintiff's FAC. *See* GLI's Mot. (dkt. 40). In

15  responding to that Motion, Plaintiff argued that "GLI fails to consider the allegations that it uses

16  the same trade name, the same logo and the same website as its parent; and therefore, is the alter

17  ego" for GLSE, "such that there is no distinction between the companies." *See* Pl.'s Opp. (dkt. 45)

18  at 14. In the course of granting in part and denying in part GLI's Motion, Judge Chesney rejected

19  this argument. *See* Order of January 22, 2018 (dkt. 81) at 6-7. Specifically, Judge Chesney rejected

20  Plaintiff's contention that it had pleaded the fact that GLI and GLSE were not separate entities,

21  explaining that courts are not bound to accept as true something that is a legal conclusion couched

22  as a factual allegation. *Id*. at 7. In the end, in January of 2018, Plaintiff's argument as to the non-

23  separateness of GLI and GLSE was rejected in no uncertain terms. *Id*. ("Glass Egg's wholly

24  conclusory allegation that Gameloft USA is "controlled by" Gameloft France adds nothing to the

25  equation . . . [and] Glass Egg has failed to address, let alone plead any facts to support a finding . .

26  . that an inequitable result would follow if the entities' separate corporate forms were

27  recognized.").

28      In any event, after the above-described resolution of the discovery dispute between

Plaintiff and GLSE, the subpoena dispute remained pending. Given the final resolution of the discovery dispute, the Parties jointly requested clarification from Judge Chesney as to the effect of the Second Jurisdictional Discovery Order on the pending subpoena dispute. *See* Joint Mot. (dkt. 199) at 3. In response, Judge Chesney entered an Order informing the Parties that "it was not the Court's intent to exclude from the discovery afforded, or exempt from the limitations placed thereon, jurisdictional discovery requests directed to third parties." *See* Order of August 9, 2019 (dkt. 200) at 1. Following a meet and confer session, the Parties presented their subpoena dispute in a joint letter brief, filed on August 16, 2019 (dkt. 203), which was responsive to the directions provided by the undersigned in the Order of June 17, 2019. Therein, Plaintiff presented a chart providing the named party in each of what was now 15 subpoenas that were still at issue, as well as a description and explanation as to the general relevance of each subpoena. *See* Letter Br. of August 16, 2019 (dkt. 203) at 11-13. For the subpoena to Basecamp, LLC (a web-based project management tool used in the development of the Asphalt Games series), Plaintiff essentially sought all documents referring or relating to "Gameloft" in any way (*see id.* at 16), arguing that this request was relevant to due diligence, as well as knowledge of infringing activity (*id.* at 11). For the subpoenas to the Coca-Cola Company, the McDonald's Corporation, and Netflix, Inc., Plaintiff essentially sought all documents related to any advertising campaigns "by Gameloft to you" or any documents referring or relating to "Gameloft" in any way (*see id.* at 16-17); Plaintiff argued that the information was related to damages (*id.* at 11-12). Regarding the subpoenas to the Ford Motor Company, Tesla, Inc., and Mattel, Inc., Plaintiff again sought any and all documents referring or relating in any way to "Gameloft," submitting that the request was relevant to damages and to "the industry standard to conduct due diligence before outsourcing work." *Id.* at 12, 16-17. Concerning the subpoenas to the Entertainment Software Association; UBM, LLC; the Mobile Marketing Association, Inc.; the French-American Chamber of Commerce San Francisco; Lesna, Inc.; SmartRecruiters, Inc.; AppNexus, Inc.; and SpotX, Inc., Plaintiff's explanation for the relevance and necessity of the broad sweep of these subpoenas (*see id.* at 16-17) was the repeated statement that any "[f]ees paid [to these entities] may be deductible and relevant to damages." *Id.* at 12-13. Plaintiff concluded by asserting generally that "[t]he subpoenas seek discovery directly

related to legitimate issues of culpability and intent." *Id*. at 13.

GLSE argued that the wording and breadth of the subpoenas operated as an end-run around the limits of jurisdictional discovery established in this case because Plaintiff's subpoenas sought essentially all information in the possession of various third parties, such as Ford and Coca-Cola, relating to "Gameloft," while defining that term as including GLSE as well as GLI. *See id*. at 4. Meanwhile, Plaintiff justified the broad sweep of the language used in the subpoenas by stating that "[t]he persistent conflation of the corporate separateness of GLI and GLSE is integral to the scope of third-party discovery." *See* Letter Br. of August 16, 2019 (dkt. 203) at 11.

It appeared that Plaintiff was still clinging to the notion that "the corporate separateness of GLI and GLSE" was up for debate, which was not an argument that could be taken seriously given that nearly two years earlier, Judge Chesney had clearly rejected it. *See* Order of January 22, 2018 (dkt. 81) at 6-7. Because discovery as to GLSE was at a threshold stage and limited to personal jurisdiction as set forth in Judge Chesney's Orders (dkts. 94, 196, 200), and because all of Plaintiff's subpoenas simply referred to "Gameloft" and failed to distinguish between GLSE and GLI in any way, GLSE argued that the subpoenas were an attempt to circumvent these limits on discovery. *See* Letter Br. of August 16, 2019 (dkt. 203) at 6. Plaintiff's only answer to this was independently unpersuasive, as well as having been previously argued and rejected. Thus, the undersigned found that because the subpoenas were not in any way limited to seeking information within the scope of permitted jurisdictional discovery, and because they were overly broad and needlessly burdensome and costly to third parties, GLSE's motion to quash was due to be granted. *See* Order of September 3, 2019 (dkt. 204) at 9.

Additionally, GLI had argued that third-party discovery practice, particularly of such broad sweeping scope, was premature and unwarranted because Plaintiff had failed to request some portion of those documents from GLI itself, or that the requested documents were the subject of ongoing disputes, and that GLI had committed to producing all relevant non-privileged information responsive to all of Plaintiff's subpoenas. *See* Letter Br. of April 9, 2019 (dkt. 168) at 2, 3 n.10. Further, GLI submitted that following the substantial completion of document exchange between Plaintiff and GLI, Plaintiff could then seek relevant documents from third parties if any

United States District Court
Northern District of California

1    such need would continue to exist at that time. *Id*. at 3 n.10. In response, Plaintiff offered no

2    substantial answer other than to point to a small amount of information relevant to a single

3    subpoena that Plaintiff argued was related to a rejected request for discovery; consequently, the

4    undersigned found that Plaintiff had taken a scattershot approach to the discovery process. *See*

5    Order of September 3, 2019 (dkt. 204) at 10. Rather than to challenge GLI's reported rejection of

6    its discovery requests, Plaintiff had instead served a number of sweeping subpoenas on various

7    entities associated with GLI. *Id*. Accordingly, finding that the vast majority of the discovery

8    sought by Plaintiff's third-party subpoenas can be obtained directly from GLI, the undersigned

9    independently granted GLI's motion to quash the subpoenas as unnecessarily burdensome and

10   overly broad. *Id*.

11           Thereafter, on September 18, 2019, Plaintiff filed a motion seeking relief, in one of several

12   forms, from the resolution of the subpoena dispute that was set forth in the Order of September 3,

13   2019 (dkt. 204). *See* Pl.'s Mot. (dkt. 206) at 2. The following week the subpoena dispute was

14   concluded when Judge Chesney summarily denied Plaintiff's motion for modification or

15   clarification of the Order of September 3, 2019. *See* Order of September 25, 2019 (dkt. 208) at 1.

16   *GLSE's Motion for Fees and Sanctions*:

17           On October 9, 2019, GLSE moved for sanctions and fees pursuant to Fed. R. Civ. P. 37

18   and 45, seeking $69,839.62 for having to oppose Plaintiff's motion to compel discovery responses,

19   as well as $127,033.75 for having to move to quash Plaintiff's third-party subpoenas, and

20   $19,216.25 for expenses incurred as a result of bringing the instant motion for sanctions. *See*

21   GLSE's Mot. (dkt. 212) at 2. The motion was referred to the undersigned on October 11, 2019

22   (dkt. 213), and Plaintiff filed a response (dkt. 216) on October 23, 2019. At this time, while an

23   unrelated series of discovery disputes were pending between Plaintiff and GLI (*see* Letter Br. of

24   October 31, 2019 (dkt. 220) and Order of November 5, 2019 (dkt. 221)), the undersigned found

25   that GLSE's Motion for Sanctions and Fees (dkt. 212) was due to be denied without prejudice. *See*

26   Order of November 13, 2019 (dkt. 222) at 3. Specifically, the undersigned found that "[b]ecause

27   GLSE's Motion fails to set forth a particularized itemization of the allegedly unnecessary

28   expenses it has incurred, or a statement of the hourly rate(s) claimed, or an appropriate

United States District Court
Northern District of California

12

United States District Court
Northern District of California

justification for such rate(s), the Motion is both non-compliant with Local Rule 37-4(b)(3), and the Motion is such that this court is unable to determine whether the lump sums claimed are reasonable under the circumstances." *Id*. at 2. On December 2, 2019, GLSE re-filed the motion, which was attended with more details; additionally, GLSE's re-filed motion asked for different amounts. Specifically, GLSE now sought $76,675.20 in expenses for having to oppose the motion to compel discovery responses, $81,748.40 in attorney's fees for having to move to quash the third-party subpoenas, and $20,000.00 incurred in preparing and filing the re-filed motion for sanctions and fees. *See* GLSE's Mot. (dkt. 223) at 2. Plaintiff responded in opposition (dkt. 228) on December 17, 2019, GLSE then filed its reply (dkt. 229), and the Parties appeared before the undersigned for oral argument on January 7, 2020 (dkt. 232).

## DISCUSSION

When the Parties first presented their discovery and subpoena disputes, the undersigned observed in April of 2019 that "the Parties appear to have left no stone unturned in seeking out things about which to disagree . . . [and that] the dispute about the permissible scope of jurisdictional discovery has somehow morphed to include disputes about which judge should decide the matter; and, there is even disagreement about who would be the moving party." *See* Order of April 15, 2019 (dkt. 169) at 1 (citing Letter Br. of April 5, 2019 (dkt. 165) at 1). In the ten months that have passed since the presentation of these disputes, simple disagreements have devolved into name-calling and disparaging insinuation. *See generally* GLSE's Mot. (dkt. 223); Pl.'s Opp. (dkt. 228). For example, in the pending motion for sanctions, GLSE has characterized Plaintiff's subpoena practice as "unremitting, recalcitrant, bad-faith maneuvering." GLSE's Mot. (dkt. 223) at 12. Additionally, GLSE has described Plaintiff's behavior in this litigation as "absurd" and "unprincipled" (*id*. at 13), or, "[a]nother recent example of Plaintiff's bad faith and intransigence" (*id*. at 14 n.1), as well as accusing Plaintiff of including an "utter misrepresentation" in a draft Case Management Conference Statement (*id*.). As to Plaintiff's counsel's suggestion that third-party discovery was still permissible "on limited jurisdictional topics," GLSE submits that "Plaintiff peddled this falsehood even to the Court itself." *Id*. In the end, GLSE concludes that "Plaintiff's tactics seem designed to pressure GLSE into submitting to

United States District Court
Northern District of California

1    jurisdiction through baseless discovery and motion practice." *Id*. at n.2.

2         In turn, Plaintiff accuses GLI and GLSE of improperly using continuances and requests for

3    extensions of time, as well as otherwise colluding with one another to delay and derail the

4    litigation. *See* Pl.'s Opp. (dkt. 228) at 10-15. Specifically, Plaintiff suggests that GLI's filing of

5    motions to dismiss, or motions for extra time, are little more than "a ruse to protract discovery."

6    *Id*. at 12; *see also id*. at 20 n.15 ("It is undeniable that Defendants are coordinating efforts to

7    thwart the production of relevant documents."). In suggesting that GLI and GLSE have "worked

8    in tandem to bombard and/or overwhelm Glass Egg," Plaintiff contends that all of GLI's prior

9    three motions to dismiss "were clear attempts to divert Plaintiff's resources . . . and flush out the

10   issues for GLSE." *Id*. at 13-14. Plaintiff also attributes to GLSE's counsel, "a total disregard for

11   the integrity of making accurate and *factual* declarations." *Id*. at 29 (emphasis in original).

12   Plaintiff then asked the court to strike GLSE's re-filed motion for sanctions because it is longer

13   than ten pages and failed to include tables of contents or authorities (*id*. at 26), or to deny it and

14   instead to "consider sanctions against GLSE as it has repeatedly laid false accusations and half-

15   truths . . . [because] Plaintiff stands ready to file its own sanctions motion against GLSE for filing

16   these two [sanctions] motions." *Id*. at 29. Then, in its reply brief, GLSE adds a few more

17   characterizations of Plaintiff as "aggressive and relentless," while contending that "Plaintiff's

18   opposition to this Motion is chockful of false and misleading statements." GLSE's Reply Br. (dkt.

19   229) at 4. Finally, letting no blow go unanswered, GLSE states that if it is to be held to account for

20   the failure to include a table of contents or table of authorities in its re-filed motion, then so too

21   should Plaintiff be held to account because "Plaintiff filed its opposition at midnight on December

22   17, one minute after the deadline [], which it then re-filed at 12:02 a.m., three minutes after the

23   deadline [], and then for a third time at 4:39 p.m., over sixteen hours after the deadline . . ." *Id*. at

24   13 n.1. Thus, what began as a seemingly simple dispute about the meaning of the word "size" in

25   the Jurisdictional Discovery Order, gradually devolved into arguments about such things as a

26   missing table of contents and the timing of a document that may have been filed "one minute after

27   the deadline."

28         Judge Friedman once observed that in the modern era, "the legal profession has . . . opened

United States District Court
Northern District of California

its doors to the 'Rambo litigator' which has spawned a generation of lawyers, too many of whom think they are more effective when they are more abrasive. I am here to tell you that neither my colleagues on the Bench nor I agree with that view."[1] Likewise, this Court has always been committed to the highest standards of professionalism and expects those standards to be observed by the lawyers who practice here. For starters, the local rules of this Court require "[e]very member of the bar of this Court and any attorney permitted to practice in this Court . . . [to] [p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice." *See* Civil L.R. 11-4(a)(4). Second, this Court's Professionalism Guidelines mandate that "[a] lawyer should at all times be civil, courteous, and accurate in communicating with opponents or adversaries, whether in writing or orally."[2] Additionally, "[w]ritten materials submitted to the court should always be factual and concise, accurately state current law, and fairly represent the parties' positions without unfairly attacking the opposing party or opposing counsel."[3]

Keeping in mind that litigation is inherently adversarial, it should nevertheless be noted that the Parties in this case have descended into such acrimony that a simple pair of disputes about discovery and subpoena practice have ballooned into a protracted back-and-forth that has lasted for nearly a full year, that has impeded the progression of the case, and that has brought the Parties to the point of attacking each other in ways that would be unbecoming for attorneys in any setting, let alone in court filings. In all of the letter briefs and filings described above, a few of the points raised by GLSE were compelling, others had less substance; likewise, some of Plaintiff's explanations and attempts at justification were more plausible and meritorious than others – however, the task of formulating sanctions fairly becomes more difficult in cases where "two

---

[1] *See Fostering Civility: A Professional Obligation*, Remarks by the Hon. Paul L. Friedman, United States District Judge for the District of Columbia, American Bar Association Section of Public Contract Law, Friday, March 13, 1998, Annapolis, Maryland, available at https://www.americanbar.org/groups/public_contract_law/resources/significant_documents/fostering_civility/ (last checked 02/25/2020 at 9:33 am).

[2] *See* Guidelines for Professional Conduct in the United States District Court for the Northern District of California at § 8. (available at: https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/).

[3] *See id*. at § 7.

15

experienced senior litigators surrounded by the usual support troops went after each other hammer and tongs from the first day of the litigation to the last." *See e.g., Zink Commc'ns v. Elliott*, 141 F.R.D. 406, 408 (S.D.N.Y. 1992) (denying request for sanctions). In any event, counsel for the Parties are reminded of their obligations to avoid unnecessarily strident language in pleadings, to avoid discourtesies directed at one another, to avoid unfairly attacking one another, and, to otherwise maintain an appropriate level of decorum in their filings.

### *The Discovery Dispute*

Pursuant to Fed. R. Civ. P. 37(a)(5)(C), GLSE seeks $76,675.20 for having to oppose Plaintiff's motion to compel discovery. *See* GLSE's Mot. (dkt. 223) at 2, 10. As GLSE sees it, out of Plaintiff's 410 disputed discovery requests, 63% were resolved in GLSE's favor by the undersigned, and when both parties sought relief from Judge Chesney, the ultimate share of discovery requests resolved in GLSE's favor rose to 75%. *Id*. at 10-11. GLSE then submits that it incurred a total of $117,162.10 in attorneys' fees in connection with the discovery dispute, which is comprised of $93,303.10 in fees leading up to the decision by the undersigned, and $23,859.00 in fees incurred in the course of seeking review from Judge Chesney. *Id*. at 11. GLSE requests a sanctions award apportioned as such: 63% of the $93,303.10 in attorneys' fees incurred leading up the decision by the undersigned, or $58,780.95; and, 75% of the $23,859.00 in attorneys' fees incurred in seeking review from Judge Chesney, or $17,894.25. *Id*. Thus, the total amount requested by GLSE in connection with the discovery dispute is $76,675.20. *Id*.

Rule 37(a)(5) of the Federal Rules of Civil Procedure governs the payment of expenses when motions to compel discovery are granted or denied; and, in cases where "the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). On its face, Rule 37(a)(5)(C)'s language is discretionary (the court *may* apportion reasonable expenses); further, the question of what may constitute reasonable expenses is also a matter for the court's discretion. *See e.g.*, *Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc*. 233 F.R.D. 648, 654 (C.D. Cal. 2006). Additionally, Rule 37(a)(5)(A) provides that a court must not award expenses if, among other things, "the opposing party's nondisclosure, response, or objection was substantially

1    justified; or . . . [if] other circumstances make an award of expenses unjust." Fed. R. Civ. P.

2    37(a)(5)(A).

3        The undersigned finds that this case presents a number of circumstances that would make

4    an award of expenses unjust. The Jurisdictional Discovery Order was entered by Judge Chesney

5    on February 12, 2018. More than a year later, and without either Party seeking clarification from

6    Judge Chesney, both Plaintiff and GLSE continued to cling to their own interpretations of the term

7    business "size," and, ultimately, neither interpretation was fully vindicated. Further, in presenting

8    the dispute to the undersigned, due to the acrimony between the Parties, the disputes were

9    presented in such an uncoordinated and disorganized fashion as to require the undersigned to order

10   the Parties to re-brief the matter more than once. *See* Order of April 15, 2019 (dkt. 169) (directing

11   Plaintiff and GLSE to file separate briefs setting forth the discovery dispute with enough

12   specificity for the undersigned to be able to decipher what exactly was being disputed); *see also*

13   Order of May 10, 2019 (dkt. 173) (finding that the Parties' uncoordinated separate briefing –

14   differently organized thematic briefs referring to voluminous numerically organized exhibits –

15   rendered the resolution of the discovery dispute unnecessarily difficult and ordering the Parties to

16   brief the matter in a specifically prescribed form). When it became clear that each Party had taken

17   it upon itself to choose its own interpretation of the word "size," as the term was used in the

18   Jurisdictional Discovery Order, the undersigned thereafter entered a non-dispositive order which

19   ruled on the discovery disputes by taking a relatively broad view of the disputed term. *See* Order

20   of June 17, 2019 (dkt. 178). Both Parties sought review of that order, and ultimately, neither

21   Party's interpretation was fully vindicated – instead, Judge Chesney noted that "[r]egreattably, the

22   parties did not return to this Court for clarification . . ." *See generally* Order of July 18, 2019 (dkt.

23   196).

24       It would be unfair for Plaintiff alone to bear the burden for a course of events in which

25   GLSE was an equal stakeholder. Such is the vicissitude of GLSE's choice not to file a motion for

26   clarification of the Jurisdictional Discovery Order, and instead to wait for a year and then to enter

27   the discovery dispute process in which it would contribute its own share to the acrimonious

28   distractions, all of which made the resolution of the discovery dispute more difficult than it needed

United States District Court
Northern District of California

to be. A similar issue arose in a similar context in *GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060 (N.D. Cal. 2017). In *GoPro*, the parties had found themselves at an impasse about whether a prior court order for production of electronically stored information also applied to email communications. *Id.* at 1075. Following GoPro's motion to compel, and dueling motions for awards of fees and costs relating to the motion, the court granted GoPro's motion to compel, while explaining that "[b]ecause of this confusion [about the previous discovery order], the Court now clarifies that it intended all responsive materials—including ESI and emails—to be produced." *Id.* The court then added that "[i]n light of the seeming confusion over the scope of the Court's prior order, the Court DENIES GoPro's and 360Heros requests for an award of fees and costs in relation to this motion. [] In the future, if the parties have any disputes regarding the meaning of the Court's orders, they should seek prompt clarification from the Court." *Id* (citations omitted). Likewise, in light of the Parties' confusion in this case about the meaning of the word "size," as used in the Jurisdictional Discovery Order, also because neither Party sought clarification from Judge Chesney, and because neither Party's interpretation of the word "size" was fully vindicated, GLSE's request for fees and costs in connection with the discovery dispute is **DENIED**.

### *The Subpoena Dispute*

Regarding the subpoena dispute, GLSE requests an order, pursuant to Fed. R. Civ. P. 45(d)(1), directing Plaintiff to pay the sum of $81,748.40 incurred in attorneys' fees in moving to quash Plaintiff's third-party subpoenas. *See* GLSE's Mot. (dkt. 223) at 2, 11-14. GLSE begins its argument by suggesting that "[u]nlike expenses under Rule 37(a)(5)(C), sanctions under Rule 45(d)(1) are <u>not</u> discretionary." GLSE's Mot. (dkt. 223) at 12 (emphasis in original). However, GLSE's suggestion is unconvincing because "[u]nlike Rule 45(d)(2)(B)(ii), Rule 45(d)(1) is discretionary." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *see also Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, 319 F.R.D. 277, 283 (N.D. Cal. 2017) ("sanctions pursuant to Rule 45(d)(1) are discretionary"). While Rule 41(d)(1), makes it incumbent on district courts (in which subpoena compliance is required) to enforce the duty on parties or attorneys to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena, the rule does go on to provide that the court "must enforce this

duty and impose an appropriate sanction - which <u>*may*</u> include lost earnings and reasonable

attorney's fees - on a party or attorney who fails to comply." Fed. R. Civ. P. 41(d)(1) (emphasis

added). Thus, contrary to GLSE's argument, the provision of the rule pertaining to the

determination of an appropriate sanction, including an award of attorneys' fees, is in fact

discretionary. *See e.g., MGA Entertainment, Inc. v. Nat'l Prods. Ltd.*, No. CV 10-7083 JAK (SSx),

2012 WL 12883974 at *7 (C.D. Cal. 2012) ("While Rule 45 does not expressly identify [] motions

to quash as a basis for sanctions, district courts have imposed reasonable expenses" under Rule 37

following motions to quash Rule 45 subpoenas.); *see also* 8B Wright, Miller & Marcus, Federal

Practice & Procedure, § 2288 (3d ed. 2010 and supp.) (It is "for the court to decide what amount is

proper" in evaluating a request for expenses.).

After noting the fact that the undersigned granted GLSE's motion to quash Plaintiff's

third-party subpoenas as being overly broad for having failed to distinguish between GLSE and

GLI, the remainder of GLSE's arguments about the subpoena dispute constitute hyperbole and the

retelling of a number of unrelated anecdotes in an effort to establish that Plaintiff has acted with

bad faith throughout the case. *See* GLSE's Mot. (dkt. 223) at 12-14. For example, GLSE submits

that "[n]ot only are the Subpoenas themselves improper, but so too is Plaintiff's unremitting,

recalcitrant, bad-faith maneuvering in its continued pursuit of the Subpoenas in the face of

multiple clear rulings on their impropriety." *Id*. at 12-13. Another example is presented by GLSE's

suggestion that "[t]his is only the latest instance of Plaintiff, or Plaintiff's counsel, ignoring the

rules and directions of the Court," at which point GLSE launches into an unrelated discussion

about a different sanctions dispute between GLI and Plaintiff from three years ago. *See id*. at 13

n.1. In short, GLSE has not advanced any serious argument as to why the undersigned should find

that payment of the $81,748.40 claimed in attorneys' fees would be reasonable under the

circumstances. Instead, GLSE has merely repeated the basis for which GLSE's motion to quash

the subpoenas was granted in the first place – namely, because the subpoenas were not tailored

narrowly enough to distinguish between GLI and GLSE.

Similarly, Plaintiff's response largely misses the mark by focusing on re-arguing a number

of irrelevant points. *See generally* Pl.'s Opp. (dkt. 228). First, Plaintiff's response devotes a great

United States District Court
Northern District of California

deal of effort to complaining about allegedly improper requests for continuances by GLI and GLSE causing "systematic delays," alleged delays in the filing of a stipulated protective order, further delays in the filing of various motions, and still more delays in the filing of responses to every amended complaint. *See id*. at 10-15. Plaintiff then submits that GLSE lacks standing to seek sanctions because the subpoenas were directed to third parties, not to GLSE. *Id*. at 18-20. Plaintiff also notes that the term "Gameloft," is a reasonable search term because "the reality is that GLSE has the same name as its wholly owned subsidiary . . . [and that] Plaintiff's use of the term 'Gameloft' to narrow the scope of the documents is not unreasonable." *Id*. at 22.

In this regard, the Court of Appeals for the Ninth Circuit has noted that "[a]lthough our precedent on this issue is not extensive, we have provided some guidance for when Rule 45(d)(1) sanctions are appropriate." *Legal Voice*, 738 F.3d at 1185 (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012)); *see also Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)). It should also be noted that "[m]erely losing a motion to compel does not expose a party to Rule 45 sanctions." *Legal Voice*, 738 F.3d at 1185 (citing *Mount Hope Church*, 705 F.3d at 425-27). While the failure to narrowly tailor a subpoena may be a ground for sanctions, a district court need not impose sanctions each and every time it finds a subpoena overbroad given that it "may sometimes result from normal advocacy, which [] should not give rise to sanctions." *Legal Voice*, 738 F.3d at 1185 (citing *Mount Hope Church*, 705 F.3d at 426). Rule 45 sanctions, however, would be proper in cases "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice*, 738 F.3d at 1185 (citing *Mount Hope Church*, 705 F.3d at 425, 428; and, *Mattel*, 353 F.3d at 814).

Regarding Plaintiff's failure to distinguish between GLI and GLSE in tailoring its third-party subpoenas, Plaintiff's defense is that there was no meaningful way to distinguish between GLI and GLSE when engaging in third-party discovery because both entities are known as "Gameloft." However, Plaintiff's suggestion ignores the possibility of *otherwise* having limited the subpoenas such that the scope of discovery permitted by Judge Chesney would not have been exceeded by Plaintiff's insistence on engaging in third-party discovery, or even refraining from third-party discovery until after the resolution GLSE's motion to dismiss. As mentioned above, in

United States District Court
Northern District of California

1    late 2017, Plaintiff responded to GLI's motion to dismiss the FAC by arguing that "GLI fails to

2    consider the allegations that it uses the same trade name, the same logo and the same website as its

3    parent; and therefore, is the alter ego" for GLSE, "such that there is no distinction between the

4    companies." *See* Pl.'s Opp. (dkt. 45) at 14. Judge Chesney rejected this argument. *See* Order of

5    January 22, 2018 (dkt. 81) at 6-7. Nevertheless, in attempting to defend the broad scope of these

6    subpoenas, Plaintiff has steadfastly adhered to that position; defending the breadth of the

7    subpoenas by stating that "[t]he persistent conflation of the corporate separateness of GLI and

8    GLSE is integral to the scope of third-party discovery." *See* Letter Br. of August 16, 2019 (dkt.

9    203) at 11. A week before Plaintiff made this statement, Judge Chesney had issued an Order on

10   the Parties' stipulated request for clarification as to whether the limits set forth in the Jurisdictional

11   Discovery Order applied to the Parties' subpoena dispute. *See* Order of August 9, 2019 (dkt. 200)

12   at 1. Therein, Judge Chesney made it abundantly clear that Plaintiff's third-party discovery

13   practice pertaining to GLSE was to be limited to "jurisdictional discovery requests." *Id*. At this

14   point, Plaintiff could have, and indeed should have, either withdrawn or extensively modified its

15   subpoenas; however, Plaintiff chose to proceed while still clinging to the already-rejected

16   suggestion that "[t]he persistent conflation of the corporate separateness of GLI and GLSE is

17   integral to the scope of third-party discovery." *See* Letter Br. of August 16, 2019 (dkt. 203) at 11.

18          Accordingly, the undersigned previously found that the subpoenas were overly broad, and

19   now finds that the excessive breadth did not result from normal advocacy. Instead, the undersigned

20   finds that the subpoenas were formulated so broadly with an improper purpose in mind – namely,

21   it appears from the record that Plaintiff was unhappy with the rejection of its alter-ego argument in

22   early 2018, and that Plaintiff sought to secure broad based discovery against both GLI an GLSE

23   through third parties without regard for the limits imposed by the Jurisdictional Discovery Order.

24   Largely because of Plaintiff's repeated re-argument that the corporate separateness of GLI and

25   GLSE is a hollow fiction, there remains little room for doubt that Plaintiff's subpoenas were

26   purposefully crafted to avoid the limits of jurisdictional discovery applicable to GLSE.

27          As to the amount sought by GLSE, the undersigned finds that the $81,748.40 requested,

28   and the 139 hours of attorney time expended, are unreasonable. *See* GLSE's Mot. Exh. (dkt. 223-

United States District Court
Northern District of California

3) at 2-9. Initially, the undersigned notes that the billing records submitted in support of GLSE's request for attorneys' fees appear to contain numerous instances of multiple attorneys doing overlapping or repetitive work on the same tasks. *See generally id.* at 2-9.  What is unclear, is why preparing and arguing such a simple motion to quash under these circumstances would require anything more than 25 hours of attorney time, let alone 139 hours of attorney time. Simply because GLSE's counsel chose to expend 139 hours of attorney time on this matter does not render the expenditure of that amount of time as reasonable *per se*. In essence, GLSE's only argument of any substance – which carried the day – was that Plaintiff's use of the term "Gameloft" in the subpoenas failed to distinguish between GLI and GLSE and that this failure to distinguish between the two was improper and in derogation of Judge Chesney's Jurisdictional Discovery Order. Given that this is all GLSE needed to say to have the subpoenas quashed, the undersigned finds that inclusive of reviewing Plaintiff's subpoenas and notices, preparing and filing the motion to quash, and preparing and filing any reply brief, GLSE's reasonable expenses in connection with the subpoena dispute would amount to $13,750 (arrived at by using the $550/hour rate provided by the attorney denominated as GLSE's lead counsel on the docket, multiplied by 25 hours). As discussed in detail above, both Plaintiff and GLSE have spent a great deal of time and effort in the course of this dispute articulating irrelevant attacks against one another, and the undersigned concludes that this sort of surplus bickering is not subject to re-compensation as a reasonably incurred fee.

      As mentioned, the lynchpin of GLSE's motion to quash was exceedingly simple – it merely boiled down to the assertion that the subpoenas are worded so broadly as to eviscerate the limits on jurisdictional discovery applicable to GLSE. The undersigned has found no decision, nor has one been cited by GLSE, awarding anywhere near the fees sought here as "reasonable fees and expenses" in connection with a motion to quash, let alone such a simple motion to quash. *See e.g.*, *Rucker v. Air Ventures Haw.*, 2017 U.S. Dist. LEXIS 151498, 2017 WL 4158201 (D. Haw. Sept. 19, 2017) (district court awarded $1,845 in attorneys' fees and finding 8.9 hours expended on successful motion to quash to be reasonable); *Deuss v. Siso*, No. 14-cv-00710-YGR (JSC), 2014 U.S. Dist. LEXIS 121464, at *22 (N.D. Cal. Aug. 29, 2014) (Defendant sought $13,375 in

United States District Court
Northern District of California

1  connection with moving to quash subpoenas issued to the California Department of Motor

2  Vehicles, First American Title Company, Amazon.com, Inc., JP Morgan Chase, Bank of America,

3  N.A., and Defendant's own mother); *S.E.C. v. Schooler*, No. 3:16-cv-00517-MMD, 2016 U.S.

4  Dist. LEXIS 160312, 2016 WL 6821079 at *5 (D. Nev. Nov. 17, 2017) (awarding sanctions of

5  $10,661 under Rule 45(d)(1) for successful motion to quash subpoena where three attorneys spent

6  a total of 33.4 hours); *see also Am. Int'l Life Assur. Co. v. Vasquez*, 2003 U.S. Dist. LEXIS 2680,

7  2003 WL 548736, at *3 (S.D.N.Y. Feb. 25, 2003) (concluding that a sanction under Rule 45(c) in

8  the amount of $4,436.00, representing "much of" the subpoenaed individual's fees and costs, was

9  appropriate where the subpoena was improperly issued and the issuing party refused to withdraw

10  it). Thus, GLSE's request for an award of fees and costs in connection with the subpoena dispute

11  is **GRANTED in part** and **DENIED in part**. Plaintiff is **ORDERED** to pay Defendant GLSE

12  sanctions in the amount of $13,750.00 within three weeks of the date of this order.

13        Lastly, GLSE seeks an unexplained and non-itemized lump-sum of $20,000 in attorneys'

14  fees for having to file the instant motion for sanctions and fees. *See* GLSE's Mot. (dkt. 223) at 2.

15  However, neither GLSE's motion (dkt. 223), nor the attached declaration (dkt. 223-1), nor the

16  attached billing records (dkts. 223-2, 223-3) go into any detail as to the breakdown of that lump

17  sum. In fact, GLSE has provided no billing records at all to itemize or explain the expenditure of

18  $20,000 in bringing the re-filed motion for fees. Given that GLSE's previously filed motion for

19  fees (dkt. 212) suffered from this defect on a much larger scale and was denied without prejudice

20  for that reason (*see* Order of November 13, 2019 (dkt. 222)), GLSE's continued failure to itemize

21  and justify the amount sought requires that GLSE's request for $20,000 in attorneys' fees for

22  filing the instant motion be **DENIED**.

23  //

24  //

25  //

26  //

27  //

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, GLSE's request for an award of reasonable expenses in the amount of $76,675.20 in connection with the discovery dispute is **DENIED**. GLSE's request for attorneys' fees in the amount of $81,748.40 in connection with the subpoena dispute is **GRANTED in part** and **DENIED in part** such that Plaintiff is **ORDERED** to pay Defendant GLSE sanctions in the amount of $13,750.00 within three weeks of the date of this order. Lastly, GLSE's request for attorneys' fees in the amount of $20,000.00 for bringing the instant motion for sanctions and fees is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 25, 2020

ROBERT M. ILLMAN
United States Magistrate Judge